**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CORNELL HOLDEN and MIGUEL MEJIA on
behalf of themselves and all others similarly
situated,

                      Plaintiffs,

          -against-

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY; THE PORT AUTHORITY
POLICE DEPARTMENT; and MICHAEL
OPROMALLA, SHAUN KEHOE, JOHN TONE,
and JOHN DOE OFFICERS 1-4, sued in their
individual capacities and official capacities as
officers of the Port Authority Police Department,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    1:17  **Civ.**  02192

**CLASS ACTION COMPLAINT**

       Plaintiffs Cornell Holden and Miguel Mejia, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), through their undersigned attorneys, allege as follows:

### <u>INTRODUCTION</u>

       1.     This class action seeks declaratory, injunctive, and monetary relief to redress the deprivation of Plaintiffs' rights under the Constitution and laws of the United States.  The tactics of Defendant Port Authority Police Department ("P.A.P.D.") and its officers should not and indeed cannot stand.  They are deplorable indicia of a governmental agency that cares not about law or liberty, choosing to violate both with baseless abandon.

       2.     Specifically, Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 in response to Defendants' policy and/or pattern and practice of unlawful discrimination, targeting, and false arrests of men using Port Authority Bus Terminal ("P.A.B.T") restrooms.

3.      Defendants' wrongful conduct includes the specific and deliberate targeting by P.A.P.D. officers of men that such officers perceive as gay, and/or gender non-conforming, using P.A.B.T. restrooms.

4.      P.A.P.D. officers engage in a pattern and practice of targeting and wrongly arresting men that such officers perceive as gay, and/or gender non-conforming, on baseless charges including public lewdness and exposure, falsely claiming that they were engaged in illegal conduct at P.A.B.T. restroom urinals.

5.      In fact, no such activity occurred.  Instead P.A.P.D. officers were making deliberately targeted arrests on the discriminatory basis of actual or perceived sexual orientation, actual or perceived gender expression, and/or to boost "quality of life" arrest statistics at P.A.B.T. and/or individual P.A.B.T. officers' arrest statistics.  P.A.P.D. officers make such arrests knowing or believing that the majority of those arrested would ultimately be effectively forced to plead guilty to lesser charges such as disorderly conduct to avoid the public embarrassment and humiliation, potential jail sentences and fines, and potential reputational and professional harm associated with the false charges.

6.      The tactics employed by P.A.P.D. officers to conduct such targeted arrests are a shocking and appalling exercise in unconstitutional bias.  For example, plainclothes P.A.P.D. officers often pretend to use urinals next to targeted individuals in P.A.B.T. men's restrooms. These urinals are separated by privacy walls which prevent P.A.P.D. officers (or P.A.B.T. patrons) from seeing into adjacent urinals under any definition of normal circumstances.  The P.A.P.D. officer will proceed to stare at the targeted individual while he is using the urinal.  In some cases, the officer will actually step back from the urinal in order to see around the privacy wall, in an effort to view the target's hands and genitals.  At the sole and unfettered discretion of

-2-

the P.A.P.D. officer, the target is then arrested by a team of P.A.P.D. officers when he exits the restroom.

7.      Upon information and belief, P.A.P.D. officers specifically target men that such P.A.P.D. officers perceive as gay (based on appearance), or gender non-conforming (a person assigned male at birth wearing what a P.A.P.D. officer believes to be non-masculine attire or jewelry)[1], for such unlawful and unconstitutional treatment.

8.      Indeed, following the wrongful arrest of Plaintiff Cornell Holden, Mr. Holden overheard P.A.P.D. officers congratulating the arresting officer and explicitly referring to him as "the gay whisperer," presumably because of the arresting officer's pattern and practice of arresting men that he perceived as gay or gender non-conforming.

9.      The targeted arrests of men that P.A.P.D officers perceive as gay or gender non-conforming in P.A.B.T. restrooms demonstrate a policy and/or pattern and practice of unlawful and unconstitutional discriminatory conduct.

10.     Without judicial intervention there will be no end to Defendants' invasive, unlawful, and unconstitutional practices.  This must stop.  The P.A.P.D. has conducted, and continues to conduct, unlawful discrimination, targeting, and false arrests of men that P.A.P.D. officers perceive as gay or gender non-conforming using P.A.B.T. restrooms.  Because such conduct is ongoing, there is a threat of recurrent injuries to Plaintiffs.  The named Plaintiffs and other class members are at risk of further violations of their rights at the hands of the P.A.P.D.

---

[1]      "Gender non-conforming" is generally defined as relating to a person whose behavior or appearance does not conform to prevailing cultural and social expectations about what is appropriate to the gender that person was assigned at birth.

