**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
CORNELL HOLDEN, MIGUEL MEJIA,        :
MALCOM RUSSELL, and MARCOS POLONIA   :        **1:17-cv-02192-JGK-RWL**
on behalf of themselves and all others similarly   :
situated,                            :
                                     :        **SECOND AMENDED CLASS**
                    Plaintiffs,      :        **ACTION COMPLAINT**
                                     :
        -against-                    :
                                     :
THE PORT AUTHORITY OF NEW YORK AND   :
NEW JERSEY; THE PORT AUTHORITY       :
POLICE DEPARTMENT; and MICHAEL       :
OPROMALLA, SHAUN KEHOE, JOHN TONE,   :
JORDAN ESPOSITO, MICHAEL DEMARTINO,  :
RICHARD AYLMER, PAUL MILLER, JOHN    :
FITZPATRICK, MARK MONTERO, VIJAY     :
SEETARAM, MELVIN CRUZ, MARTIN        :
JAYCARD, PAUL O'DELL and OFFICERS    :
JOHN DOE 1-93, sued in their individual capacities :
and official capacities as officers of the Port
Authority Police Department,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


        Plaintiffs Cornell Holden, Miguel Mejia, Malcom Russell, and Marcos Polonia on behalf

of themselves and all others similarly situated (collectively, "Plaintiffs"), through their

undersigned attorneys, submit this Amended Class Action Complaint, and allege as follows:

## INTRODUCTION

        1.      This class action seeks declaratory, injunctive, and monetary relief to redress the

deprivation of Plaintiffs' rights under the Constitution and laws of the United States.  The tactics

of Defendant Port Authority Police Department ("P.A.P.D.") and its officers should not and

indeed cannot stand.  They are deplorable indicia of a governmental agency that cares not about

law or liberty, choosing to violate both with baseless abandon.  Those tactics evince a policy

and/or pattern and practice of unlawful discrimination, targeting, and false arrests of men using Port Authority Bus Terminal ("P.A.B.T") restrooms.

2.      Specifically, Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 in response to Defendants' policy and/or pattern and practice of unlawful discrimination, targeting, and false arrests of men using "P.A.B.T" restrooms.

3.      Defendants' wrongful conduct includes the specific and deliberate targeting by P.A.P.D. officers of men that such officers perceive as gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, using P.A.B.T. restrooms.

4.      P.A.P.D. officers engage in a pattern and practice of targeting and wrongly arresting men that such officers perceive as gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, on baseless charges including public lewdness and exposure, falsely claiming that they were engaged in illegal conduct at P.A.B.T. restroom urinals.

5.      P.A.P.D. officers were deliberately targeting men for arrests on the discriminatory basis of actual or perceived sexual orientation, actual or perceived gender expression, and/or to boost "quality of life" arrest statistics at P.A.B.T. and/or individual P.A.P.D. officers' arrest statistics.  P.A.P.D. officers make such arrests knowing or believing that many of those arrested would ultimately be effectively forced to plead guilty to lesser charges such as disorderly conduct to avoid the public embarrassment and humiliation, potential jail sentences and fines, and potential reputational and professional harm associated with the false charges.

6.      The tactics employed by P.A.P.D. officers to conduct such targeted arrests are an exercise in unconstitutional bias.  Some of that conduct was designed to attempt to entice men who are gay or bisexual, and/or men who have sex with men into exposing themselves to men at

other urinals.  For example, plainclothes P.A.P.D. officers at times pretend to use urinals next to targeted individuals in P.A.B.T. men's restrooms.  These urinals are separated by privacy walls. Some P.A.P.D. officers proceed to stare at the targeted man while he is using the urinal.  In some cases, the officer may actually step back from the urinal in order to see around the privacy wall, in an effort to view the targeted man's hands and genitals.  In others, the officer may intentionally expose himself to the man in an effort to entice him to react lewdly.  Based solely on the officer's report of his observations, the targeted man is then arrested by a team of P.A.P.D. officers when he exits the restroom.

7.     Upon information and belief, P.A.P.D. officers specifically target men that P.A.P.D. officers perceive as gay or bisexual (based on appearance), and/or gender non-conforming (a person assigned male at birth wearing what a P.A.P.D. officer believes to be non-masculine attire or jewelry)[1], and/or men who have sex with men, for such unlawful and unconstitutional treatment.

8.     Indeed, following the wrongful arrest of Plaintiff Cornell Holden, Mr. Holden overheard P.A.P.D. officers congratulating the arresting officer and explicitly referring to him as "the gay whisperer," presumably because of the arresting officer's pattern and practice of arresting men that he perceived as gay or bisexual, and/or gender non-conforming, and/or as a man who has sex with men.

9.     This policy and/or pattern and practice of unlawful and unconstitutional discriminatory conduct is perpetuated not only by the arresting officers, but also by officers who are senior and/or had supervisory duties, such as: supervisors who instructed officers to use such

---

[1] "Gender non-conforming" is generally defined as relating to a person whose behavior or appearance does not conform to prevailing cultural and social expectations about what is appropriate to the gender that person was assigned at birth.

tactics; supervisors who signed off on the arrest paperwork of the targeted individuals without sufficiently inquiring about the officer's probable cause; tour commanders on the shifts during which the targeted individuals were arrested; and commanding officers who initiated plainclothes patrols with officers new to policing without sufficient training or supervision. Indeed, these officers with supervisory duties at a minimum reviewed, endorsed, and validated the arrests of the targeted individuals.

10.     Without judicial intervention there will be no end to Defendants' invasive, unlawful, and unconstitutional practices despite being put on notice through lawsuits and articles. The P.A.P.D. has conducted, and continues to conduct, unlawful discrimination, targeting, and false arrests of men that P.A.P.D. officers perceive as gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, using P.A.B.T. restrooms.  Because such conduct is ongoing, there is a threat of recurrent injuries to Plaintiffs.  The named Plaintiffs and other class members are at risk of further violations of their rights at the hands of the P.A.P.D.

11.     Indeed, the Port Authority and P.A.P.D. officers have been found liable for similar misconduct in the past.  Therefore, Defendants knew or should have known that the policies and/or practices alleged herein were unlawful and unconstitutional.

12.     On November 18, 2004, after a four-day trial, a jury returned a verdict in favor of Alejandro Martinez, who was arrested outside the men's room at the PATH station concourse of the World Trade Center and charged with public lewdness (he was accused by the arresting officer of having engaged in public masturbation).  At trial, the jury was supplied with evidence sufficient to conclude that the Port Authority had a custom that led to widespread public lewdness arrests *without regard to probable cause*.

-4-

13.     The jury awarded Mr. Martinez substantial damages.  Despite the jury finding of liability and the substantial monetary award, Defendants have not modified or instituted any protocol, training, supervision or monitoring of these plainclothes patrols or types of arrests to prevent it from happening again, causing the pattern of unconstitutional arrests to reoccur. Defendants continue to engage in the unlawful and unconstitutional policy and/or pattern and practice alleged herein.

14.     To end these unlawful activities, Plaintiffs seek on behalf of themselves and all others similarly situated a permanent injunction restraining P.A.P.D. officers from conducting such unlawful and unconstitutional tactics and arrests.  Plaintiffs also seek declaratory judgment and monetary damages provided for under the law, as allowed under F.R.C.P. 23(b)(2) and (b)(3).

## JURISDICTION AND VENUE

15.     Jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1346.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and because, *inter alia*, (1) Defendants The Port Authority of York and New Jersey and Port Authority Police Department are located in this judicial district and (2) all relevant events took place in this judicial district.

## PARTIES AND OTHER RELEVANT PERSONS

17.     At all times relevant to this action, Plaintiff Cornell Holden ("Mr. Holden") was a resident of New York, New York.  Mr. Holden was arrested on May 12, 2014, when he exited a P.A.B.T. restroom.  He was charged with Public Lewdness under N.Y.P.L. § 245.00, and Exposure of a Person under N.Y.P.L. § 245.01.

18.     At a court appearance in Criminal Court of the City of New York, County Of New York, Part C, on December 9, 2014, before the Hon. Robert Mandelbaum, all charges against Mr. Holden were dismissed.

