**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CORNELL HOLDEN and MIGUEL MEJIA, on
behalf of themselves and all others similarly
situated,

                     Plaintiffs,

       -against-

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY; THE PORT AUTHORITY
POLICE DEPARTMENT; and MICHAEL
OPROMALLA, SHAUN KEHOE, JOHN TONE,
JORDAN ESPOSITO, MICHAEL DEMARTINO,
RICHARD AYLMER, PAUL MILLER, JOHN
FITZPATRICK, PAUL O'DELL and OFFICERS
JOHN DOE 1-97, sued in their individual capacities
and official capacities as officers of the Port
Authority Police Department,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**1:17-cv-02192-JGK-RWL**


# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTS .............................................................................................................................. 1

LEGAL STANDARDS ...................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

    A.     The Putative Class satisfies the Rule 23(a) prerequisites. ..................................... 6

         1.     The Proposed Class is Sufficiently Numerous ............................................ 6

         2.     The Claims of the Proposed Class Share Common Questions of Law and Fact .................................................................................................. 9

         3.     The Injuries of the Named Plaintiffs Are Typical of the Class ................ 15

         4.     Both Named Plaintiffs and Proposed Class Counsel Will Adequately Protect the Interests of the Class ........................................... 17

         5.     Ascertainability ......................................................................................... 18

    B.     Plaintiffs satisfy the requirements of Rule 23(b)(2) and (3). ............................. 19

         1.     Plaintiffs class satisfies the requirements for certification under Rule 23(b)(2) .......................................................................................... 19

         2.     Plaintiffs class satisfies the requirements for certification under Rule 23(b)(3) .......................................................................................... 20

              a.     The Class Members Have No Interests in Separate Actions ....... 23

              b.     The Extent And Nature Of Any Litigation Concerning The Controversy Already Begun By Or Against Class Members ....... 24

              c.     The Desirability Or Undesirability Of Concentrating The Litigation Of The Claims In The Particular Forum ..................... 24

              d.     Manageability of the Class Action .............................................. 25

CONCLUSION ................................................................................................................ 25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)........................................................................9

*Alidina v. Penton Media, Inc.*,
  143 F. Supp. 2d 363 (S.D.N.Y. 2001)........................................................17

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 634, 117 S.Ct. 2231 (1997)........................................................23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...................................................................................21

*Boucher v. Syracuse University*,
  164 F.3d 113 (2nd Cir. 1999)......................................................................7

*Brown v. Kelly*,
  609 F.3d 467 (2d. Cir. 2010)...........................................................9, 15, 21

*Burley v. City of New York*,
  2005 WL 668789 (S.D.N.Y. Mar. 23, 2005) ..............................................8

*Casale v. Kelly*,
  257 F.R.D. 396 (S.D.N.Y. 2009) .....................................................8, 23, 24

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007).......................................................................7

*Chen-Oster v. Goldman, Sachs & Co.*,
  325 F.R.D. 55 (S.D.N.Y. 2018) ...........................................................11, 23

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994).........................................................................19

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..........................................................................7

*Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007).........................................................................23

*D'alauro v. GC Services Ltd. Partnership*,
  168 F.R.D. 451 (E.D.N.Y. 1996) ...............................................................24

*Daniels v. City of New York,*
198 F.R.D. 409 (S.D.N.Y. 2001) ...................................................................9, 17

*Darquea v. Jarden Corp.,*
No. 06 Civ. 722 (CLB), 2008 WL 622811 (S.D.N.Y. Mar. 6, 2008) ......................17

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d. Cir. 2006)...............................................................................17

*Dubin v. E.F. Hutton Group, Inc.,*
No. 88 CIV 0876 (PKL), 1990 WL 105757 (S.D.N.Y. July 20, 1990) ...................7

*Floyd v. City of New York,*
283 F.R.D. 153 (S.D.N.Y. 2012) ..................................................................7, 9, 10

*Golden v. Zwickler,*
394 U.S. 103 (1969).............................................................................................20

*Hill v. County of Montgomery,*
2018 WL 3979590 (N.D.N.Y Aug. 20, 2018) .......................................................18

*Latino Officers Ass'n City of New York v. City of New York,*
209 F.R.D. 79 (S.D.N.Y. 2002) ...........................................................................15

*Loper v. New York City Police Dep't,*
135 F.R.D. 81 (S.D.N.Y. 1991) ...........................................................................19

*Louis M. v. Ambach,*
113 F.R.D. 133 (N.D.N.Y. 1986) .........................................................................11

*Marisol A. v. Guliani,*
126 F.3d 372 (2d. Cir. 1997)......................................................................6, 9, 19

*Martinez v. Port Auth. of N.Y. & N.J.,*
No. 01 CIV. 721 (PKC), 2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005),
*aff'd sub nom. Martinez v. The Port Auth. of New York & New Jersey,*
445 F.3d 158 (2d Cir. 2006).........................................................................8, 20

*Mazzei v. Money Store,*
829 F.3d 260 (2d. Cir. 2016)................................................................................21

*Monell v. Dep't of Social Services of City of New York,*
436 U.S. 658 (1978).............................................................................................13

*In re NYSE Specialists Sec. Litig.,*
260 F.R.D. 55 (S.D.N.Y. 2009) ...................................................................6, 7, 17

*In re Petrobas Securities*,
862 F.3d 250 (2d Cir. 2017)......................................................................6, 18, 21, 22

*Port Auth. Police Benevolent Ass'n v. Port Auth.*,
698 F.2d 150 (2d Cir. 1983).................................................................................9

*Ray M. by Juana D. v. Board of Educ. of City School Dist. Of City of New York*,
884 F. Supp. 696 (E.D.N.Y. 1995) ......................................................................11

*Robidoux v. Celani*,
987 F.2d 936 (2d Cir. 1993)...........................................................................15, 16

*Robinson v. Metro–N. Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001)...............................................................................15

*In re Sadia*,
269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................................7

*Stinson v. City of New York*,
282 F.R.D. 360 (S.D.N.Y. 2012) ...............................................................9, 14, 15

*Sykes v. Mel Harris & Assocs., LLC*,
285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd sub nom.*
*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015).........................9

*Trief v. Dun & Bradstreet Corp.*,
144 F.R.D. 193 (S.D.N.Y. 1992) ...........................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016).......................................................................................21

*Ventura v. New York City Health and Hosps. Corp.*,
125 F.R.D. 595 (S.D.N.Y. 1989) .........................................................................14