11.     Indeed, the Port Authority and P.A.P.D. officers have been found liable for similar misconduct in the past.  Therefore Defendants knew or should have known that the policies and/or practices alleged herein were unlawful and unconstitutional.

12.     On November 18, 2004, after a four-day trial, a jury returned a verdict in favor of Alejandro Martinez, who was arrested outside the men's room at the PATH station concourse of the World Trade Center and charged with public lewdness (he was accused by the arresting officer of having engaged in public masturbation).  At trial, the jury was supplied with evidence sufficient to conclude that the Port Authority had a custom that led to widespread public lewdness arrests *without regard to probable cause*.[2]

13.     The jury awarded Mr. Martinez substantial damages.  Despite the jury finding of liability and the substantial monetary award, Defendants continue to engage in the unlawful and unconstitutional policy and/or pattern and practice alleged herein.

14.     To end these unlawful activities, Plaintiffs seek on behalf of themselves and all others similarly situated a permanent injunction restraining P.A.P.D. officers from conducting such unlawful and unconstitutional arrests.  Plaintiffs also seek declaratory judgment and monetary damages provided for under the law, as allowed under F.R.C.P. 23(b)(2) and (b)(3).

### JURISDICTION AND VENUE

15.     Jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1346.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and because, *inter alia*, (1) Defendants The Port Authority of York and New Jersey and Port Authority Police Department are located in this judicial district and (2) all relevant events took place in this judicial district.

---

[2]     The Martinez case is detailed in Paragraphs 40-47, *infra*.

## PARTIES AND OTHER RELEVANT PERSONS

17.     At all times relevant to this action, Plaintiff Cornell Holden ("Mr. Holden") was a resident of New York, New York.  Mr. Holden was arrested on May 12, 2014, when he exited a P.A.B.T. restroom.  He was charged with Public Lewdness under N.Y.P.L. § 245.00, and Exposure of a Person under N.Y.P.L. § 245.01.

18.     At a court appearance in Criminal Court of the City of New York, County Of New York, Part C, on December 9, 2014, before Hon. Robert Mandelbaum, all charges against Mr. Holden were dismissed.

19.     At all times relevant to this action, Plaintiff Miguel Mejia ("Mr. Mejia") was a resident of New York, New York. Mr. Mejia was arrested on July 9, 2014, when he exited a P.A.B.T. restroom.  He was charged with Public Lewdness under N.Y.P.L. § 245.00.

20.     On November 17, 2014, following a trial in Supreme Court of the State of New York, County of New York, Criminal Term Part 1, the trial judge, Hon. Larry Stephen, entered a verdict of not guilty on the charge against Mr. Mejia.

21.     Defendant The Port Authority of New York and New Jersey is and was at all times relevant herein a governmental entity created and authorized under the laws of the States of New York and New Jersey.  Its corporate office is located in New York, New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

22.     Defendant Port Authority Police Department is headquartered in Jersey City, New Jersey, with precincts located across New York, New York, including in the Port Authority Bus Terminal.

23.     Defendant Officers Michael Opromalla, Shaun Kehoe, John Tone, and John Doe 1-4 are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department.  At all times relevant herein, they were acting under the direction and control of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department, and were acting pursuant to either official policy, or the custom, practice, and usage of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department.

24.      Defendant Officer Michael Opromalla is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  He was one of the P.A.P.D. officers who arrested Mr. Holden on May 12, 2014.  On information and belief, Officer Opromalla was the arresting officer on numerous similar cases in 2014.  Officer Opromalla is sued individually and in his official capacity.

25.     Defendant Officer Shaun Kehoe is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  He was one of the P.A.P.D. officers who arrested Mr. Holden on July 9, 2014.  Officer Kehoe is sued individually and in his official capacity.

26.     Defendant Officer John Tone is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  He was one of the P.A.P.D. officers who arrested Mr. Holden on July 9, 2014.  Officer Tone is sued individually and in his official capacity.

27.     Defendant Officers John Doe 1-4 are officers of the Port Authority Police Department.  Upon information and belief, they were P.A.P.D. officers at all times relevant to

this litigation.  Upon information and belief, Officers John Doe 1-4 engaged in the unlawful and unconstitutional conduct alleged herein, including specifically the arrests of Plaintiffs Holden and Mejia.  Defendant Officers John Doe 1-4 are sued individually and in their official capacity.

28.    The true names and total number of Officers John Doe 1-4 are unknown to Plaintiffs, and therefore Plaintiffs sue Defendants by such names.  Plaintiffs will amend their Complaint to state the true names of Defendant Officers John Doe 1-4 after their names have been identified.

29.    At all times relevant herein, Officers Michael Opromalla, Shaun Kehoe, John Tone, and John Doe 1-4 were acting under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department, and were acting in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department, and otherwise engaged in conduct incidental to the to the performance of their lawful functions in the course of their duties.  At all times relevant herein, they were acting for and on behalf of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department, with the power and authority vested in them as officers, agents, servants, and employees of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department.