19.     At the time of his arrest, Plaintiff Miguel Mejia ("Mr. Mejia") was a resident of New York, New York.  Mr. Mejia is now a resident of New Jersey.  Mr. Mejia was arrested on July 9, 2014, when he exited a P.A.B.T. restroom.  He was charged with Public Lewdness under N.Y.P.L. § 245.00.

20.     On November 17, 2014, following a trial in Supreme Court of the State of New York, County of New York, Criminal Term Part 1, the trial judge, the Hon. Larry Stephen, entered a verdict of not guilty on the charge against Mr. Mejia.

21.     At a court appearance on October 18, 2016, all charges against Mr. Mejia were dismissed.

22.     At all times relevant to this action, Plaintiff Malcom Russell ("Mr. Russell") was a resident of New York, New York.  Mr. Russell was arrested on September 23, 2014, when he exited a P.A.B.T. restroom.  He was charged with Public Lewdness under N.Y.P.L. § 245.00, and Exposure of a Person under N.Y.P.L. § 245.01.

23.     Upon information and belief, Mr. Russell's records have been sealed.

24.     At all times relevant to this action, Plaintiff Marcos Polonia ("Mr. Polonia") was a resident of New York, New York.  Mr. Polonia was arrested on August 14, 2014, when he approached a urinal in a P.A.B.T. restroom.  He was charged with Public Lewdness under N.Y.P.L. § 245.00, and Exposure of a Person under N.Y.P.L. § 245.01.

25.     On or around October 8, 2014, Mr. Polonia learned that the District Attorney's office declined to prosecute his case.

26.     Defendant The Port Authority of New York and New Jersey is and was at all times relevant herein a governmental entity created and authorized under the laws of the States of New York and New Jersey.  Its corporate office is located in New York, New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

27.     Defendant Port Authority Police Department is headquartered in Jersey City, New Jersey, with precincts located across New York, New York, including in the Port Authority Bus Terminal.  The Port Authority of New York and New Jersey and the Port Authority Police Department together are referred to herein as the "Municipal Defendants."

28.     Defendant Officers Michael Opromalla, Shaun Kehoe, John Tone, Mark Montero, and Vijay Seetaram; Sergeants Jordan Esposito, Martin Jaycard, Melvin Cruz and Paul Miller; Lieutenants Michael DeMartino, Richard Aylmer, and Paul O'Dell; Captain John Fitzpatrick; and Officers John Doe 1-93 (collectively the "Officer Defendants") are and/or were at times relevant herein duly appointed and acting officers, servants, employees and agents of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department.  At all times relevant herein, they were acting under the direction and control of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department, and were acting pursuant to either official policy, or the custom, practice, and usage of Defendant The Port Authority of New York and New Jersey and/or Defendant Port Authority Police Department.

29.     Defendant Officer Michael Opromalla is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  Officer Opromalla made 14 public lewdness arrests in 2014.

-7-

30.     Upon information and belief, Officer Opromalla was one of the P.A.P.D. officers who arrested Mr. Holden on May 12, 2014.  Upon information and belief, Officer Opromalla was the arresting officer on 13 similar cases in 2014.  Officer Opromalla is sued in his individual and official capacity.

31.     Defendant Officer Shaun Kehoe is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  Officer Kehoe made five public lewdness arrests in 2014.

32.     Upon information and belief, Officer Kehoe was one of the P.A.P.D. officers who arrested Mr. Holden on May 12, 2014.  Officer Kehoe is sued in his individual, official, and supervisory capacity.

33.     Defendant Officer John Tone is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  Officer Tone made five public lewdness arrests in 2014.

34.     Upon information and belief, Officer Tone was one of the P.A.P.D. officers who arrested Mr. Mejia on July 9, 2014.  Officer Tone is sued in his individual and official capacity.

35.     Defendant Officer Mark Montero is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  Officer Montero made four arrests for public lewdness in 2014.

36.     Upon information and belief, Officer Montero was one of the P.A.P.D. officers who arrested Mr. Russell on September 23, 2014.  Officer Montero is sued in his individual, and official capacity.

37.     Defendant Officer Vijay Seetaram is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  Officer Seetaram made 14 arrests for public lewdness in 2014.

38.     Upon information and belief, Officer Seetaram was one of the P.A.P.D. officers who arrested Mr. Polonia on September 23, 2014.  Officer Seetaram is sued in his individual and official capacity.

39.     Defendant Sergeant Jordan Esposito is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation.  Sergeant Esposito was involved in three public lewdness arrests in 2014.

40.     Upon information and belief, Sergeant Esposito was the P.A.P.D. officer who signed off on the arrest paperwork for Mr. Holden on May 12, 2014.[2]  Sergeant Esposito is sued in his individual, official, and supervisory capacity.

41.     Defendant Sergeant Martin Jaycard is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation, and was a sergeant at the time of Plaintiffs Malcom Russell's and Marcos Polonia's arrests.  Sergeant Jaycard was involved in 11 public lewdness arrests in 2014.  Upon information and belief, Sergeant Jaycard was the P.A.P.D. officer who issued the desk appearance ticket number for Mr. Russell on September 23, 2014.  Sergeant Jaycard is sued in his individual, official, and supervisory capacity.

42.     Defendant Sergeant Melvin Cruz is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this

---

[2] Upon information and belief, signing off on arrest paperwork entails reviewing the allegations reported by the arresting officers for probable cause and verifying the probable cause identified by the arresting officers as sufficient for making an arrest.

litigation.  Upon information and belief, Sergeant Cruz was the P.A.P.D. officer who signed off on the arrest paperwork for Mr. Polonia on August 1, 2014.  Sergeant Cruz is sued in his individual, official, and supervisory capacity.  This was the only lewdness arrest that Sergeant Cruz was directly involved in.

43.     Defendant Lieutenant Michael DeMartino is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation, and was a sergeant at the time of Plaintiffs' arrests.  Upon information and belief, Lieutenant DeMartino was the P.A.P.D. officer who issued the desk appearance ticket number for Mr. Holden on May 12, 2014, and signed off on the arrest paperwork for Mr. Mejia on July 9, 2014.  Lieutenant DeMartino is sued in his individual, official, and supervisory capacity.

44.     Defendant Lieutenant Paul O'Dell is an officer of the Port Authority Police Department.  Upon information and belief, he was a P.A.P.D. officer at all times relevant to this litigation, and was a lieutenant at the time of Plaintiffs arrests.

45.     Upon information and belief, Lieutenant O'Dell was the P.A.P.D. officer who signed off on the arrest paperwork for Mr. Russell on September 23, 2014.  Lieutenant O'Dell is sued in his individual, official, and supervisory capacity.

46.     Defendant Sergeant Paul Miller was an officer of the Port Authority Police Department during the relevant time period.  Upon information and belief, Sergeant Miller was a desk sergeant at the time of putative class members' arrests.  Sergeant Miller is sued in his individual, official, and supervisory capacity.  Furthermore, the deposition testimony of Officer Opromalla revealed Sergeant Miller to be one of the individuals who instructed officers to use tactics that target men who have sex with men for arrests without probable cause.

47.     Defendant Captain John Fitzpatrick was Commanding Officer of the Port

Authority Police Department at the Bus Terminal from November 2014 until January 2017.

Captain Fitzpatrick is sued in his individual, official, and supervisory capacity.  Upon

information and belief, the Commanding Officer is responsible for supervising the entire

command, as well as tactical and strategic decision-making for police efforts.  Furthermore, the

deposition testimony of Officer Opromalla revealed Captain Fitzpatrick to be one of the

individuals who instructed officers to make the arrests at issue in this case.

48.     Defendant Officers John Doe 1-93 are officers of the Port Authority Police

Department.  Upon information and belief, they were P.A.P.D. officers at all times relevant to

this litigation.  Upon information and belief, Officers John Doe 1-93 engaged in the

unconstitutional conduct alleged herein, including specifically the arrests of members of the

class.  Defendant Officers John Doe 1-93 are sued in their individual, official, and supervisory

capacity.  The true names and total number of Officers John Doe 1-93 are unknown to Plaintiffs,

and therefore Plaintiffs sue Defendants by such names.  Plaintiffs will request leave to amend

their Complaint to state the true name of Defendant Officers John Doe 1-93 if discovered.