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001).....................................................................21, 22, 25

*Wal-mart v. Dukes*,
564 U.S. 338 (2011).....................................................................................13, 19

*Zivkovic v. Laura Christy LLC*,
329 F.R.D. 61 (S.D.N.Y. 2018) ..........................................................................19

**Statutes**

42 U.S.C. § 1983......................................................................................1, 10

N.Y.P.L. § 245 .............................................................................................7, 8

N.Y.P.L. § 245.00 ..........................................................................................3, 11, 16, 19

N.Y.P.L. § 245.01 .........................................................................................................3, 19

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................1, 6, 17, 26

Fed. R. Civ. P. 23(a) ................................................................................... *passim*

Fed. R. Civ. P. 23(b) ................................................................................... *passim*

*Port Authority Police Department*, THE PORT AUTHORITY OF NEW YORK AND
    NEW JERSEY, http://www.panynj.gov/police/about-police.html ...............................................2

## INTRODUCTION

For years, Defendants have engaged in a policy and practice of targeting for arrest men using urinals at the Port Authority Bus Terminal ("PABT") based on preconceived notions about their sexual identity. This appalling conduct is in violation of the Constitution and laws of the United States. These tactics, employed by officers of the Port Authority Police Department ("PAPD."), are illegal and should not stand. Pursuant to 42 U.S.C. § 1983 and Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs now seek certification of the class of individuals who have suffered under this practice—men who have been falsely arrested simply for using the public urinals at the PABT.

Discovery has demonstrated the existence of a class of individuals who have suffered false arrest pursuant to the PAPD's rampant discriminatory practice. Over <u>70</u> individuals were arrested during the relevant time period under similar facts or circumstances. Given the similarity of the arrests across the class, this case presents common questions for the court, which predominate over any individualized inquiry. Plaintiffs' injuries are typical of the class, as they suffered the same injury under the same factual circumstances. Moreover, the class representatives and putative class counsel are adequate representatives, and have diligently pursued the claims of the absent class members. Furthermore, Plaintiffs are entitled to injunctive relief given the real and immediate threat of repetition.

For the reasons discussed herein, Plaintiffs respectfully request that this Court certify the putative class.

## FACTS

The Port Authority of New York and New Jersey ("Port Authority") operates many of the main transit hubs in New York and New Jersey. One of these hubs is the PABT, which is "the largest and busiest bus terminal in the nation, accommodating approximately 57 million bus

passengers and more than 2.2 million bus movements. *See About the Port Authority Police Department*, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, http://www.panynj.gov/police/about-police.html (last visited Jan. 19, 2017). On a typical weekday, nearly 200,000 passenger trips pass through the PABT on 7,000 bus movements. *Id.* The PAPD is responsible for the patrol of all Port Authority stations, including the PABT. S*ee* Declaration of Seth E. Spitzer in Support of Plaintiffs' Motion for Class Certification ("Spitzer Decl.") Ex. 7 at 24:6-15; Ex. 11 at 27:2-14; Ex. 12 at 24:2-24.[1]

Beginning in 2014, the PABT implemented plainclothes policing through a "Tactical Patrol Unit" ("TPU") in order to observe crimes that would be unobservable in uniform. *See id*. at Ex. 40 ("[d]uring this E.D. period, the Bus Terminal command continues turning out TPU, [Tactical Patrol Unit/plain–clothes]"); *see also* Ex. 7 at 98:9-25; 99:8-10. These patrols were assigned to new officers who had no plainclothes police training or on-the-job experience, rather than to senior officers. *See id.* at Ex. 16 at 35:16-2; Ex. 19 at 26:15-17; Ex. 21 at 27:21-23; Ex. 23 18:2-3; *see also* at Ex. 26 (Expert report of Dr. John F. Pfaff, Ph.D, concluding that PAPD officers Kehoe, Opromalla, Seetaram, Tone and Trubia were responsible for a majority of public lewdness arrests during the relevant period). The plainclothes patrols toured the PABT, including inside of the men's restrooms.

The advent of the TPU at the PABT coincides with a startling trend in arrests in the men's restrooms. Beginning in 2014, arrest numbers for public lewdness for alleged lewd conduct occurring at a urinal skyrocketed. Indeed, in 2014 alone, PAPD officers arrested at least 69 individuals on public lewdness charges. *See id.* at Ex. 27. All of the men arrested were accused of

---

[1] All documents produced by the Port Authority, or that make reference to such produced documents, and excerpts of deposition testimony of Port Authority witnesses have been filed under seal pursuant to the Protective Order. ECF No. 60 at ¶¶2, 8-9.

masturbating in the restroom, and many of those individuals were allegedly observed by plainclothes officers standing at an adjacent urinal. *See, e.g., id.* at Ex. 1 at ¶10; Ex. 2 at ¶8; Ex. 4 at ¶7; Ex. 5 at ¶3; Ex. 3 ¶6; Ex. 6 at ¶4. As described in detail below, the officers were not merely walking into the bathrooms and making observation; officers were standing at urinals, making eye contact with patrons, smiling or smirking, exposing their own genitals, and otherwise attempting to have non-verbal communication with men. *See id.* at Ex. 9 at 84:20-25, 85:2-11, 94:10-20; Ex. 10 at 172:18-25, 173:2-8; Ex. 13 at 74:4-13; Ex. 15 at 58:22-25, 59:2-3; Ex. 16 at 163:18-22; Ex. 19 at 114:15-19; Ex. 21 at 156:7-14. The class is comprised of men who were the victims of this pattern of conduct.

Through this motion, Plaintiffs seek to certify the following class:

> persons who, because they are (1) male, (2) gay or bisexual, and/or gender non-conforming, and/or have sex with men, or perceived by PAPD officers to be gay or bisexual, and/or gender non-conforming, and/or to have sex with men, and (3) used a PABT restroom urinal and were arrested by the PAPD for offenses under N.Y.P.L. § 245.00 and/or N.Y.P.L. § 245.01 from 2014 through the present.