30.    Upon information and belief, The Port Authority of New York and New Jersey, Port Authority Police Department, and Officers Michael Opromalla, Shaun Kehoe, John Tone, and John Doe 1-4 are responsible for the injuries and damages suffered by Plaintiffs caused by the acts alleged in this Complaint.

## FACTS

### The Port Authority Police Department and Its Pattern and Practice of Unlawful and Unconstitutional Discriminatory Conduct

31.     According to its website, "the Port Authority operates the largest and busiest bus terminal in the nation, accommodating 57 million bus passengers and more than 2.2 million bus movements in 2007. On a typical weekday, nearly 200,000 passenger trips passed through the PABT on 7,000 bus movements."[3]

32.     The P.A.P.D. is responsible for the patrol of the Holland and Lincoln Tunnels; the Bayonne, Goethals, and George Washington Bridges; the Outerbridge Crossing; Newark, John F. Kennedy, and LaGuardia Airports; the Port Authority Bus Terminal; the PATH train and stations; and the Port Authority Marine Terminals.  The P.A.P.D. employs more than 1,700 officers.  P.A.P.D. officers are empowered to detain and arrest individuals, and initiate prosecutions, at their discretion.

33.     The P.A.P.D. employs patrols that target "quality of life" crimes including, among other things, lewd behavior.  These patrols include P.A.P.D. officers entering P.A.B.T. restroom facilities.

34.     Upon information and belief, P.A.P.D officers arrested more than 60 individuals in 2014 in the P.A.B.T. on public lewdness charges; most of those arrested were accused of masturbating in P.A.B.T. restrooms; and, according to court records, those individuals were allegedly observed by plainclothes officers often standing next to them at an adjacent urinal.[4]

---

[3]     *About the Port Authority Police Department*, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, http://www.panynj.gov/police/about-police.html (last visited Jan. 19, 2017).

[4]     Exhibit A, Joseph Goldstein, *Lawyers Challenge Lewdness Arrests at Port Authority Bus Terminal*, NEW YORK TIMES (Oct. 7, 2014),

35.     Upon information and belief, P.A.P.D. officers engage in a pattern and practice of specifically targeting men using P.A.B.T. restrooms that P.AB.T. officers perceive as gay (based on appearance), or gender non-conforming (a person assigned male at birth wearing what a P.A.P.D. officer believes to be non-masculine attire or jewelry), for arrest on charges including Public Lewdness under N.Y.P.L. § 245.00 and/or Exposure of a Person under N.Y.P.L. § 245.01.

36.     Such targeting, and the concomitant arrest and criminal charges, results in, among other things, severe emotional and mental distress and trauma, potential jail sentences and fines, fear of law enforcement, fear of using the P.A.B.T and other Port Authority facilities, discomfort in using public restrooms, public embarrassment and humiliation, and potential and/or actual reputational and professional harm for the falsely accused victims.

37.     The P.A.P.D.'s targeting operations often proceed in an identical manner.  A plainclothes P.A.P.D. officer will pretend to use the urinal next to a targeted individual.  The P.A.P.D. officer will then stare at the targeted individual, who he perceives to be gay or gender non-conforming.  When the targeted individual looks back at the P.A.P.D. officer, the officer will exit the restroom.  In some cases, the P.A.P.D. officer will step back from the urinal and attempt to look around the urinal's privacy wall at the individual's hands and genitals, and then exit the bathroom.

38.     Immediately thereafter, P.A.P.D. officers will arrest the targeted individual on charges of Public Lewdness under N.Y.P.L. § 245.00 and/or Exposure of a Person under N.Y.P.L. § 245.01.

---

https://www.nytimes.com/2014/10/08/nyregion/lawyers-challenge-lewdness-arrests-at-port-authority-bus-terminal.html.

39.     In support of the charges, P.A.P.D. officers will sign a sworn affidavit using identical or nearly identical language when describing the alleged behavior of the arrestee. P.A.P.D. officers will claim, in such boilerplate language, that the targeted individual was observed masturbating.

40.     The officers' repeated use of boilerplate language, the implausibly high arrest rate for such alleged conduct of more than 60 arrests in 2014, and the non-credible nature of the allegations (observations of masturbation at P.A.B.T. urinals – separated by privacy walls – in a crowded public restroom during rush-hour periods), all support the conclusion that these were unlawful, unconstitutional, targeted arrests made by P.A.P.D. officers on the discriminatory basis of actual or perceived sexual orientation, and/or to boost "quality of life" arrest statistics at P.A.B.T. and/or individual P.A.B.T. officers' arrest statistics.