49.     At all times relevant herein, Defendant Officers Michael Opromalla, Shaun

Kehoe, John Tone, Mark Montero, and Vijay Seetaram; Sergeants Jordan Esposito, Martin

Jaycard, Melvin Cruz, and Paul Miller; and Lieutenants Michael DeMartino, Richard Aylmer,

and Paul O'Dell; Captain John Fitzpatrick; and Officers John Doe 1-93 were acting under color

of the laws, statutes, ordinances, regulations, policies, customs, and usages of Defendant The

Port Authority of New York and New Jersey and/or Defendant Port Authority Police

Department, and were acting in the course and scope of their duties and functions as officers,

agents, servants, and employees of Defendant The Port Authority of New York and New Jersey

-11-

and/or Defendant Port Authority Police Department, and otherwise engaged in conduct

incidental to the to the performance of their lawful functions in the course of their duties.  At all

times relevant herein, they were acting for and on behalf of Defendant The Port Authority of

New York and New Jersey and/or Defendant Port Authority Police Department, with the power

and authority vested in them as officers, agents, servants, and employees of Defendant The Port

Authority of New York and New Jersey and/or Defendant Port Authority Police Department.

50.     Upon information and belief, The Port Authority of New York and New Jersey;

Port Authority Police Department;  Officers Michael Opromalla, Shaun Kehoe, John Tone, Mark

Montero, and Vijay Seetaram; Sergeants Jordan Esposito, Martin Jaycard, Melvin Cruz, and Paul

Miller; Lieutenants Michael DeMartino, Richard Aylmer, and Paul O'Dell; Captain John

Fitzpatrick; and Officers John Doe 1-93 are responsible for the injuries and damages suffered by

Plaintiffs caused by the acts alleged in this Complaint.

## FACTS

### The Port Authority Police Department and Its Pattern and Practice of Unlawful and Unconstitutional Discriminatory Conduct

51.     According to its website, "the Port Authority operates the largest and busiest bus

terminal in the nation, accommodating 57 million bus passengers and more than 2.2 million bus

movements in 2007.  On a typical weekday, nearly 200,000 passenger trips passed through the

PABT on 7,000 bus movements."[3]

52.     The P.A.P.D. is responsible for the patrol of the Holland and Lincoln Tunnels; the

Bayonne, Goethals, and George Washington Bridges; the Outerbridge Crossing; Newark, John F.

Kennedy, and LaGuardia Airports; the Port Authority Bus Terminal; the PATH train and

---

[3] *About the Port Authority Police Department*, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, http://www.panynj.gov/police/about-police.html (last visited Jan. 19, 2017).

stations; and the Port Authority Marine Terminals.  The P.A.P.D. employs more than 1,700

officers.  P.A.P.D. officers are empowered to detain and arrest individuals, and initiate

prosecutions, at their discretion.

53.     Starting in 2014, the Commanding Officer in the Bus Terminal Command started

using officers, new to the Bus Terminal, some straight out of the Port Authority Police Academy,

for plainclothes patrols without sufficient protocol, training, or supervision.  One purpose of

these patrols was to target "quality of life" crimes including, at times and depending on who was

conducting the patrol, lewd behavior at urinals in the restrooms.  These plainclothes patrols

include P.A.P.D. officers entering P.A.B.T. restroom facilities.

54.     As identified in documentation provided by the New York State Division of

Criminal Justice Services in response to a Freedom of Information Law request, under N.Y.P.L.

§ 245.00 the P.A.P.D. arrested 74 individuals in 2014, 22 individuals in 2015, 20 individuals in

2016, and 5 individuals in 2017 (as of August 18, 2017).  As such, from January 1, 2014, through

August 18, 2017, the P.A.P.D. made 121 arrests under N.Y.P.L. § 245.00 for public lewdness at

locations patrolled by the P.A.P.D.

55.     Upon information and belief, P.A.P.D officers arrested at least 69 individuals in

2014 in the P.A.B.T. on public lewdness charges; most of those arrested were accused of

masturbating in P.A.B.T. restrooms; and, according to court records, those individuals were

allegedly observed by plainclothes officers often standing next to them at an adjacent urinal.[4]

---

[4] Exhibit A, Joseph Goldstein, *Lawyers Challenge Lewdness Arrests at Port Authority Bus Terminal*, NEW YORK TIMES (Oct. 7, 2014), https://www.nytimes.com/2014/10/08/nyregion/lawyers-challenge-lewdness-arrests-at-port-authority-bus-terminal.html.

56.     Upon information and belief, P.A.P.D. officers engage in a pattern and practice of specifically targeting men using P.A.B.T. restrooms that P.A.B.T. officers perceive as gay or bisexual (based on appearance), and/or gender non-conforming (a person assigned male at birth wearing what a P.A.P.D. officer believes to be non-masculine attire or jewelry), and/or men who have sex with men, for arrest on charges including Public Lewdness under N.Y.P.L. § 245.00 and/or Exposure of a Person under N.Y.P.L. § 245.01.

57.     The P.A.P.D.'s targeting operations often proceed in a typical manner.  A plainclothes P.A.P.D. officer will approach or wait at a urinal in a P.A.B.T. restroom, sometimes for up to ten minutes, waiting for a man to approach the urinals.  The P.A.P.D. officer will then pretend to use the urinal next to or near a targeted individual.  The P.A.P.D. officer may then stare at the targeted individual, make gestures, or grab his own genitals, even expose his own genitals and/or peer over or around the privacy divider separating the urinals.  In some cases, the P.A.P.D. officer may step back from the urinal and attempt to look around the urinal's privacy wall at the individual's hands and genitals, and then exit the bathroom.  When the targeted individual reacts to the behavior of the P.A.P.D. officer, the officer will exit the restroom.

58.     When the targeted individual exits the restroom, P.A.P.D. officers will then arrest him on charges of Public Lewdness under N.Y.P.L. § 245.00 and/or Exposure of a Person under N.Y.P.L. § 245.01.

59.     In support of the charges, P.A.P.D. officers sign a sworn affidavit using identical or nearly identical language, provided by an assistant district attorney, when describing the alleged behavior of the arrestee.  P.A.P.D. officers claim, in boilerplate language they have been given by the District Attorney's office, that the targeted individual was observed masturbating.

Very often these recitations include no individualized facts or circumstances and no factual support for the conclusion that any conduct occurred in public.

60.    The officers' repeated use of boilerplate language, the implausibly high arrest rate for such alleged conduct of at least 69 arrests in 2014, sometimes with arrests for public lewdness occurring twice in one hour, or four times in two days, the non-credible nature of the allegations (observations of masturbation at P.A.B.T. urinals – separated by privacy walls – in a crowded public restroom during rush-hour periods), and the officers' entrapment-like conduct at the urinals all support the conclusion that these were unlawful, unconstitutional, targeted arrests made by P.A.P.D. officers on the discriminatory basis of actual or perceived sexual orientation, and/or to boost "quality of life" arrest statistics at P.A.B.T. and/or individual P.A.P.D. officers' arrest statistics.  While these practices continue today, the statistics further demonstrate a severe drop in the number of arrests effected in 2015 through the present.

61.    Officer testimony further revealed that no additional protocols, training, or supervision is provided for officers completing plainclothes patrols.  Indeed, Officer Tone articulated that "reasonable suspicion" is the appropriate standard for effecting public lewdness arrests, not probable cause.

62.    Such targeting, and the concomitant arrest and criminal charges, results in, among other things, severe emotional and mental distress and trauma, potential jail sentences and fines, fear of law enforcement, fear of using the P.A.B.T and other Port Authority facilities, discomfort in using public restrooms, public embarrassment and humiliation, and potential and/or actual reputational and professional harm for the falsely accused victims.

63.     Upon information and belief, Defendants are continuing their discriminatory, unlawful, and unconstitutional conduct.  Similar lewdness arrests have occurred in 2017 and 2018, subsequent to the initiation of this case.