The circumstances surrounding the arrests of the putative class members follow the same pattern: A plainclothes PAPD officer will wait in a PABT restroom, sometimes for up to ten minutes, until another man approaches the urinals. *See e.g.*, *id.* at Ex. 23 at 69:1-70:25; Ex. 19 at 171:12-172:12. The PAPD officer will then pretend to use the urinal next to or near a targeted individual. *See, e.g.*, *id.* at Ex. 19 at 112:15-113:3, 114:10-19; Ex. 23 at 33:20-34:10; Ex. 14 at 157:8-11; Ex. 1 ¶10. The PAPD officer then attempts to get the attention of the targeted individual, by staring, making gestures, grabbing his own genitals, exposing his own genitals, and/or peering over or around the privacy divider separating the urinals. *See id.* Ex. 3 at ¶6; Ex. 5 at ¶¶3-4; Ex. 20 at 120:18-22. When the targeted individual reacts to the behavior of the PAPD officer, the officer will exit the restroom. When the targeted individual exits the restroom, PAPD officers will then arrest him on

charges of Public Lewdness under N.Y.P.L. § 245.00 and/or Exposure of a Person under N.Y.P.L. § 245.01. *See id*. Ex. 19 at 203:15-19.

Following the arrest, the arresting officer signs a sworn affidavit in support of the charges using boilerplate language. *Compare id.* at Ex. 28 at PA002537 *with* Ex. 30 at PA001887. PAPD officers claim, in language provided by the District Attorney's office, that they observed the targeted individual masturbating. *See e.g.*, *id.* Ex. 23 at 161:10-25, 165:6-10. These recitations often include no individualized facts or circumstances, and no factual support for the conclusion that any alleged conduct occurred in public. *See id.* at Ex. 23 at 170:22-171:14 (acknowledging that he omitted important details from a report). The officers' repeated use of boilerplate language, the implausibly high arrest rate for such alleged conduct of at least 69 arrests in 2014, sometimes with arrests for public lewdness occurring twice in one hour, the non-credible nature of the allegations (observations of masturbation at PABT urinals – separated by privacy walls – in a crowded public restroom during rush-hour periods), and the officers' targeted conduct at the urinals all support the conclusion that these were unlawful, unconstitutional, false arrests made by PAPD officers.

Discovery has revealed that PAPD officers receive no plainclothes policing training either at the academy or onsite. *See id.* at Ex. 19 at 85:25-86:4; Ex. 16 at 26:9-11; Ex. 11 at 70:13-18 (testimony of Officer DeMartino stating that he never instructed officers on plainclothes policing). PAPD officers receive no police training related specifically to offenses occurring in private spaces, or to sexual offenses. *See id.* at Ex. 19 at 36:6-16; Ex. 16 at 119:20-25, 120:2-3; Ex. 11 at 82:4-25. Perhaps most troubling, however, is that PAPD officers receive minimal training regarding biased-based policing. *See id.* at Ex. 19 at 35:9-36:5; Ex. 11 at 201:7-25.

Furthermore, officers at the PABT are only minimally supervised. Supervising officers review the paperwork submitted by an arresting officer to ensure that it is filled out and rarely—if ever—press the arresting officer on the factual circumstances surrounding an arrest. *See id.* at Ex. 12 at 59:3-60:23; Ex. 15 at 55:16-56:5; Ex. 22 at 68:3-19, 149:18-21. Officer testimony revealed that supervisors do not see it as their job to question the officer reporting the arrest, even if the underlying facts might suggest that the alleged conduct could not possibly have occured in public view. *See id.* Ex. 8 at 132:22-133:23; Ex. 9 at 217:15-217:24. The failure to adequately train and supervise officers resulted in the false arrests of members of the putative class, uniformly impacting each arrested individual.

Despite an individual suit on nearly identical facts brought in 2005, a New York Times article detailing the facts of the named plaintiffs' arrests, and a censuring letter from a New York City Councilman, the Port Authority has yet to make any changes to its policies, training or practices and continues to employ plainclothes units to police the restrooms. *See id.* Ex. 13 at 133:2-134:12 (explaining that he never investigated Plaintiffs' claims after receiving notice of them because he did not believe them); Ex. 9 at 246:14-252:4. The most recent arrests featuring similar facts occurred *after* the filing of this lawsuit. *See, e.g., id.* Ex. 37. As such, Plaintiffs and putative class members face a real and immediate threat of repetition on each return to the PABT.

## LEGAL STANDARDS

Class certification is appropriate where the proposed class meets, by a preponderance of the evidence, the requirements of FED. R. CIV. P. 23(a), and the proposed class constitutes one of the types of classes enumerated in FED. R. CIV. P. 23(b). *See* FED. R. CIV. P. 23(a); (b)(1)-(3). In order to meet the prerequisites of Rule 23(a), the proposed class must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact that are common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect all interests of the class. Fed. R. Civ. P. 23(a); *Marisol A. v. Guliani*, 126 F.3d 372, 375 (2d Cir. 1997).

In addition, courts in this circuit have found an implied requirement of ascertainability. In *In re Petrobas Securities*, the Second Circuit "clarif[ied] the ascertainability doctrine's substance and purpose," holding that it requires that "a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). Ascertainability is a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269.

Plaintiffs must also meet the criteria for at least one of the Rule 23(b) class types. Here Plaintiffs seek certification under Rule 23(b)(2) and (3). ECF No. 117, Am. Compl. ¶¶44-46. Certification under Rule 23(b)(2) is appropriate where the defendant has acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief appropriate. Fed. R. Civ. P. 23(b)(2). A class must be certified pursuant to Rule 23(b)(3) where "the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

For the reasons discussed below, the putative class satisfies each of the above requirements of Rule 23.

## ARGUMENT

### A. The Putative Class satisfies the Rule 23(a) prerequisites.

Each of the Rule 23(a) factors in considered in turn below.

### 1. The Proposed Class is Sufficiently Numerous.

For certification to be appropriate, the proposed class must be so numerous that joinder of all individual members would be impracticable. *See In re NYSE Specialists Sec. Litig*., 260 F.R.D. 55, 69–70 (S.D.N.Y. 2009). "The numerosity requirement in Rule 23(a) does not mandate that joinder of all parties be impossible—only that difficulty or inconvenience of joining all members make use of class action appropriate." *Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012) (*citing Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007)). While there is no strict threshold to satisfy numerosity, sufficient numerosity is presumed with a class of forty members or more. *NYSE Specialists*, 260 F.R.D. at 70 (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *accord In re Sadia*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). The exact number of class members, however, need not be known at the time of filing. *See, e.g. In re Sadia,* 269 F.R.D. at 309 (numerosity satisfied where plaintiffs had not ascertained the precise number of potential class members at the class certification stage).[2]

As identified in data provided by the New York State Division of Criminal Justice Services in response to a Freedom of Information Law request, 79 individuals have been arrested in the PABT by the PAPD under N.Y.P.L § 245 for public lewdness during the relevant time period. The PAPD arrested 64 individuals in the PABT in 2014, 1 individual in 2015, 6 individuals in 2016, and 2 individuals in 2017 (as of August 18, 2017). Many of these arrests occurred as a result of alleged conduct at urinals. *See id.* at Ex. 26 at ¶12; *see, e.g.*, Exs. 1-6.