41.     Upon information and belief, Defendants are continuing their discriminatory, unlawful, and unconstitutional conduct.

**Martinez v. Port Authority (2005)**

42.     The Port Authority and P.A.P.D. officers have been found liable for similar misconduct in the past.  As a result, Defendants knew or should have known that the policies and/or practices alleged herein were unlawful and unconstitutional.

43.     On February 1, 2000, Alejandro Martinez was arrested outside the men's room at the PATH station concourse of the World Trade Center.  (Exhibit B, Martinez v. Port Authority, No. 01 Civ. 721 (PKC), 2005 WL 2143333, at *1 (S.D.N.Y. Sept. 2, 2005).)  He was charged with public lewdness, and remained in law enforcement custody for approximately 19 hours before he was released.  (Id.)  He was one of seven men arrested in separate alleged incidents of public lewdness in a single restroom of the World Trade Center's PATH station during an

approximately 2.5-hour morning window.  (Id.)  Each individual was accused by the arresting

officer of having engaged in public masturbation.  (Id.)

44.     Mr. Martinez was the only one of the seven arrestees who did not plead guilty to a

reduced charge of disorderly conduct.  (Id.)  He proceeded to trial in state court, and after a one-

day bench trial, he was acquitted.  (Id.)

45.     Mr. Martinez subsequently brought a civil action in the Southern District of New

York against the Port Authority and three individual P.A.P.D. officers, asserting claims under 42

U.S.C. § 1983.  (Id.)

46.     At trial, Mr. Martinez "submitted evidence sufficient for a reasonable jury to

conclude that his arrest was part of a Port Authority pattern or practice to conduct 'sweep' arrests

… for the crime of public lewdness, without regard to probable cause."  (Martinez, 2005 WL

2143333, at *5.)  Mr. Martinez demonstrated that "the documentation of the public lewdness

arrests contained nearly identical descriptions of the circumstances surrounding the acts of public

lewdness."  (Id. at *6.)  Mr. Martinez also submitted evidence "establishing that the Port

Authority had a custom of performing public lewdness arrests pursuant to a quota."  (Id. at *7.)

The evidence at trial was sufficient for the jury to conclude "that based on the exhibits and

testimony, these arrests occurred without probable cause."  (Id. at *7, 8 ("the jury was supplied

with evidence sufficient to conclude that the Port Authority had a custom that led to widespread

public lewdness arrests without regard for probable cause").)

47.     On November 18, 2004, after a four-day trial, a jury returned a verdict in Mr.

Martinez's favor.  (Id. at *1.)

48.     The trial jury awarded Mr. Martinez damages in the amount of $1,104,000, which

the judge remitted to $464,000.  (Id.)

49.     Despite the finding of liability in the <u>Martinez</u> case, and the substantial damage award, Defendants continue to engage in the unlawful and unconstitutional acts alleged herein.

### The Arrest of Plaintiff Cornell Holden

50.     At or around 9:05 a.m. on May 12, 2014, Plaintiff Cornell Holden was using a urinal in a P.A.B.T. restroom.

51.     While at the urinal, Mr. Holden noticed a person he later learned to be P.A.P.D. Officer Opromalla watching him from an adjacent urinal.  P.A.P.D. Officer Opromalla then stepped back from his urinal, looked around the privacy wall between the urinals in an apparent effort to see Mr. Holden's hands and genitals, and left the restroom.

52.     When Mr. Holden exited the restroom, he was arrested by other P.A.P.D. officers. He was handcuffed in a public space in the P.A.B.T., in plain view of numerous P.A.B.T. patrons, and led to the P.A.P.D. detention facility.

53.     Mr. Holden was charged with Public Lewdness under N.Y.P.L. § 245.00, and Exposure of a Person under N.Y.P.L. § 245.01.

54.     Mr. Holden was in P.A.P.D. detention for several hours.  During that time, he was fingerprinted and photographed.

55.     While in a holding cell following his arrest, Mr. Holden overheard a P.A.P.D. officer being congratulated on the arrest, and being referred to by other P.A.P.D. officers as "the gay whisperer."

56.     At the time of the arrest, Mr. Holden had no criminal history.

57.     On June 27, 2014, Defendant P.A.P.D. Officer Opromalla signed a sworn affidavit in support of the charges.  In that affidavit, Officer Opromalla falsely claimed that he observed Mr. Holden masturbating at a P.A.B.T. restroom urinal.

58.     Upon information and belief, Mr. Holden was targeted for arrest by P.A.P.D. Officers, including Officer Opromalla, because of his appearance, in that his clothing, hairstyle, and jewelry were such that P.A.P.D. Officers perceived him to be gay or gender non-conforming.