### The Port Authority Police Department's Failure to Supervise Officer Conduct

64.     Upon information and belief, Sergeants, Tour Commanders, and the Commanding Officer of the Port Authority Bus Terminal play an active role in the on-the-job training, instruction, and supervision of officer patrols, review of arrest paperwork, and prosecution of criminal cases by the Assistant District Attorney.

65.     Sergeants and tour commanders are responsible for overseeing the patrols and arrests completed during their assigned shifts.  Indeed, both supervisors are required to review and sign off on the paperwork of any arrest completed by officers under their supervision.

66.     Officer testimony demonstrated that "reviewing" the arrest paperwork means ensuring that the forms are properly completed and that the narrative description includes all the elements of the listed charge.

67.     One supervisor testified that he "checks for probable cause" by confirming with each arresting officer that probable cause existed, but does not further investigate the facts of the case or ask for the facts that supported their conclusions that, for example, a man was masturbating or that he was in public.

68.     The Commanding Officer is further required to review and sign off on arrest paperwork for the cases prosecuted by an assistant district attorney, providing another level of supervision and review for arrests of this nature.

69.     Despite the three levels of supervisory review, named Plaintiffs and class members suffered false arrests based on unconstitutional policing practices.  The chain of

command at the Port Authority Police Department failed to adequately supervise the officers conducting plainclothes patrols in the men's restrooms at the Port Authority Bus Terminal, causing plaintiffs' false arrests.

70.     Upon information and belief, the Port Authority Police Department is continuing to fail to adequately supervise officer conduct resulting in false arrests for public lewdness and exposure of a person.

### Martinez v. Port Authority (2005)

71.     The Port Authority and P.A.P.D. officers have been found liable for similar false arrests in the past.  As a result, Defendants knew or should have known that the policies and/or practices alleged herein were unlawful and unconstitutional.

72.     On February 1, 2000, Alejandro Martinez was arrested outside the men's room at the PATH station concourse of the World Trade Center.  (Exhibit B, Martinez v. Port Authority, No. 01 Civ. 721 (PKC), 2005 WL 2143333, at *1 (S.D.N.Y. Sept. 2, 2005.))  He was charged with public lewdness, and remained in law enforcement custody for approximately 19 hours before he was released.  (Id.)  He was one of seven men arrested in separate alleged incidents of public lewdness in a single restroom of the World Trade Center's PATH station during an approximately 2.5-hour morning window.  (Id.)  Each individual was accused by the arresting officer of having engaged in public masturbation.  (Id.)

73.     Mr. Martinez was the only one of the seven arrestees who did not plead guilty to a reduced charge of disorderly conduct.  (Id.)  He proceeded to trial in state court, and after a one-day bench trial, he was acquitted.  (Id.)

74.   Mr. Martinez subsequently brought a civil action in the Southern District of New York against the Port Authority and three individual P.A.P.D. officers, asserting claims under 42 U.S.C. § 1983.  (Id.)

75.   At trial, Mr. Martinez "submitted evidence sufficient for a reasonable jury to conclude that his arrest was part of a Port Authority pattern or practice to conduct 'sweep' arrests … for the crime of public lewdness, without regard to probable cause."  (Martinez, 2005 WL 2143333, at *5.)  Mr. Martinez demonstrated that "the documentation of the public lewdness arrests contained nearly identical descriptions of the circumstances surrounding the acts of public lewdness."  (Id. at *6.)  Mr. Martinez also submitted evidence "establishing that the Port Authority had a custom of performing public lewdness arrests pursuant to a quota."  (Id. at *7.) The evidence at trial was sufficient for the jury to conclude "that based on the exhibits and testimony, these arrests occurred without probable cause."  (Id. at *7, 8 ("the jury was supplied with evidence sufficient to conclude that the Port Authority had a custom that led to widespread public lewdness arrests without regard for probable cause."))

76.   On November 18, 2004, after a four-day trial, a jury returned a verdict in Mr. Martinez's favor.  (Id. at *1.)

77.   The trial jury awarded Mr. Martinez damages in the amount of $1,104,000, which the judge remitted to $464,000.  (Id.)

78.   Despite the finding of liability in the Martinez case, and the substantial damage award, Defendants continue to engage in the unlawful and unconstitutional acts alleged herein. Defendants failed to modify any protocol, training, supervision protocol or monitoring of these plainclothes patrols or public lewdness arrests, causing these types of unconstitutional arrests to reoccur.

### The Port Authority Police Department's Failure to Investigate Its Pattern and Practice of Unlawful and Unconstitutional Discriminatory Conduct

79.     On October 7, 2014, the New York Times released an article detailing the false arrests of named plaintiffs Cornell Holden and Miguel Mejia (the "New York Times Article").

80.     Despite the highly public nature of this article and the serious nature of the allegations therein, Defendants took no steps to investigate or correct the unconstitutional pattern and practice of policing that resulted in the false arrests of named Plaintiffs and class members.

81.     Upon information and belief, no internal investigation was ever conducted following the publication of the New York Times Article and, despite the filing of this lawsuit, and notwithstanding discovery therein, no investigation into this practice has been conducted to date.

82.     Deposition testimony further revealed that no disciplinary action was taken against any Port Authority Police Officer related to the types of policing described herein, despite the unconstitutional and entrapment-style tactics used by police officers to effect these false arrests.  Similarly, there was no change of protocol, no provided training, and no additional supervision of plainclothes patrols in men's bathrooms despite the potential for invasion of commuter's privacy resulting from these patrols.

83.     Furthermore, while the New York Times Article provided recent examples of officer misconduct, the Port Authority was on notice that this pattern and practice of policing is unconstitutional given the findings in the Martinez case in 2005.

84.     Despite being on notice for more than a decade, and again put on notice in 2014, Defendants have taken no steps to investigate, correct or prevent false arrests for public lewdness and exposure of a person of men standing at urinals in P.A.B.T. restrooms.

-19-

## The Arrest of Plaintiff Cornell Holden

85.    At or around 9:05 a.m. on May 12, 2014, Plaintiff Cornell Holden was using a urinal in a P.A.B.T. restroom.

86.    While at the urinal, Mr. Holden noticed a person he later learned to be P.A.P.D. Officer Opromalla watching him from an adjacent urinal.  P.A.P.D. Officer Opromalla then stepped back from his urinal, looked around the privacy wall between the urinals in an apparent effort to see Mr. Holden's hands and genitals, and left the restroom.

87.    When Mr. Holden exited the restroom, he was arrested by other P.A.P.D. officers. He was handcuffed in a public space in the P.A.B.T., in plain view of numerous P.A.B.T. patrons, and led to the P.A.P.D. detention facility.

88.    Mr. Holden was charged with Public Lewdness under N.Y.P.L. § 245.00, and Exposure of a Person under N.Y.P.L. § 245.01.

89.    Mr. Holden was in P.A.P.D. detention for several hours.  During that time, he was fingerprinted and photographed.

90.    Defendant P.A.P.D. Lieutenant Michael DeMartino issued the desk appearance ticket number.  Defendant P.A.P.D. Sergeant Jordan Esposito signed off on the arrest paperwork. Defendant P.A.P.D. Lieutenant Richard Aylmer was the tour commander at the time of the arrest.

91.    While in a holding cell following his arrest, Mr. Holden overheard a P.A.P.D. officer being congratulated on the arrest, and being referred to by other P.A.P.D. officers as "the gay whisperer."

92.    At the time of the arrest, Mr. Holden had no criminal history.

93.     On June 27, 2014, Defendant P.A.P.D. Officer Opromalla signed a sworn affidavit in support of the charges.  In that affidavit, Officer Opromalla falsely claimed that he observed Mr. Holden masturbating at a P.A.B.T. restroom urinal.

94.     Upon information and belief, Mr. Holden was targeted for arrest by P.A.P.D. officers, including Officer Opromalla, because of his appearance, in that his clothing, hairstyle, and jewelry were such that P.A.P.D. officers perceived him to be gay or bisexual and/or gender non-conforming and/or a man who has sex with men.