Additionally, class certification is appropriate because the precise number of *future* class members cannot be enumerated or identified. *See Boucher v. Syracuse University*, 164 F.3d 113,

---

[2] The Southern District of New York has determined that a class of twenty potential members is enough to meet the numerosity requirement. *See Dubin v. E.F. Hutton Group, Inc.,* No. 88 CIV. 0876 (PKL), 1990 WL 105757, at *4 (S.D.N.Y. July 20, 1990) ("the court can make a reasonable estimate at this time of twenty to fifty putative class members, which is certainly enough to meet the numerosity requirement.")

119 (2nd Cir. 1999) (finding class of present and future class members would satisfy numerosity requirement). Defendants are continuing their discriminatory, unlawful, and unconstitutional conduct. Despite being on notice for more than a decade since an S.D.N.Y. Court found against the Port Authority for substantially the same conduct, and again being put on notice in 2014 by the New York Times article, Defendants have taken no steps to investigate, correct or prevent false arrests for public lewdness in the PABT bathrooms. *See Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 CIV. 721 (PKC), 2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005), *aff'd sub nom. Martinez v. The Port Auth. of New York & New Jersey*, 445 F.3d 158 (2d Cir. 2006); Spitzer Decl. Ex. 24; Ex. 13 at 110:19-22, 133:1-135:4; Ex. 19 at 165:21-166:5. A common sense inference or assumption is a proper method of satisfying the numerosity requirement. *See Burley v. City of New York*, 2005 WL 668789, at *3 (S.D.N.Y. Mar. 23, 2005) ("Plaintiffs do not need to provide a precise number of putative class members," since a court may make "common sense assumptions" to support a finding of numerosity) (citations omitted); *see also Casale v. Kelly*, 257 F.R.D. 396, 405 (S.D.N.Y. 2009) ("[S]peculation is permitted in the case of prospective classes for injunctive relief on behalf of those who will be harmed by future allegedly wrongful conduct, at least when joined with a fixed class of individuals suffering current harm.") This pattern and practice has persisted throughout the relevant time period, and it is reasonable to believe that that the number of future class members will also number in the hundreds.

Given the number of individuals arrested by the PAPD under N.Y.P.L § 245 in the relevant time period and the potential to identify future class members, Plaintiffs' class meets the numerosity requirement.

### 2.    The Claims of the Proposed Class Share Common Questions of Law and Fact

For class certification to be appropriate, plaintiffs' grievances must share a common question of law or fact. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (*citing In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir. 1987)). Commonality, however, does not require that all class members make identical claims, only that common issues of fact or law affect all members of the class. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (*citing Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153–54 (2d Cir. 1983)); *see also Sykes v. Mel Harris & Assocs.*, *LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ("The Rule does not require all questions of law or fact to be common. Indeed, even a single common question will suffice."). Furthermore, "[t]he fact that the claims from the proposed class stem from the same alleged unconstitutional conduct of the defendants proves the existence of common questions of law or fact." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001).

Courts have found commonality satisfied where plaintiffs allege the same injury resulting from defendant's a specific policy. *See, e.g., Stinson v. City of New York*, 282 F.R.D. 360, 370 (S.D.N.Y. 2012) (commonality requirement satisfied where Plaintiffs alleged a specific policy promulgated by Defendants, namely the practice by which N.Y.P.D. officers issued summonses without probable cause in order to meet a quota). "[T]he Second Circuit has reiterated the rule that 'where plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is a strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited." *Floyd,* 283 F.R.D. at 173 (*citing Brown v. Kelly*, 609 F.3d 467, 468 (2d. Cir. 2010)) (internal quotations omitted).

In *Floyd v. City of New York*, plaintiffs brought a putative class action under 42 U.S.C. § 1983, against the city of New York, city officials, and individual officers alleging a policy or practice of unlawful stop and frisks by the N.Y.P.D. on the basis of race or national origin in violation of the Fourth and Fourteenth Amendments. *Id.* The Southern District of New York held that "Rule 23(b)(2) suits remain appropriate mechanisms for obtaining injunctive relief in cases where a *centralized policy* is alleged to impact a large class of plaintiffs, *even when the magnitude (and existence) of the impact may vary by class member.*" *Floyd,* 283 F.R.D. at 173 (emphasis added).

The commonality requirement is readily met here because plaintiffs are all victims of PAPD's pattern and practice of targeted public lewdness arrests on the discriminatory basis of actual or perceived sexual orientation. Deposition testimony and the affidavits of absent class members have demonstrated this discriminatory pattern of policing. This pattern and practice that the PAPD failed to investigate, failed to supervise and failed to discipline any officers for, includes

- PAPD officers approaching or waiting at urinals, sometimes for upwards of ten minutes, waiting for a man to approach the urinals, *see e.g.*, Spitzer Decl. Ex. 23 at 69:1-70:25; Ex. 19 at 171:12-172:12;

- The PAPD officer may pretend to use the urinal next to or near a targeted individual, *see, e.g.*, *id.* at Ex. 19 at 112:15-113:3, 114:10-19; Ex. 23 at 33:20-34:10; Ex. 14 at 157:8-11; Ex. 1 at ¶10;

- The PAPD officer will then stare at the individual or make eye contact with men using the urinals to urinate, *see, e.g.*, *id.* at Ex. 19 at 76:21-77:4; Ex. 1 at ¶10; Ex. 2 at ¶8; Ex. 4 at ¶7; Ex. 5 at ¶3; Ex. 3 at ¶6;

- The PAPD officer may then gesture or grab their genitals in an attempt to instigate a reaction from the individuals urinating, *see, e.g.*, *id.* Ex. 5 at ¶3-4; Ex. 3 at ¶6; *see also id.* at Ex. 20 at 120:18-22;

- In some cases, the PAPD officer will peer or attempt to peer over the dividers between the urinals to get a better look at the individuals urinating, *see e.g.*, *id.* at Ex. 23 at 69:1-70:25; Ex. 19 at 76:21-77:4.