59.     Following his arrest, Mr. Holden pleaded not guilty and staunchly maintained his innocence.  As a result, he was forced to appear in court a number of times over the succeeding months.  This included court appearances on July 2, 2014, September 8, 2014, October 29, 2014, and December 9, 2014.  Mr. Holden was presented with plea offers by the New York County Assistant District Attorney's Office, all of which he refused.

60.     At a court appearance on December 9, 2014, the New York County District Attorney's Office moved to dismiss the charges against Mr. Holden.  The charges were dismissed and the record was sealed.

61.     Mr. Holden has a reasonable fear of future wrongful arrests arising out of his lawful use of the P.A.B.T. and P.A.B.T. restrooms.

### The Arrest of Plaintiff Miguel Mejia

62.     At or around 5:04 p.m. on July 9, 2014, Plaintiff Miguel Mejia was using a urinal in a P.A.B.T. restroom.

63.     While at the urinal, Mr. Mejia noticed a person he later learned to be a P.A.P.D. officer watching him.  After Mr. Mejia turned his head to look at him, the P.A.P.D. officer left the restroom.

64.     When Mr. Mejia exited the restroom, he was arrested by other P.A.P.D. officers. At the time of his arrest, Mr. Mejia was not told why he was being arrested.  He was handcuffed in a public space in the P.A.B.T., in plain view of numerous P.A.B.T. patrons, and led to the P.A.P.D. detention facility.

65.     Mr. Mejia was in P.A.P.D. detention for approximately three hours.  During that time, he was fingerprinted and photographed.

66.     Mr. Mejia was charged with Public Lewdness under N.Y.P.L. § 245.00.

67.     At the time of the arrest, Mr. Mejia had no criminal history.

68.     On July 23, 2014, Defendant P.A.P.D. Officer John Tone signed a sworn affidavit in support of the charges.  In that affidavit Officer Tone falsely claimed that he observed Mr. Mejia masturbating at a P.A.B.T. restroom urinal.  P.A.P.D. Officer Shaun Kehoe was also involved in the arrest of Mr. Mejia.

69.     Upon information and belief, Mr. Mejia was targeted for arrest by P.A.P.D. officers, including Officer Tone and/or Officer Kehoe, because of his appearance, in that his clothing, tattoos, and jewelry were such that P.A.P.D. officers perceived him to be gay or gender non-conforming.

70.     Following his arrest, Mr. Mejia pleaded not guilty and staunchly maintained his innocence.  As a result, he was forced to appear in court a number of times over the succeeding months.  This included court appearances on August 19, 2014, and October 14, 2014.  Mr. Mejia was presented with plea offers by the New York County Assistant District Attorney's Office, all of which he refused.

71.     On November 17, 2014, Mr. Mejia was tried before Hon. Larry Stephen of the Supreme Court of the State of New York, New York County, Criminal Term Part 1.  He testified in his own defense.  At the conclusion of the trial, Mr. Mejia was acquitted.

72.     Mr. Mejia has a reasonable fear of future wrongful arrests arising out of his lawful use of the P.A.B.T. and P.A.B.T. restrooms.

**Council Member Dromm's Letter to The Port Authority**

73.     As cited above, on October 7, 2014, the *New York Times* published an article addressing the pattern of arrests at the P.A.B.T. that is the subject of this Complaint.  (Exhibit A.)

74.     Following the publication of that article, New York City Council Member Daniel Dromm, from New York City's 25th District, wrote a letter to the Port Authority, dated October 10, 2014.  (Exhibit C.)

75.     Council Member Dromm wrote:

I am writing to express my deep concern over policing practices at the Port Authority Bus Terminal.  A recent *New York Times* article has shed light on the pernicious pattern of Port Authority Policy Department (PAPD) officers arresting certain men for lewdness.  Despite the dearth of complaints, the PAPD seems to have stationed officers in the bathroom to arrest men for allegedly masturbating.

It appears from the article that gay men are being targeted.  I am deeply disturbed by what looks like the anti-lesbian, gay, bisexual and transgender profiling, which harkens back to a very dark time in this country when the members of the LGBT community were routinely harassed by law enforcement.  I have painful memories of my own false arrest on a similar charge as a teenager, and many other gay men have similar stories.

Putting aside the LGBT dimension, I would like to say how utterly creepy and intrusive such a violation of someone's personal space is.  Why you would be putting any resources into patrolling bathrooms to monitor how people urinate is beyond comprehension.

These arrests and their prosecution are completely unacceptable.  I expect such false and apparently discriminatory arrests to end immediately.

76.     Despite Council Member Dromm's letter, Defendants continue to engage in the unlawful and unconstitutional acts alleged herein.