95.     Following his arrest, Mr. Holden pleaded not guilty and staunchly maintained his innocence.  As a result, he was forced to appear in court a number of times over the succeeding months.  This included court appearances on July 2, 2014; September 8, 2014; October 29, 2014; and December 9, 2014.  Mr. Holden was presented with plea offers by the New York County Assistant District Attorney's Office, all of which he refused.

96.     At a court appearance on December 9, 2014, the New York County District Attorney's Office moved to dismiss the charges against Mr. Holden.  The charges were dismissed and the record was sealed.

97.     Mr. Holden has a reasonable fear of future wrongful arrests arising out of his lawful use of the P.A.B.T. and P.A.B.T. restrooms.

## The Arrest of Plaintiff Miguel Mejia

98.     At or around 5:04 p.m. on July 9, 2014, Plaintiff Miguel Mejia was using a urinal in a P.A.B.T. restroom.

99.     While at the urinal, Mr. Mejia noticed a person he later learned to be a P.A.P.D. officer watching him.  After Mr. Mejia turned his head to look at him, the P.A.P.D. officer left the restroom.

100.     When Mr. Mejia exited the restroom, he was arrested by other P.A.P.D. officers. At the time of his arrest, Mr. Mejia was not told why he was being arrested.  He was handcuffed in a public space in the P.A.B.T., in plain view of numerous P.A.B.T. patrons, and led to the P.A.P.D. detention facility.

101.     Mr. Mejia was in P.A.P.D. detention for approximately three hours.  During that time, he was fingerprinted and photographed.

102.     Mr. Mejia was charged with Public Lewdness under N.Y.P.L. § 245.00.

103.     Defendant P.A.P.D. Lieutenant Michael DeMartino signed off on the arrest paperwork as the desk sergeant.  Defendant P.A.P.D. Lieutenant Richard Aylmer was the tour commander at the time of the arrest.

104.     At the time of the arrest, Mr. Mejia had no criminal history.

105.     On July 23, 2014, Defendant P.A.P.D. Officer John Tone signed a sworn affidavit in support of the charges.  In that affidavit Officer Tone falsely claimed that he observed Mr. Mejia masturbating at a P.A.B.T. restroom urinal.  P.A.P.D. Officer Shaun Kehoe was also involved in the arrest of Mr. Mejia.

106.     Upon information and belief, Mr. Mejia was targeted for arrest by P.A.P.D. officers, including Officer Tone and/or Officer Kehoe, because of his appearance, in that his clothing, tattoos, and jewelry were such that P.A.P.D. officers perceived him to be gay or bisexual and/or gender non-conforming and/or a man who has sex with men.

107.     Following his arrest, Mr. Mejia pleaded not guilty and staunchly maintained his innocence.  As a result, he was forced to appear in court a number of times over the succeeding months.  This included court appearances on August 19, 2014 and October 14, 2014.  Mr. Mejia

was presented with plea offers by the New York County Assistant District Attorney's Office, all of which he refused.

108.    On November 17, 2014, Mr. Mejia was tried before the Hon. Larry Stephen of the Supreme Court of the State of New York, New York County, Criminal Term Part 1.  He testified in his own defense.  At the conclusion of the trial, Mr. Mejia was acquitted.

109.    Mr. Mejia has a reasonable fear of future wrongful arrests arising out of his lawful use of the P.A.B.T. and P.A.B.T. restrooms.

### The Arrest of Plaintiff Malcom Russell

110.    At or around 4:55 p.m. on September 23, 2014, while running errands, Plaintiff Malcom Russell approached a urinal in a P.A.B.T. restroom to urinate.

111.    Prior to Mr. Russell even removing his penis from his pants to urinate, he was approached by a P.A.P.D. officer in plainclothes.

112.    The officer told Mr. Russell he was under arrest for "soliciting."  Mr. Russell was then taken to the P.A.P.D. precinct in the Port Authority Bus Terminal.

113.    Mr. Russell was in P.A.P.D. detention for approximately three hours.  During that time, he was fingerprinted and photographed.

114.    Mr. Russell was charged with Public Lewdness under N.Y.P.L. § 245.00 and Exposure of a Person under N.Y.P.L. § 245.01.

115.    Defendant P.A.P.D. Sergeant Jaycard signed off on the arrest paperwork as the desk sergeant.  Defendant P.A.P.D. Lieutenant Paul O'Dell was the tour commander at the time of the arrest.

116.    Defendant former Captain John Fitzpatrick signed off on the Police Criminal Complaint Follow-Up Report as the Commanding Officer of the Port Authority Bus Terminal.

117.    Upon information and belief, Mr. Russell was targeted for arrest by P.A.P.D. officers, including Defendant P.A.P.D. Officer Montero, because of his appearance, in that his clothing, tattoos, and jewelry were such that P.A.P.D. officers perceived him to be gay or bisexual, and/or gender non-conforming, and/or a man who has sex with men.

118.    Following his arrest, upon information and belief, the arrest paperwork was sealed.

119.    Mr. Russell has a reasonable fear of future wrongful arrests arising out of his lawful use of the P.A.B.T. and P.A.B.T. restrooms.

**The Arrest of Plaintiff Marcos Polonia**

120.    At or around 5:10 p.m. on August 1, 2014, while on his way to catch a bus to teach a Zumba class, Plaintiff Marcos Polonia entered a P.A.B.T. restroom to urinate.

121.    Upon entering the restroom, Mr. Polonia observed an individual who he later determined to be Defendant Vijay Seetaram standing at a urinal, attempting to make eye contact with men using the restroom.

122.    Mr. Polonia initially approached a urinal on the same side of the restroom as Officer Seetaram and felt Officer Seetaram watching him.

123.    Because he found Officer Seetaram's behavior odd and off-putting, Mr. Polonia decided to use the urinals on the other side of the restroom.

124.    Officer Seetaram then followed Mr. Polonia to the other side of the restroom while holding his own genitals and gestured as if he were masturbating.

125.    Mr. Polonia, feeling extremely uncomfortable entered a stall to attempt to use the restroom, but could not.  He then attempted to use a urinal, but again was too uncomfortable to use the restroom.

126.     Mr. Polonia then exited the restroom and walked to his bus gate, where he observed Officer Seetaram running up to him and calling him back and away from the bus.

127.     Officer Seetaram then placed Mr. Polonia under arrest for public lewdness and exposure of a person.

128.     Mr. Polonia was in P.A.P.D. detention for several hours.  During that time, he was fingerprinted and photographed.

129.     Mr. Polonia was charged with Public Lewdness under N.Y.P.L. § 245.00 and Exposure of a Person under N.Y.P.L. § 245.01.

130.     Defendant P.A.P.D. Sergeant Cruz signed off on the arrest paperwork as the desk sergeant.  No tour commander is listed in Mr. Polonia's arrest record.

131.     Upon information and belief, Mr. Polonia was targeted for arrest by P.A.P.D. officers, including Defendant P.A.P.D. Officer Seetaram, because of his appearance, in that his brightly colored and slim fitting exercise clothing were such that P.A.P.D. officers perceived him to be gay or bisexual, and/or gender non-conforming, and/or a man who has sex with men.

132.     Mr. Polonia was never prosecuted for either charge.  On or around October 8, 2014, Mr. Polonia learned that the District Attorney's office declined to prosecute.

133.     Mr. Polonia has a reasonable fear of future wrongful arrests arising out of his lawful use of the P.A.B.T. and P.A.B.T. restrooms.

### Council Member Dromm's Letter to The Port Authority

134.     As cited above, on October 7, 2014, the New York Times published an article addressing the pattern of arrests at the P.A.B.T. that is the subject of this Complaint.  (Exhibit A.)

135.    Following the publication of that article, New York City Council Member Daniel Dromm, from New York City's 25th District, wrote a letter to the Port Authority, dated October 10, 2014.  (Exhibit C.)

136.    Council Member Dromm wrote:

I am writing to express my deep concern over policing practices at the Port Authority Bus Terminal.  A recent *New York Times* article has shed light on the pernicious pattern of Port Authority Policy Department (PAPD) officers arresting certain men for lewdness. Despite the dearth of complaints, the PAPD seems to have stationed officers in the bathroom to arrest men for allegedly masturbating.