*See also id.* at Ex. 25 at ¶19 ("Tactics repeat themselves: plainclothes officers entice restroom patrons by standing at urinals for extended periods, making eye or verbal contact, or seemingly touching themselves in a sexual manner.").

All of the individuals that provided affidavits suffered false arrests and described the same unconstitutional policing patterns and practices. *See* Spitzer Decl. Exs. 1-6. All of the individuals described an officer staring at them or attempting to make eye contact in the bathroom stall and then proceeding to exit the restroom and wait for them outside. *See e.g.*, *id.* at Ex. 1 at ¶10; Ex. 2 at ¶8; Ex. 4 at ¶7; Ex. 5 at ¶3; Ex. 3 at ¶6; Ex. 6 at ¶6. When the targeted individual exits the restroom, PAPD officers then arrest the targets on charges of public lewdness or exposure of a person under N.Y.P.L. § 245.00. *See e.g.*, *id.* at Ex. 1 at ¶4; Ex. 2 at ¶3; Ex. 4 at ¶3; Ex. 5 at ¶1; Ex. 3 at ¶3. Because plaintiffs "are challenging a *practice* of [defendants'], not conduct with respect to the individual plaintiff[s]" the commonality requirement is satisfied. *Ray M. by Juana D. v. Board of Educ. of City School Dist. Of City of New York*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (citing *Louis M. v. Ambach*, 113 F.R.D. 133, 136 (N.D.N.Y. 1986)).

In support of the charges, PAPD officers sign sworn affidavits using identical or nearly identical language when describing the alleged behavior of the arrestee. PAPD officers claim, in wrote language purportedly provided by the District Attorney's office, that the targeted individual was observed masturbating. Nearly every arrest record used some variation of the following phrase "[a]t T/P/O Def was in a public restroom in full view of the public manipulating his naked erect penis in a back and forth motion." *See e.g.*, *id.* at Exs. 30-34; *see also id.* at ¶20, FN 22. Very often these recitations include no individualized facts or circumstances and no factual support for the conclusion that any conduct occurred in public. *See e.g., id.* at Exs. 30-34; *See also id.* at Ex. 25 at ¶20. Officers routinely conclude that conduct was "in public" without explaining how conduct

done facing a urinal, witnessed from an adjacent urinal, is sufficiently public to sustain criminal accusations.

Plaintiffs' expert reports submitted by Dr. John F. Pfaff and Dr. Jason A. Pierceson further support a finding of a centralized policy.[3] Dr. Pfaff examined the statistical patterns present in PAPD arrests at the PABT. Dr. Pfaff concluded that the patterns in behavior suggested there was an underlying cause beyond the acts of a few rogue officers and at the very least the patterns were common and clear enough that supervisors must have been aware and therefore failed to investigate or correct them. Specifically, Dr. Pfaff noted that the arrests for public lewdness were "idiosyncratic" and "[t]hey appear[ed] to take place at different times of the day than other arrests—at times when one would expect public masturbation to be *less* frequent, not more (morning and evening rush hours)." Spitzer Decl. Ex. 26 at 3, 11, 14-15. (emphasis in the original). Additionally, Dr. Pfaff's statistical analysis revealed that 70% of the public lewdness arrests in the PABT in 2014 were executed by only five PAPD officers. *See id.* at 18-21. These trends in PA's arrest data and the others analyzed by Dr. Pfaff, led him to conclude that "the spike in public lewdness arrests was the result of intentional policy choices, not incidental to routine police patrols and stops." *Id.* at 3.

Dr. Pierceson also concluded that PAPD centralized polices led officers to engage in the "discretionary enforcement of public lewdness and exposure statutes against men perceived to be gay or bisexual, and/or gender non-conforming, and/or men who have sex with men." *Id.* at Ex. 25 at ¶7. Dr. Pierceson documented the history of police departments targeting members of the LGBTQ community across the United States and over the course of decades and explained how

---

[3] Courts in this District have relied on expert testimony to demonstrate commonality. See, e.g. *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 75 (S.D.N.Y. 2018) (relying on expert testimony regarding pattern and practice of gender discrimination).

departments implemented discriminatory policies. *See id.* Ex. 25 at ¶¶9, 15, 16, 20. After outlining the historical context and comparing it to the accounts described in the PAPD's arrest records, Dr. Pierceson also concluded that the PAPD's policies, patterns and practices were discriminatory. *See id.* at ¶9.

The officers' failure to include specifics related to arrests, the implausibly high arrest rate and statistical distribution of arrests for such conduct, and the officers' inappropriate conduct at the urinals all support the conclusion that these were unlawful, unconstitutional, targeted arrests made by PAPD officers on the discriminatory basis of actual or perceived sexual orientation. This amounts to a common pattern and practice by PAPD that raises central and core questions of fact and law that when answered will resolve all class members' *Monell* claims. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978).

Here, a class action will "generate common answers apt to drive resolution of litigation." *Wal-mart v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs allege violations of their rights under the Fourth and Fourteenth Amendments stemming from the same course of conduct— Defendant's pattern and practice of specifically targeting men using the PABT restrooms that PAPD officers perceive as gay or gender non-conforming for public lewdness arrests, and failing to train and supervise the arresting officers. The common questions of law and fact common to the class include at least the following:

(1) Whether there was a policy, pattern or practice by PAPD of targeting gay men or men perceived to be gay or gender non-conforming for public lewdness arrests by falsely claiming that they were masturbating at urinals;

(2) Whether the PAPD has failed to supervise Officer conduct resulting in discriminatory targeting of gay men or men perceived to be gay or gender-non-conforming;

(3) Whether the PAPD has failed to investigate its pattern and practice of unlawful and unconstitutional discriminatory conduct;

(4)     Whether Plaintiffs have suffered violations of their constitutional rights to be free from unreasonable and unlawful searches and seizures, including discriminatory targeting and intrusions into reasonable expectations of privacy;

(5)     Whether Plaintiffs have suffered violations of their constitutional rights to due process, including liberty interests in self-expression, bodily integrity, and privacy; and

(6)     Whether Plaintiffs have suffered violations of their constitutional rights to equal protection including to be free from discriminatory application of the law.

These questions are common to the named Plaintiffs and to the members of the putative class because Defendants have acted and will continue to act on grounds generally applicable to both named Plaintiffs and putative class members. Despite minor differences in the circumstances of each arrest, there is a common theory of liability and common questions of law and fact that stem from the PAPD policy of failing to supervise and train officers for the demands of this job. *Ventura v. New York City Health and Hosps. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) ("the existence of individualized factors or variations does not preclude [a] finding of [the] existence of common questions where pattern, practice, or policy exists").