## P.A.P.D.'s False Arrests Have Continued

77.     Upon information and belief, despite the above-described incidents that should have alerted P.A.P.D. that officers engage in a pattern and practice of targeting and wrongly arresting men on baseless charges including public lewdness and exposure, falsely claiming that

they were masturbating at P.A.B.T. urinals, P.A.P.D. failed to train or retrain officers in non-discriminatory practices, failed to investigate these incidents or the patterns of incidents, failed to consistently systematically monitor or audit these arrests for discriminatory patterns, failed to ensure supervisors were consistently monitoring individual arrests for discrimination, and failed to consistently discipline officers who did make these arrests based on discriminatory reasons. As a result of these failures, these unconstitutional arrests have continued.

78.     For example, on March 13, 2016, Jeffrey K. Reed was arrested after using a P.A.B.T. restroom.  (Exhibit D, Notice of Claim of Jeffrey K. Reed.)[5]  A plainclothes P.A.P.D. officer told Mr. Reed that he had been observed masturbating at a urinal.  (Id.)  He was held in custody for approximately four hours.  (Id.)  He was charged with Public Lewdness and Exposure of a Person.  (Id.)  Mr. Reed pleaded not guilty to the charges.  (Id.)

79.     On October 18, 2016, the charges against Mr. Reed were dismissed.  (Id.)

80.     Mr. Reed subsequently filed a notice of claim against The Port Authority of New York and New Jersey, claiming, *inter alia*, false arrest and violation of his statutory and constitutional rights arising out of "the customs and practices of the Port Authority of New York and New Jersey and its police department."  (Id.)

### The Named Plaintiffs' Injuries

81.     As a direct and proximate result of the above conduct by Defendants, and each of them, the named Plaintiffs have been harmed, which harm includes, but is not limited to:

   a.  Violations of their constitutional rights to be free from unreasonable and unlawful searches and seizures, including discriminatory targeting;

   b.  Violations of their constitutional rights to due process;

---

[5]     Mr. Reed is not a named Plaintiff in this action.

c.   Violations of their constitutional rights to equal protection, including to be free from discriminatory application of the law;

d.   Severe emotional and mental distress and trauma arising out of, among other things, intimidation, harassment, and public humiliation, threats of potential jail sentences and fines, and potential and/or actual reputational and professional harm; and

e.   Other harm according to proof.

### CLASS ACTION ALLEGATIONS

82.     All claims set forth in the First and Second Causes of Action are brought by the named Plaintiffs individually and on behalf of all other similarly situated persons pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

83.     The named Plaintiffs propose the First and Second Causes of Action be certified on behalf of the following class: persons who, because they are (1) male, (2) gay or gender non-conforming, or perceived to be gay or gender non-conforming by P.A.P.D. officers, and (3) used a Port Authority Bus Terminal restroom urinal, have been subjected to and are at risk of discriminatory targeting and false arrest by the P.A.P.D. for offenses under N.Y.P.L. § 245.00 and/or N.Y.P.L. § 245.01.

84.     The claims of the proposed class representatives and those of the putative class members in the First and Second Causes of Action raise common questions of law and fact concerning, *inter alia*, whether Defendants have implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or custom of:

> Targeting men using a restroom urinal at the Port Authority Bus Terminal for false arrest and criminal charges including public lewdness and exposure, by falsely claiming that they were masturbating at urinals.

85.     These questions are common to the named Plaintiffs and to the members of the putative class because Defendants have acted and will continue to act on grounds generally applicable to both the named Plaintiffs and putative class members.

86.     Upon information and belief, members of the putative class are so numerous that joinder of all class members is impracticable.

87.     The claims of the named Plaintiffs are typical of the claims of the members of the putative class.

88.     The named Plaintiffs will fairly and adequately protect the interests of the members of the putative class.

89.     The named Plaintiffs are represented by counsel who are experienced in federal class action, including those involving civil rights issues.

90.     The issues common to the class predominate any individual issues of law or fact.

91.     In addition to the foregoing reasons, class action is the superior vehicle for litigating Plaintiffs' claims due to the financial burden and emotional toll of individual litigation, and the embarrassing nature of the false charges.

92.     As set forth above, Defendants have acted on grounds generally applicable to the members of the putative class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the class as a whole.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION: 42 U.S.C. § 1983 CLAIM OF FOURTH AMENDMENT VIOLATIONS
### (Against All Defendants)

93.     Plaintiffs bring this claim for declaratory, injunctive, and monetary relief against Defendants to redress continuing and likely future violations of the Fourth Amendment to the United States Constitution.

94.     Upon information and belief, Defendants have, in violation of the Fourth Amendment to the United States Constitution, officially implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or custom of: (i) identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming; and (ii) unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, without probable cause in violation of the Fourth Amendment to the United States Constitution.