It appears from the article that gay men are being targeted.  I am deeply disturbed by what looks like the anti-lesbian, gay, bisexual and transgender profiling, which harkens back to a very dark time in this country when the members of the LGBT community were routinely harassed by law enforcement.  I have painful memories of my own false arrest on a similar charge as a teenager, and many other gay men have similar stories.

Putting aside the LGBT dimension, I would like to say how utterly creepy and intrusive such a violation of someone's personal space is.  Why you would be putting any resources into patrolling bathrooms to monitor how people urinate is beyond comprehension.

These arrests and their prosecution are completely unacceptable.  I expect such false and apparently discriminatory arrests to end immediately.

-26-

137.    Despite Council Member Dromm's letter, Defendants continue to engage in the unlawful and unconstitutional acts alleged herein.

### P.A.P.D.'s False Arrests Have Continued

138.    Upon information and belief, despite the above-described incidents that should have alerted P.A.P.D. that officers engage in a pattern and practice of targeting and wrongly arresting men on baseless charges including public lewdness and exposure, falsely claiming that they were masturbating at P.A.B.T. urinals, P.A.P.D. failed to train or retrain officers in non-discriminatory practices, failed to investigate these incidents or the patterns of incidents, failed to consistently systematically monitor or audit these arrests for discriminatory patterns, failed to ensure supervisors were consistently monitoring individual arrests for discrimination, and failed to consistently supervise and/or discipline officers who did make these arrests based on discriminatory reasons.  As a result of these failures, these unconstitutional arrests have continued.

139.    For example, on March 13, 2016, Jeffrey K. Reed was arrested after using a P.A.B.T. restroom.  (Exhibit D, Notice of Claim of Jeffrey K. Reed.)[5]  A plainclothes P.A.P.D. officer told Mr. Reed that he had been observed masturbating at a urinal.  (Id.)  He was held in custody for approximately four hours.  (Id.)  He was charged with Public Lewdness and Exposure of a Person.  (Id.)  Mr. Reed pleaded not guilty to the charges.  (Id.)

140.    On October 18, 2016, the charges against Mr. Reed were dismissed.  (Id.)

141.    Mr. Reed subsequently filed a notice of claim against The Port Authority of New York and New Jersey, claiming, *inter alia*, false arrest and violation of his statutory and

---

[5]    Mr. Reed is not a named Plaintiff in this action.

constitutional rights arising out of "the customs and practices of the Port Authority of New York and New Jersey and its police department."  (Id.)

### The Named Plaintiffs' Injuries

142.    As a direct and proximate result of the above conduct by Defendants, and each of them, the named Plaintiffs have been harmed, which harm includes, but is not limited to:

143.    Violations of their constitutional rights to be free from unreasonable and unlawful searches and seizures, including discriminatory targeting and intrusions into reasonable expectations of privacy;

144.    Violations of their constitutional rights to due process, including liberty interests in self-expression, bodily integrity, and privacy;

145.    Violations of their constitutional rights to equal protection, including to be free from discriminatory application of the law;

146.    Severe emotional and mental distress and trauma arising out of, among other things, intimidation, harassment, and public humiliation, threats of potential jail sentences and fines, and potential and/or actual reputational and professional harm; and

147.    Other harm according to proof.

### CLASS ACTION ALLEGATIONS

148.    All claims set forth in the First and Second Causes of Action are brought by the named Plaintiffs individually and on behalf of all other similarly situated persons pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

149.    The named Plaintiffs propose the First and Second Causes of Action be certified on behalf of the following class:  persons who, because they are (1) male, (2) gay or bisexual, and/or gender non-conforming, and/or have sex with men, or perceived to be gay or bisexual,

and/or gender non-conforming, and/or have sex with men by P.A.P.D. officers, and (3) used a Port Authority Bus Terminal restroom urinal and were arrested by the P.A.P.D. for offenses under N.Y.P.L. § 245.00 and/or N.Y.P.L. § 245.01 from 2014 through the present.

150.    The claims of the proposed class representatives and those of the putative class members in the First and Second Causes of Action raise common questions of law and fact concerning, *inter alia*, whether Defendants have implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or custom of:

> Targeting men using a restroom urinal at the Port Authority Bus Terminal for false arrest and criminal charges including public lewdness and exposure, by falsely claiming that they were masturbating at urinals.

151.    These questions are common to the named Plaintiffs and to the members of the putative class because Defendants have acted and will continue to act on grounds generally applicable to both the named Plaintiffs and putative class members.

152.    Upon information and belief, members of the putative class are so numerous that joinder of all class members is impracticable.

153.    The claims of the named Plaintiffs are typical of the claims of the members of the putative class.

154.    The named Plaintiffs will fairly and adequately protect the interests of the members of the putative class.

155.    The named Plaintiffs are represented by counsel who are experienced in federal class action, including those involving civil rights issues.

156.    The issues common to the class predominate any individual issues of law or fact.

157.     In addition to the foregoing reasons, class action is the superior vehicle for litigating Plaintiffs' claims due to the financial burden and emotional toll of individual litigation, and the embarrassing nature of the false charges.

158.     As set forth above, Defendants have acted on grounds generally applicable to the members of the putative class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the class as a whole.

## CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION:  42 U.S.C. § 1983 CLAIM OF FOURTH AMENDMENT VIOLATIONS**
**(Against Officer Defendants)**

159.     Plaintiffs bring this claim for declaratory, injunctive, and monetary relief against Officer Defendants to redress continuing and likely future violations of the Fourth Amendment to the United States Constitution.

160.     Upon information and belief, Officer Defendants have, in violation of the Fourth Amendment to the United States Constitution, officially engaged in, encouraged, supervised, or otherwise sanctioned a policy, practice, and/or custom of:  (i) identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or have sex with men; and (ii) unlawfully and wrongfully stopping, searching including by intruding on reasonable expectations of privacy by looking over or around privacy dividers, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, without probable cause in violation of the Fourth Amendment to the United States Constitution.

161.     As a result of the P.A.P.D.'s failures, there exists a credible threat that the named Plaintiffs and putative class members will be subjected to false arrest and baseless criminal charges in the future.

162.     Plaintiffs will suffer irreparable and repeated injury unless the Court orders equitable relief.  Such injury includes, *inter alia*, the deprivation of Plaintiffs' constitutionally protected rights under the Fourth Amendment of the United States Constitution.

163.     For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and Officer Defendants, in which the parties have genuine and opposing interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

164.     Compelling Officer Defendants, their agents, employees, and successors in office, and all persons acting in concert with them, to comply with the dictates of the United States Constitution does not impose an improper or undue burden on Officer Defendants, and, in fact, it serves the public interest by ensuring compliance with well-established Constitutional protections.

165.     Monetary damages are warranted in this case and should be awarded.  However, monetary damages alone cannot adequately address the injuries suffered by named Plaintiffs and members of the putative class.

166.     The named Plaintiffs and the putative class are entitled to the issuance of a permanent injunction prohibiting Officer Defendants from engaging in the unlawful and unconstitutional practices alleged herein.

167.     Specifically, Plaintiffs are entitled to permanent relief enjoining and restraining Officer Defendants, their agents, employees, successors in office, and all others acting in concert

with them from identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men without probable cause, including Plaintiffs.

168.    The dispute entitles the named Plaintiffs and the putative class to a declaratory judgment that by engaging in the acts and conduct complained of herein, Officer Defendants denied Plaintiffs their Fourth Amendment rights and protections, including, but not limited to, the right to be free from unreasonable searches and seizures, and false arrest and baseless charges, in violation of the United States Constitution.  Such judgment will serve a useful purpose in clarifying and settling the legal issues in the case.

169.    Specifically, Plaintiffs are entitled to a declaration that Officer Defendants' acts, practices, policies, customs, and/or omissions, including identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, without probable cause, have deprived Plaintiffs of their rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

170.     Plaintiffs are also entitled to a declaration that Officer Defendants' acts, practices, policies, customs, and/or omissions, as detailed above, violate the Fourth Amendment to the United States Constitution on its face and as applied.