In *Stinson v. City of New York*, plaintiffs brought a putative class action against city officials, the N.Y.P.D, and specific officers alleging a policy and practice to stop, seize, arrest and issue summonses to individuals without probable cause in order to meet a summons quota. 282 F.R.D. at 369. Despite the fact that the individualized facts of the arrests may vary, the court determined that the commonality requirement was met because the plaintiffs alleged a specific uniform policy promulgated by defendants and therefore, all plaintiffs' claims depended upon a common contention capable of class wide resolution. *Id.*

In *Brown v. Kelly*, an arrestee brought a putative class action against the police commissioner, city, and individual police officers alleging that they engaged in unlawful

enforcement of a statute previously declared unconstitutional. *Brown*, 609 F.3d at 484. The court rejected defendants' argument that certification was inappropriate because the claims at issue would require individualized inquiries to establish liability. *Id.* Although the court recognized that some claims may require individualized inquiries into whether probable cause existed, "the fact that some defendants may have probable cause defense in some cases does not render certification inappropriate in light of the common central issues in the action." *Id.* As in both *Stinson* and *Brown*, common central issues are applicable to Plaintiffs' claims and the class members' allegations are linked by a single theory. Accordingly, the commonality requirement is satisfied.

### 3. The Injuries of the Named Plaintiffs Are Typical of the Class

Typicality protects the interests of the absent class members by ensuring that the named plaintiffs are seeking relief for a common issue, and is satisfied when the same unlawful conduct is directed at or affects both the named plaintiffs and the prospective class. *See Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *see also Robinson v. Metro–N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). Typicality requires that "the disputed issue of law or fact occupy essentially the same degree of centrality" in both the claims of the named plaintiffs and members of the proposed class. *Latino Officers Ass'n City of New York v. City of New York*, 209 F.R.D. 79, 89 (S.D.N.Y. 2002). For this reason, there is usually significant overlap between the analysis for commonality and typicality. *Robidoux,* 987 F.2d at 936-37.

There can be no dispute that both Messrs. Holden and Mejia's claims are typical of the putative class. The factual circumstances surrounding the arrests of Mr. Holden and Mr. Mejia, the two named plaintiffs, are nearly identical not only to each other, but also to the accounts of absent class members. Both men were arrested in the second floor men's restroom at the PABT. *See* Spitzer Decl. Ex. 14 at 115:19-21; Ex. 17 at 112:2-4. Both arrests resulted from alleged conduct at urinals. *See id.* at Ex. 14 at 124:17-18; Ex. 17 at 125:11-126:9. Both men were approached and

watched by a plain-clothed officer. *See id.* Ex. 14 at 136:5-9; Ex. 17 at 160:3-13. Both described the man at the adjacent urinal they later learned was an officer acting strange either by trying to make eye contact, peering around the urinal divider or smirking. *See id.* Ex. 14 at 136:5-9; Ex. 17 at 126:9-127:16. Both men were arrested and charged under § 245.00. *See id.* Ex. 35; Ex. 36. Both men believed they were targeted because of their perceived sexual identities. *See id.* Ex. 14 at 170:2-12; Ex. 17 at 206:24-207:7. Indeed, these same facts predicate the false arrests of many of the absent class members. *See id.* at Exs. 1-6. The factual circumstances of the named plaintiffs' arrests and many of the arrests of absent class members are *nearly identical*. *See id.* at Ex. 1-6. The language of the arrest records of the named plaintiffs' arrests and many of the arrests of absent class members are *nearly identical*. *See e.g., id.* at Exs. 30-34.

The fact that named plaintiffs suffered from the same pattern and practice of false arrests as absent class members heavily favors a finding of typicality. *See Robidoux*, 987 F.2d at 936–37. Messrs. Holden and Mejia are pursuing relief for violations of their rights due to the Port Authority's failure to train and supervise officers, which resulted in brand new officers making targeted arrests because they were eager to do so. Spitzer Decl. Ex. 9 at 175:23-25. These officers received little to no bias based policing training and received no plain clothes patrol training. *See id.* at Ex. 19 at 35:9-36:16, 85:25-86:4; Ex. 16 at 26:9-11, 119:20-25, 120:2-3; Ex. 11 at 70:13-18, 82:4-25, 201:7-25; Ex. 12 at 59:3-60:23; Ex. 15 at 55:16-56:5; Ex. 22 at 68:3-19, 149:18-2. By failing to train its officers, failing to supervise the officers making the false arrests—and failing to correct officer behavior when it was brought to the attention of the Port Authority in 2014—the Port Authority sanctioned a pattern and practice of conduct that resulted in uniform, class wide harms. Because named plaintiffs and the class suffered the same violations of their due process rights, their injuries are typical of the class.

### 4. Both Named Plaintiffs and Proposed Class Counsel Will Adequately Protect the Interests of the Class

To satisfy the adequacy requirement, plaintiffs must demonstrate that their interests are not antagonistic to the interest of other members of the class and that plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation. *Daniels*, 198 F.R.D. at 418; s*ee also NYSE Specialists*, 260 F.R.D. at 73. "In order to defeat a motion for certification, however, the conflict [between named plaintiffs and the class members] must be fundamental." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d. Cir. 2006).

The named plaintiffs must be willing to serve as class representatives and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4); *Alidina v. Penton Media, Inc.*, 143 F. Supp. 2d 363, 366 (S.D.N.Y. 2001). Named Plaintiffs have vigorously pursued the class claims. Each was deposed, has participated in discovery, and is in regular contact with counsel. Each has demonstrated understanding of this action. The interests of the representative plaintiffs are consistent with the interests of the class because they were all wronged by the unconstitutional actions on the part of Defendants. Plaintiffs were injured, like the potential class members, as a result of an unconstitutional policy and custom promulgated by the PAPD of false arrests and baseless charges of men that PAPD officers perceive as gay or bisexual, or gender non-conforming, or men who have sex with emnt. *See Darquea v. Jarden Corp.,* No. 06 Civ. 722 (CLB), 2008 WL 622811, at *3 (S.D.N.Y. Mar. 6, 2008) ("All claims alleged arise from the same wrongful conduct, and thus, Plaintiff's interests, recouping money invested, are similar to those of the proposed class. As such, named Plaintiffs will fairly and adequately protect the interests of the class."). Named Plaintiffs seek to enjoin the same policies and practices of the named defendants and intend to pursue the same claims as the members of the class. If successful, the relief sought will benefit the class as a whole.