95.     The named Plaintiffs and putative class members are at risk of prospective constitutional deprivations at the hands of Defendants because Defendants' policy, practice, and/or custom detailed above is ongoing, and Plaintiffs still have cause to use the P.A.B.T. and may have cause to use P.A.B.T. restroom urinals.  Upon information and belief, P.A.P.D. failed to train or retrain officers in non-discriminatory practices, failed to investigate these incidents or the patterns of incidents, failed to consistently systematically monitor or audit these arrests for discriminatory patterns, failed to ensure supervisors were consistently monitoring individual arrests for discrimination, and failed to consistently discipline officers who did make these arrests based on discriminatory reasons.  As a result of these failures, these unconstitutional arrests have continued.

-19-

96.     As a result of the P.A.P.D.'s failures, there exists a credible threat that the named Plaintiffs and putative class members will be subjected to false arrest and baseless criminal charges in the future.

97.     Plaintiffs will suffer irreparable and repeated injury unless the Court orders equitable relief.  Such injury includes, *inter alia*, the deprivation of Plaintiffs' constitutionally protected rights under the Fourth Amendment of the United States Constitution.

98.     For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and Defendants, in which the parties have genuine and opposing interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

99.     Compelling Defendants, their agents, employees, and successors in office, and all persons acting in concert with them, to comply with the dictates of the United States Constitution does not impose an improper or undue burden on Defendants, and, in fact, it serves the public interest by ensuring compliance with well-established Constitutional protections.

100.     Monetary damages are warranted in this case and should be awarded.  However, monetary damages alone cannot adequately address the injuries suffered by named Plaintiffs and members of the putative class.

101.     The named Plaintiffs and the putative class are entitled to the issuance of a permanent injunction prohibiting Defendants from engaging in the unlawful and unconstitutional practices alleged herein.

102.     Specifically, Plaintiffs are entitled to permanent relief enjoining and restraining Defendants, their agents, employees, successors in office, and all others acting in concert with them from identifying and targeting men, including Plaintiffs, using restroom urinals at the

P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men without probable cause, including Plaintiffs.

103.   The dispute entitles the named Plaintiffs and the putative class to a declaratory judgment that by engaging in the acts and conduct complained of herein, Defendants denied Plaintiffs their Fourth Amendment rights and protections, including, but not limited to, the right to be free from unreasonable searches and seizures, and false arrest and baseless charges, in violation of the United States Constitution.  Such judgment will serve a useful purpose in clarifying and settling the legal issues in the case.

104.   Specifically, Plaintiffs are entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, including identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, without probable cause, have deprived Plaintiffs of their rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

105.    Plaintiffs are also entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, as detailed above, violate the Fourth Amendment to the United States Constitution on its face and as applied.

106.   The named Plaintiffs and the putative class are entitled to compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Defendants jointly and severally, together with interest and costs.

107.    The named Plaintiffs are entitled to punitive damages in an amount to be determined at trial against Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

108.    The named Plaintiffs and the putative class are entitled to reasonable attorneys' fees and costs to be paid by Defendants pursuant to 28 U.S.C. § 2412; and

109.    The named Plaintiffs and the putative class are entitled to such other and further relief as the Court deems just and equitable.

**SECOND CAUSE OF ACTION: 42 U.S.C. § 1983 CLAIM OF FOURTEENTH AMENDMENT VIOLATIONS**
**(Against All Defendants)**

110.    Plaintiffs bring this claim for declaratory, injunctive, and monetary relief against Defendants to redress continuing and likely future violations of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

111.    Upon information and belief, Defendants have, in violation of the Fourteenth Amendment to the United States Constitution, officially implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or custom of: (i) identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, in violation of, *inter alia*, Plaintiffs' liberty interests in self-expression, bodily integrity, and privacy in protecting those choices from being policed; and (ii) unlawfully and wrongfully searching, seizing, arresting, and charging those targeted men, including Plaintiffs, thus subjecting these men, including Plaintiffs, to discriminatory treatment in violation of the Fourteenth Amendment to the United States Constitution.

112.     The policy, practice, and/or custom of false arrests addressed herein violated Plaintiffs' rights to due process, because such false arrests and the concomitant baseless charges of public lewdness and/or exposure were unfair and not impartial, and deprived Plaintiffs of their liberty without due process of law.

113.     The policy, practice, and/or custom of false arrests and baseless charges addressed herein, of men that P.A.P.D. officers perceive as gay, or gender non-conforming, violated Plaintiffs' equal protection rights because such false arrests were based upon impermissible and discriminatory considerations.