171.    The named Plaintiffs and the putative class are entitled to compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be

determined at trial against Officer Defendants jointly and severally, together with interest and costs.

172.    The named Plaintiffs are entitled to punitive damages in an amount to be determined at trial against Officer Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

173.    The named Plaintiffs and the putative class are entitled to reasonable attorneys' fees and costs to be paid by Officer Defendants pursuant to 28 U.S.C. § 2412; and

174.    The named Plaintiffs and the putative class are entitled to such other and further relief as the Court deems just and equitable.

### SECOND CAUSE OF ACTION:  42 U.S.C. § 1983 CLAIM OF FOURTEENTH AMENDMENT VIOLATIONS
### (Against Officer Defendants)

175.    Plaintiffs bring this claim for declaratory, injunctive, and monetary relief against Officer Defendants to redress continuing and likely future violations of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

176.    Upon information and belief, Officer Defendants have, in violation of the Fourteenth Amendment to the United States Constitution engaged in, encouraged, supervised, or otherwise sanctioned a policy, practice, and/or custom of: (i) identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, in violation of, *inter alia*, Plaintiffs' liberty interests in self-expression, bodily integrity, and privacy in protecting those choices from being policed as well as in using urinals shielded by privacy dividers outside of government view; and (ii) unlawfully and wrongfully searching, seizing,

arresting, and charging those targeted men, including Plaintiffs, thus subjecting these men, including Plaintiffs, to discriminatory treatment in violation of the Fourteenth Amendment to the United States Constitution.

177.    The policy, practice, and/or custom of false arrests addressed herein violated Plaintiffs' rights to due process, because such false arrests and the concomitant baseless charges of public lewdness and/or exposure were unfair and not impartial, and deprived Plaintiffs of their liberty without due process of law.

178.    The policy, practice, and/or custom of false arrests and baseless charges addressed herein, of men that P.A.P.D. officers perceive as gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, violated Plaintiffs' equal protection rights because such false arrests were based upon impermissible and discriminatory considerations.

179.    The named Plaintiffs and putative class members are at risk of prospective constitutional deprivations at the hands of Officer Defendants because Officer Defendants' policy, practice, and/or custom detailed above is ongoing, and Plaintiffs still have cause to use the P.A.B.T. and may have cause to use P.A.B.T. restroom urinals.

180.    As a result, there exists a credible threat that the named Plaintiffs and putative class members will be subjected to false arrest and baseless criminal charges in the future.

181.    Plaintiffs will suffer irreparable and repeated injury unless the Court orders equitable relief.  Such injury includes, *inter alia*, the deprivation of Plaintiffs' constitutionally protected rights under the Fourteenth Amendment of the United States Constitution.

182.    For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and Defendants, in which the parties have genuine and opposing

interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

183.    Compelling Officer Defendants, their agents, employees, and successors in office, and all persons acting in concert with them, to comply with the dictates of the United States Constitution does not impose an improper or undue burden on Officer Defendants, and, in fact, it serves the public interest by ensuring compliance with well-established Constitutional protections.

184.    Monetary damages are warranted in this case and should be awarded.  However, monetary damages alone cannot adequately address the injuries suffered by named Plaintiffs and members of the putative class.

185.    The named Plaintiffs and the putative class are entitled to the issuance of a permanent injunction prohibiting Officer Defendants from engaging in the unlawful and unconstitutional practices alleged herein.

186.    Specifically, Plaintiffs are entitled to permanent relief enjoining and restraining Officer Defendants, their agents, employees, successors in office, and all others acting in concert with them from identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs.

187.    The dispute entitles the named Plaintiffs and the putative class to a declaratory judgment that by engaging in the acts and conduct complained of herein, Officer Defendants denied Plaintiffs their Fourteenth Amendment rights and protections, including, but not limited to, the rights to due process and equal protection, including, but not limited to, the right to be free

from unreasonable searches and seizures, false arrests and baseless charges, and impermissible and discriminatory targeting, and Plaintiffs' liberty interest in self-expression of gender identity in public without fear of arrest, in violation of the United States Constitution.  Such judgment will serve a useful purpose in clarifying and settling the legal issues in the case.

188.     Specifically, Plaintiffs are entitled to a declaration that Officer Defendants' acts, practices, policies, customs, and/or omissions, including identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, have deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

189.      Plaintiffs are also entitled to a declaration that Officer Defendants' acts, practices, policies, customs, and/or omissions, as detailed above, violate the Fourteenth Amendment to the United States Constitution on its face and as applied.

190.     The named Plaintiffs and the putative class are entitled to compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Officer Defendants jointly and severally, together with interest and costs.

191.     The named Plaintiffs are entitled to punitive damages in an amount to be determined at trial against Officer Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

192.     The named Plaintiffs and the putative class are entitled to reasonable attorneys'
fees and costs to be paid by Officer Defendants pursuant to 28 U.S.C. § 2412; and

193.     The named Plaintiffs and the putative class are entitled to such other and further
relief as the Court deems just and equitable.

### THIRD CAUSE OF ACTION:  42 U.S.C. § 1983 CLAIM OF FOURTH AMENDMENT VIOLATIONS
### (Against Municipal Defendants)

194.     Plaintiffs bring this claim for declaratory, injunctive, and monetary relief against
The Port Authority of New York and New Jersey and the Port Authority Police Department to
redress continuing and likely future violations of the Fourth Amendment to the United States
Constitution.

195.     Upon information and belief, the Municipal Defendants have, in violation of the
Fourth Amendment to the United States Constitution, officially implemented, enforced,
encouraged, and/or sanctioned a policy, practice, and/or custom of:  (i) identifying and targeting
men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were
perceived to be gay or bisexual, and/or gender non-conforming, and/or have sex with men; and
(ii) unlawfully and wrongfully stopping, searching, seizing, and falsely arresting and charging
those targeted men, including Plaintiffs, without probable cause in violation of the Fourth
Amendment to the United States Constitution.

196.     The named Plaintiffs and putative class members are at risk of prospective
constitutional deprivations at the hands of Municipal Defendants because Defendants' policy,
practice, and/or custom detailed above is ongoing, and Plaintiffs still have cause to use the
P.A.B.T. and may have cause to use P.A.B.T. restroom urinals.  Officer deposition testimony
revealed that the P.A.P.D. failed to provide protocol regarding what constitutes invasion of

privacy when surveilling bathrooms in plainclothes, failed to train or retrain officers in non-discriminatory practices, failed to investigate these incidents or the patterns of incidents, failed to consistently systematically monitor or audit these arrests for discriminatory patterns, failed to ensure supervisors were consistently monitoring individual arrests for discrimination and sufficient probable cause, and failed to discipline officers who did make these arrests based on discriminatory reasons.  As a result of these failures, these unconstitutional arrests have continued.

197.     As a result of the Municipal Defendants' failures, there exists a credible threat that the named Plaintiffs and putative class members will be subjected to false arrest and baseless criminal charges in the future.

198.     Plaintiffs will suffer irreparable and repeated injury unless the Court orders equitable relief.  Such injury includes, *inter alia*, the deprivation of Plaintiffs' constitutionally protected rights under the Fourth Amendment of the United States Constitution.

199.     For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and Municipal Defendants, in which the parties have genuine and opposing interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

200.     Compelling Municipal Defendants, their agents, employees, and successors in office, and all persons acting in concert with them, to comply with the dictates of the United States Constitution does not impose an improper or undue burden on Municipal Defendants, and, in fact, it serves the public interest by ensuring compliance with well-established Constitutional protections.

201.    Monetary damages are warranted in this case and should be awarded.  However, monetary damages alone cannot adequately address the injuries suffered by named Plaintiffs and members of the putative class.

202.    The named Plaintiffs and the putative class are entitled to the issuance of a permanent injunction prohibiting Defendants from engaging in the unlawful and unconstitutional practices alleged herein.

203.    Specifically, Plaintiffs are entitled to permanent relief enjoining and restraining Municipal Defendants, their agents, employees, successors in office, and all others acting in concert with them from identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men without probable cause, including Plaintiffs.