Class counsel easily satisfies the adequacy prong of Rule 23(a) and will represent the class fairly. The Legal Aid Society has extensive experience litigating class action civil rights lawsuits. *See, e.g.* Spitzer Decl. Ex. 39 (Representative Matters of Cynthia Conti Cook). Winston & Strawn, LLP is a leading global law firm whose lawyers have handled countless class actions of the highest sophistication. Plaintiffs' Counsel's experience is further detailed in Exhibits 38 and 39 of the Declaration of Seth E. Spitzer filed in support of this motion. Together, class counsel has the experience, knowledge, and resources required to represent the class.

### 5. Ascertainability

Finally, the proposed class is ascertainable. This Circuit has explained that ascertainability is a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobas Securities*, 862 F.3d 250, 269 (2d Cir. 2017). To satisfy the ascertainability requirement, a class must be defined "using objective criteria that establish a membership with definite boundaries." *Id.* at 265. This Circuit expressly declined to adopt a heightened freestanding administrative feasibility requirement at the class certification stage. *Id.* at 265. The court need not consider whether it is difficult or practical to ascertain the members of the class, but only "whether doing so is 'objectively possible.'" *Hill v. County of Montgomery*, 2018 WL 3979590, *11 (N.D.N.Y Aug. 20, 2018) (citing *Petrobas*, 862 F.3d at 270).

The class in this action is readily identifiable. The class definition references objective criteria with definite boundaries: persons who, because they are (1) male, (2) gay or bisexual, and/or gender non-conforming, and/or have sex with men, or perceived by PAPD officers to be gay or bisexual, and/or gender non-conforming, and/or have sex with other men PAPD, and (3) used a PABT restroom urinal and were arrested by the PAPD for offenses under and N.Y.P.L. § 245.00 and/or N.Y.P.L. § 245.01 from 2014 through present. Second Amend. Compl. ¶149.

Plaintiffs have provided an unambiguous objective definition with definite temporal limitations that "easily allow the identities of potential class members to be determined." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 77 (S.D.N.Y. 2018).

Accordingly, Plaintiffs have satisfied the prerequisites of Rule 23(a).

**B.      Plaintiffs satisfy the requirements of Rule 23(b)(2) and (3).**

**1.      Plaintiffs class satisfies the requirements for certification under Rule 23(b)(2)**

Certification under Rule 23(b)(2) is appropriate where the class-wide harms stem from central and systemic failure resulting in a common pattern of injury. *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). Civil rights classes are particularly suitable for Rule 23(b)(2) certification because, as with the present suit, such classes are often premised on a defendant's violations of the Fourth and Fourteenth Amendment, making uniform injunctive relief an apt tool for redressing the grievances of the class. *Id.*; *see also Comer v. Cisneros*, 37 F.3d 775, 796–97 (2d Cir. 1994); *see also Loper v. New York City Police Dep't*, 135 F.R.D. 81, 83 (S.D.N.Y. 1991); *see also Wal-Mart*, 564 U.S. at 361 ("As we observed in Amchem, "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what (b)(2) is meant to capture."). Plaintiffs must also demonstrate that they have standing to obtain injunctive relief, by showing that they "[have] sustained or [are] immediately in danger of sustaining some direct injury" as the result of the challenged official conduct, and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *See, e.g.*, *Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969).

Certification of the putative class pursuant to Rule 23(b)(2) is appropriate. Here, Defendants have acted uniformly in their discrimination against the class, engaging in biased-based policing that targets men who the perceive to be gay, gender non-conforming, or have sex

with men. The harms to the class stem from Defendants' policy and practice of failing to supervise, train or discipline officers who are arresting men on trumped-up charges of lewd conduct. This practice is evinced by the nearly identical factual circumstances surrounding the arrests of the putative class members. *See, e.g.* Spitzer Decl. Exs. 1-6. The practice is a direct result of the Port Authority's failure to adequately train officers in either biased-based policing or plain clothes policing, exposing members of the class to the predilections of probationary officers who are "eager" to make arrests. Spitzer Decl. Ex. 9 at 175:23-25. The Port Authority further failed to supervise these officers, investigate their unconstitutional conduct or reprimand them. Given the common causes that led to the arrests of putative class members, certification under Rule 23(b)(2) is appropriate.

The class members are exposed to the same threat of false arrest each time they use the PABT. The Port Authority has taken no steps to remedy the deficiencies in its training or correct the pattern and practice that resulted in the false arrests of the putative class, despite being on notice of such deficiencies since 2005. *See Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 CIV. 721 (PKC), 2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005). Plaintiffs fear repitition of the traumatic an embarrassing circumstances that caused them to become a member of the class. As such, Plaintiffs are entitled to injunctive relief, and the class should be certified pursuant to Rule 23(b)(2).

### 2. Plaintiffs class satisfies the requirements for certification under Rule 23(b)(3)

Plaintiffs' class also meets the requirements of Rule 23(b)(3). Predominance and superiority are comparative, not absolute, standards, as opposed to the requirements of Rule 23(a). *See In re Petrobras Sec.*, 862 F. 3d 250, 268 (2d Cir. 2017). Predominance asks "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* at 270 (quoting *Tyson Foods, Inc. v.*

*Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). The rule "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof," but rather whether "common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). The requirement is satisfied "if: (1) resolution of any material legal or factual questions . . . can be achieved through generalized proof, and (2) these [common] issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d at 271 (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)) (internal quotations omitted).

Individual defenses do not destroy the availability of class certification. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 137 ("[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)"). In a similar vein, the possibility that some claims may require individualized inquiries to establish liability does not preclude class certification—in fact the concept has been explicitly considered and rejected by the Second Circuit. *See Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) ("The City Defendants argue that Rule 23(b)(3) certification is inappropriate because the claims at issue in this case require individualized inquiries to establish liability. We acknowledge that the district court will be required to make individualized inquiries with respect to some of the plaintiffs and some of the claims. We conclude, however, that it was within the district court's discretion to find that common issues predominated.").