114.     The named Plaintiffs and putative class members are at risk of prospective constitutional deprivations at the hands of Defendants because Defendants' policy, practice, and/or custom detailed above is ongoing, and Plaintiffs still have cause to use the P.A.B.T. and may have cause to use P.A.B.T. restroom urinals.  Upon information and belief, P.A.P.D. failed to train or retrain officers in non-discriminatory practices, failed to investigate these incidents or the patterns of incidents, failed to consistently systematically monitor or audit these arrests for discriminatory patterns, failed to ensure supervisors were consistently monitoring individual arrests for discrimination, and failed to consistently discipline officers who did make these arrests based on discriminatory reasons.  As a result of these failures, these unconstitutional arrests have continued.

115.     As a result, there exists a credible threat that the named Plaintiffs and putative class members will be subjected to false arrest and baseless criminal charges in the future.

116.     Plaintiffs will suffer irreparable and repeated injury unless the Court orders equitable relief.  Such injury includes, *inter alia*, the deprivation of Plaintiffs' constitutionally protected rights under the Fourteenth Amendment of the United States Constitution.

-23-

117.    For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and Defendants, in which the parties have genuine and opposing interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

118.    Compelling Defendants, their agents, employees, and successors in office, and all persons acting in concert with them, to comply with the dictates of the United States Constitution does not impose an improper or undue burden on Defendants, and, in fact, it serves the public interest by ensuring compliance with well-established Constitutional protections.

119.    Monetary damages are warranted in this case and should be awarded.  However, monetary damages alone cannot adequately address the injuries suffered by named Plaintiffs and members of the putative class.

120.    The named Plaintiffs and the putative class are entitled to the issuance of a permanent injunction prohibiting Defendants from engaging in the unlawful and unconstitutional practices alleged herein.

121.    Specifically, Plaintiffs are entitled to permanent relief enjoining and restraining Defendants, their agents, employees, successors in office, and all others acting in concert with them from identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs.

122.    The dispute entitles the named Plaintiffs and the putative class to a declaratory judgment that by engaging in the acts and conduct complained of herein, Defendants denied Plaintiffs their Fourteenth Amendment rights and protections, including, but not limited to, the

rights to due process and equal protection, including, but not limited to, the right to be free from unreasonable searches and seizures, false arrests and baseless charges, and impermissible and discriminatory targeting, and Plaintiffs' liberty interest in self-expression of gender identity in public without fear of arrest, in violation of the United States Constitution.  Such judgment will serve a useful purpose in clarifying and settling the legal issues in the case.

123.    Specifically, Plaintiffs are entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, including identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, have deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

124.     Plaintiffs are also entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, as detailed above, violate the Fourteenth Amendment to the United States Constitution on its face and as applied.

125.    The named Plaintiffs and the putative class are entitled to compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Defendants jointly and severally, together with interest and costs.

126.    The named Plaintiffs are entitled to punitive damages in an amount to be determined at trial against Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

127.    The named Plaintiffs and the putative class are entitled to reasonable attorneys' fees and costs to be paid by Defendants pursuant to 28 U.S.C. § 2412; and

128.    The named Plaintiffs and the putative class are entitled to such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

1.      Issue a Declaratory Judgment on behalf of the named Plaintiffs and the putative class with respect to the First and Second Causes of Action declaring that Defendants' acts, practices, policies, customs, and/or omissions violate the Defendants' rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by, *inter alia*, identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs.

2.      With respect to the claims set forth in the First and Second Causes of Action, issue an order under F.R.C.P. 23(b)(2) permanently enjoining and restraining Defendants, their agents, employees, successors in office, and all others acting in concert with them from engaging in unconstitutional, unlawful and discriminatory acts, practices, policies, customs, and/or omissions of identifying and targeting men using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay, or gender non-conforming, and unlawfully and wrongfully searching, seizing, and falsely

arresting and charging those targeted men, including Plaintiffs, by claiming that they were masturbating at P.A.B.T. urinals;

3.      Award the named Plaintiffs and the putative class compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Defendants jointly and severally, together with interest and costs, under F.R.C.P. 23(b)(3), for violations of the Fourth and Fourteenth Amendments to the United States Constitution;

4.      Award the named Plaintiffs and the punitive damages in an amount to be determined at trial against Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution;

5.      Award the named Plaintiffs and the putative class reasonable attorneys' fees and costs to be paid by Defendants pursuant to 28 U.S.C. § 2412; and

6.      Grant the named Plaintiffs and the putative class such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and issues properly triable by a jury.

-27-

New York, New York

March 27, 2017

Winston & Strawn LLP

By: _____

Thomas Patrick Lane, TL8983

Michael S. Elkin, ME2300
Ross M. Kramer, RK3463
Dorian S. Thomas (*application pending*)
200 Park Avenue
New York, NY 10166
(212) 294-6700


The Legal Aid Society

By: _____

William Gibney, WG1635
Kimberly Forte, KF0294
Cynthia Conti-Cook CC0778
199 Water Street
New York, NY 10038
(212) 577-3300

-29-