204.    The dispute entitles the named Plaintiffs and the putative class to a declaratory judgment that by engaging in the acts and conduct complained of herein, Municipal Defendants denied Plaintiffs their Fourth Amendment rights and protections, including, but not limited to, the right to be free from unreasonable searches and seizures, and false arrest and baseless charges, in violation of the United States Constitution.  Such judgment will serve a useful purpose in clarifying and settling the legal issues in the case.

205.    Specifically, Plaintiffs are entitled to a declaration that Municipal Defendants' acts, practices, policies, customs, and/or omissions, including identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, and

unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, without probable cause, have deprived Plaintiffs of their rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

206.    Plaintiffs are also entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, as detailed above, violate the Fourth Amendment to the United States Constitution on its face and as applied.

207.    The named Plaintiffs and the putative class are entitled to compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Municipal Defendants jointly and severally, together with interest and costs.

208.    The named Plaintiffs are entitled to punitive damages in an amount to be determined at trial against Municipal Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

209.    The named Plaintiffs and the putative class are entitled to reasonable attorneys' fees and costs to be paid by Municipal Defendants pursuant to 28 U.S.C. § 2412; and

210.    The named Plaintiffs and the putative class are entitled to such other and further relief as the Court deems just and equitable.

### FOURTH CAUSE OF ACTION:  42 U.S.C. § 1983 CLAIM OF FOURTEENTH AMENDMENT VIOLATIONS
### (Against Municipal Defendants)

211.    Plaintiffs bring this claim for declaratory, injunctive, and monetary relief against Municipal Defendants to redress continuing and likely future violations of the Due Process

Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

212.    Upon information and belief, Municipal Defendants have, in violation of the Fourteenth Amendment to the United States Constitution, officially implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or custom of: (i) identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, in violation of, *inter alia*, Plaintiffs' liberty interests in self-expression, bodily integrity, and privacy in protecting those choices from being policed and (ii) unlawfully and wrongfully searching, seizing, arresting, and charging those targeted men, including Plaintiffs, thus subjecting these men, including Plaintiffs, to discriminatory treatment in violation of the Fourteenth Amendment to the United States Constitution.

213.    The policy, practice, and/or custom of false arrests addressed herein violated Plaintiffs' rights to due process, because such false arrests and the concomitant baseless charges of public lewdness and/or exposure were unfair and not impartial, and deprived Plaintiffs of their liberty without due process of law.

214.    The policy, practice, and/or custom of false arrests and baseless charges, addressed herein, of men that P.A.P.D. officers perceive as gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, violated Plaintiffs' equal protection rights because such false arrests were based upon impermissible and discriminatory considerations.

215.    The named Plaintiffs and putative class members are at risk of prospective constitutional deprivations at the hands of Municipal Defendants because Municipal Defendants' policy, practice, and/or custom detailed above is ongoing, and Plaintiffs still have cause to use

the P.A.B.T. and may have cause to use P.A.B.T. restroom urinals.  Officer deposition testimony revealed that the P.A.P.D. failed to train or retrain officers in non-discriminatory practices; failed to investigate these incidents or the patterns of incidents; failed to consistently systematically monitor or audit these arrests for discriminatory patterns; failed to ensure supervisors were consistently monitoring individual arrests for discrimination and sufficient probable cause; and failed to discipline officers who did make these arrests based on discriminatory reasons.  As a result of these failures, these unconstitutional arrests have continued.

216.    As a result, there exists a credible threat that the named Plaintiffs and putative class members will be subjected to false arrest and baseless criminal charges in the future.

217.    Plaintiffs will suffer irreparable and repeated injury unless the Court orders equitable relief.  Such injury includes, *inter alia*, the deprivation of Plaintiffs' constitutionally protected rights under the Fourteenth Amendment of the United States Constitution.

218.    For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and Municipal Defendants, in which the parties have genuine and opposing interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

219.    Compelling Municipal Defendants, their agents, employees, and successors in office, and all persons acting in concert with them, to comply with the dictates of the United States Constitution does not impose an improper or undue burden on Municipal Defendants, and, in fact, it serves the public interest by ensuring compliance with well-established Constitutional protections.

220.    Monetary damages are warranted in this case and should be awarded.  However, monetary damages alone cannot adequately address the injuries suffered by named Plaintiffs and members of the putative class.

221.    The named Plaintiffs and the putative class are entitled to the issuance of a permanent injunction prohibiting Municipal Defendants from engaging in the unlawful and unconstitutional practices alleged herein.

222.    Specifically, Plaintiffs are entitled to permanent relief enjoining and restraining Municipal Defendants, their agents, employees, successors in office, and all others acting in concert with them from identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs.

223.    The dispute entitles the named Plaintiffs and the putative class to a declaratory judgment that by engaging in the acts and conduct complained of herein, Municipal Defendants denied Plaintiffs their Fourteenth Amendment rights and protections, including, but not limited to, the rights to due process and equal protection, including, but not limited to, the right to be free from unreasonable searches and seizures, false arrests and baseless charges, and impermissible and discriminatory targeting, and Plaintiffs' liberty interest in self-expression of gender identity in public without fear of arrest, in violation of the United States Constitution.  Such judgment will serve a useful purpose in clarifying and settling the legal issues in the case.

224.    Specifically, Plaintiffs are entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, including identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay

or bisexual, and/or gender non-conforming, and/or men who have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, have deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

225.    Plaintiffs are also entitled to a declaration that Defendants' acts, practices, policies, customs, and/or omissions, as detailed above, violate the Fourteenth Amendment to the United States Constitution on its face and as applied.

226.    The named Plaintiffs and the putative class are entitled to compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Municipal Defendants jointly and severally, together with interest and costs.

227.    The named Plaintiffs are entitled to punitive damages in an amount to be determined at trial against Municipal Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

228.    The named Plaintiffs and the putative class are entitled to reasonable attorneys' fees and costs to be paid by Defendants pursuant to 28 U.S.C. § 2412; and

229.    The named Plaintiffs and the putative class are entitled to such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

1.    Issue a Declaratory Judgment on behalf of the named Plaintiffs and the putative class with respect to the First and Second Causes of Action

declaring that Defendants' acts, practices, policies, customs, and/or omissions violate the Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by, *inter alia*, identifying and targeting men, including Plaintiffs, using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs.

2.    With respect to the claims set forth in the First and Second Causes of Action, issue an order under F.R.C.P. 23(b)(2) permanently enjoining and restraining Defendants, their agents, employees, successors in office, and all others acting in concert with them from engaging in unconstitutional, unlawful and discriminatory acts, practices, policies, customs, and/or omissions of identifying and targeting men using restroom urinals at the P.A.B.T., on the basis that they were perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men, and unlawfully and wrongfully searching, seizing, and falsely arresting and charging those targeted men, including Plaintiffs, by claiming that they were masturbating at P.A.B.T. urinals;

3.    Award the named Plaintiffs and the putative class compensatory damages for economic harm, pain and suffering, and emotional and mental distress in an amount to be determined at trial against Defendants jointly and severally, together with interest and costs, under F.R.C.P. 23(b)(3), for

-45-

violations of the Fourth and Fourteenth Amendments to the United States Constitution;

4.     Award the named Plaintiffs and the putative class punitive damages in an amount to be determined at trial against Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution;

5.     Award the named Plaintiffs and the putative class reasonable attorneys' fees and costs to be paid by Defendants pursuant to 28 U.S.C. § 2412; and

6.     Grant the named Plaintiffs and the putative class such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and issues properly triable by a jury.


New York, New York

November 28, 2018

**WINSTON & STRAWN LLP**

By: */s/ Thomas Patrick Lane*
Thomas Patrick Lane, TL8983
Michael S. Elkin, ME2300
Seth E. Spitzer, SS6387
Ross M. Kramer, RK3463
200 Park Avenue
New York, NY 10166
(212) 294-6700

Daniel R. McNeely (*pro hac vice*)
35 W. Wacker Dr.
Chicago, IL 60601
312-558-5600


**THE LEGAL AID SOCIETY**


By: /s/ *Cynthia Conti-Cook*
Cynthia Conti-Cook CC0778
199 Water Street
New York, NY 10038
(212) 577-3265