The common issues here predominate over any individualized interests and justify class certification. Plaintiffs here are all victims of policies, practices and patterns of the PAPD that led to fabricated arrests for public lewdness. *See, e.g.,* Spitzer Decl. Ex. 1 at ¶4; Ex. 3 at ¶3; Ex. 4 at

¶3; Ex. 2 at ¶3; Ex. 5 at ¶1. These arrests are subject to "generalized proof" of a consistent tendency of the PAPD to target men with a similar appearance, in a similar manner, in a similar place, accused of a similar crime, and officially reported using similar language. *In re Petrobras Sec.*, 862 F. 3d at 270. Further associated with these arrests was an otherwise-inexplicable rise in public lewdness arrests during the 2014 calendar year. Opening Expert Report of John F. Pfaff, Ph.D., at 3-6 (Mar. 29, 2019). These similarities demonstrating a practice of unconstitutional arrests create a "constellation of common issues" that are significantly more substantial than any subtle differences between the situation in which each plaintiff was arrested. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 137.

Next, superiority speaks to the "fairness and efficiency" of using the class action mechanism in comparison to other available options. Fed. R. Civ. P. 23(b)(3). The rule requires the certifying court to examine:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3). "[T]he superiority requirement ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (internal citations omitted); *see also Casale v. Kelly*, 257 F.R.D. 396, 407

(S.D.N.Y. 2009) (granting class certification under Rule 23(b)(3) for a class alleging unconstitutional arrests).

Here, forcing individual plaintiffs to litigate their claims individually would simply "waste time, effort, and expense and increase the likelihood of conflicting outcomes for Plaintiffs." *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 84 (S.D.N.Y. 2018) (quoting *Amchem*, 521 U.S. at 634, 117 S. Ct. 2231). For the reasons discussed below, the class action mechanism is superior to any other form of action for the present claims.

### a.    The Class Members Have No Interests in Separate Actions

In *Casale v. Kelly*, a Southern District court granted class certification to victims of unconstitutional arrests. 257 F.R.D. 396 (S.D.N.Y. 2019). In analyzing superiority, the court in *Casale* considered the intent of the plaintiffs, the vulnerability of the individuals due to their likely lack of knowledge of the unconstitutionality of the police action, and the likelihood that victims could economically not sustain personal actions against the police department. *Id.* at 414-15. Here, as in *Casale*, purported class members have demonstrated no interest in individually controlling the prosecution or defense of actions. *See id.* at 407. Further, many arrestees likely did not know that they were victims of an unconstitutional practice and procedure of the PAPD, and may have accepted plea bargains to terminate criminal proceedings as quickly as possible. *See id.* at 414-15.

Furthermore, putative class members have also demonstrated an aversion to having their names revealed due to the sensitive nature of the accusations. Only two absent class members have demonstrated a willingness to publicly participate in this litigation. This is largely due to the social stigma and embarrassment attached to such an arrest, even if ultimately acquitted. *See* Spitzer Decl. Ex. 2 at ¶21; Ex. 3 at ¶14; Ex. 1 at ¶3. Several plaintiffs have not even told their families and friends about their arrests. *Id.* at Ex. 2 at ¶21; Ex. 3 at ¶14; Ex. 1 at ¶3; Ex. 5 at ¶13. These

individuals, several of whom must continue to use the PABT, may additionally fear that if they bring individual cases they may face retaliation by the PAPD.

In weighing this factor, this Court should further consider the "inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *D'alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996). Individually, class members may not have been aware that their false arrest was part of a pattern and practice of the PAPD, and may not have had the resources to discover that information. The nature of the injuries suffered by the class make it difficult to demonstrate the presence of such policies and procedures in isolation. As in *Casale*, these individuals may not have the resources to effectively litigate their individual claims and, without the interests of an entire class, may not have access to the arrest records and statistics that demonstrate the policies and procedures alleged by the class. 257 F.R.D. at 414-15.

### b. The Extent And Nature Of Any Litigation Concerning The Controversy Already Begun By Or Against Class Members

As of the date of filing, to Plaintiffs' knowledge, there is no pending litigation concerning this controversy begun by or against potential class members. Accordingly, any conflicts or confusion created by such litigation are not a concern.

### c. The Desirability Or Undesirability Of Concentrating The Litigation Of The Claims In The Particular Forum

This Court is the proper and most desirable forum for concentration of this litigation. Fed. R. Civ. P. 23(b)(3). All arrests occurred at the PABT, which sits in this District. Both Plaintiffs' counsel and Defendants' counsel all operate in the City of New York. Most individual plaintiffs and defendants live in or around the City of New York. *See* Spitzer Decl. Ex. 4 at ¶15; Ex. 2 at ¶4; Ex. 5 ¶11. The claims brought against Defendants include violations of protections provided to

individuals by the United States Constitution. *See* U.S. Const. amends. IV, XIV. Thus the action is properly and desirably filed in this Federal District Court.

### d. Manageability of the Class Action

The Second Circuit recognizes that denying class certification for manageability purposes is heavily disfavored, and recognizes extensive jurisprudence to support that proposition. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (collecting cases). Since filing in 2014, this action has proceeded unhindered on a class-wide basis. Plaintiffs and the putative class are represented by both Winston & Strawn, LLP and The Legal Aid Society in this action. Each of these groups has extensive experience and resources for managing class actions and handing the difficulties that a class action implies. Additionally, The Legal Aid Society in particular has particularized experience with civil rights lawsuits such as the one presented here. This litigation is not a sprawling morass of plaintiffs and individualized concerns. Arrests of all class members occurred in a similar manner and in a similar location. Given the court's aversion to denying class certification on manageability grounds and Plaintiffs' counsels' extensive experience in handling class action suits, manageability considerations weigh in favor of class certification.

### CONCLUSION

Plaintiffs satisfy each of the enumerated requirements of Rule 23. Plaintiffs have demonstrated numerosity, commonality, typicality and adequacy. Additionally, Plaintiffs have satisfied the requirements of both Rule 23(b)(2) and Rule 23(b)(3). For the foregoing reasons, Plaintiffs respectfully request that the Court satisfy the class as defined *supra*.

June 14, 2018

**WINSTON & STRAWN LLP**

By: */s/ Thomas Patrick Lane*
Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
Ross M. Kramer
Matthew A. Stark
200 Park Avenue
New York, NY 10166
(212) 294-6700

Daniel R. McNeely (*pro hac vice*)
35 W. Wacker Dr.
Chicago, IL 60601
312-558-5600

**THE LEGAL AID SOCIETY**

By: */s/ Cynthia Conti-Cook*
Cynthia Conti-Cook
199 Water Street
New York, NY 10038
(212) 577-3265