**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
CORNELL HOLDEN and MIGUEL MEJIA,   :
   :
              Plaintiffs,   :
   :
   -against-   :
   :
THE PORT AUTHORITY OF NEW YORK AND  :
NEW JERSEY; THE PORT AUTHORITY   :      **1:17-cv-02192-JGK-RWL**
POLICE DEPARTMENT; and MICHAEL   :
OPROMALLA, SHAUN KEHOE, JOHN TONE,  :
JORDAN ESPOSITO, MICHAEL DEMARTINO,  :
RICHARD AYLMER, PAUL MILLER, JOHN  :
FITZPATRICK, PAUL O'DELL and OFFICERS  :
JOHN DOE 1-99, sued in their individual capacities :
and official capacities as officers of the Port   :
Authority Police Department,   :
   :
              Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY IN FURTHER SUPPORT OF PLAINTIFFS'
## MOTION FOR PARTIAL RECONSIDERATION (ECF NO. 208)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

   I.   Plaintiffs demonstrated an imminent injury in fact............................................... 2

      A.   As in *Susan B. Anthony* and *Knife Rights*, Plaintiffs Have Standing .................................3

      B.   Plaintiffs' Injury Is Directly Traceable to the Past Unlawful Enforcement Against Them..................................................................................................................4

   II.   Plaintiffs sufficiently pled the existence of a policy equivalent leading to discriminatory false arrests in the PABT restroom ......................................................................... 6

CONCLUSION................................................................................................................ 8

CERTIFICATION ........................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilar v. Immigration and Customs Enforcement*,
    811 F. Supp. 2d 803 (S.D.N.Y. 2011) (Koeltl, J.) .....................................................................8

*Amgen Inc. v. Connecticut Ret. Plans*,
    568 U.S. 455 (2013)...........................................................................................................7-8

*An v. City of New York*,
    No. 16 CIV. 5381 (LGS), 2017 WL 2376576 (S.D.N.Y. June 1, 2017) ..................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...................................................................................................... *passim*

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)...........................................................................................1, 7, 8

*Doe v. Boyertown Area Sch. Dist.*,
    897 F.3d 518 (3d Cir. 2018).................................................................................................3

*Etuk v. Slattery*,
    936 F.2d 1433 (2d. Cir 1991)...........................................................................................2, 3

*Knife Rights, Inc. v. Vance*,
    802 F.3d 377 (2d Cir. 2015)...........................................................................................1, 3, 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).......................................................................................................6-7

*Mitchum v. Foster*,
    407 U.S. 225 (1972)...........................................................................................................6

*Monell v. Department of Social Services*,
    436 U.S. 658 (1978)...................................................................................................1, 6, 8

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)...............................................................................................8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)...................................................................................................1, 3, 4, 5

*Warth v. Seldin*,
    422 U.S. 490 (1975)...................................................................................................1, 2, 7

*Whitaker v. Kenosha Unified Sch. Dist.*,
    858 F.3d 1034 (7th Cir. 2017) ............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................................7

Fed. R. Civ. P. 56(a) ......................................................................................................7

Fed. R. Civ. P. 56(d) ......................................................................................................7

**INTRODUCTION**

Plaintiffs Cornell Holden and Miguel Mejia file this reply in further support of Plaintiffs' Motion for Partial Reconsideration of the portion of the Court's February 26, 2020 Order concerning Plaintiffs' standing for injunctive relief. *See* ECF No. 209 ("Mot."); ECF No. 198 ("February 26 Order"). In opposition to this motion, Defendants wrongly characterize this case as more akin to *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), where the plaintiffs lacked standing because they had never been subject to the allegedly unconstitutional surveillance program, than to *Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015), where the plaintiffs had standing because, like the plaintiffs here, they were in fact arrested pursuant to an unconstitutional policy or practice and refrained from engaging in legal behavior because of their credible fear it could happen again. The Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) makes indefensible Defendants' over-reading of *Clapper* to foreclose standing in cases based on adjustments in behavior sparked by credible threats of future harm.

Defendants further dispute the credibility of that threat by attempting, wrongly, to shift the burden to Plaintiffs on this motion to bear their ultimate burden of proof on the existence of a policy or practice sufficient to satisfy *Monell*. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Plaintiffs' complaint alleges a Port Authority Police Department ("PAPD") practice, tantamount to a policy, of profiling men perceived to be gay and arresting them for public lewdness in the men's room. The parties have offered disputed facts relating to the consistency of the implementation of that policy, and Defendants seek to circumvent the burden they would face on a motion for summary judgment by urging the Court to resolve those disputed facts in their favor and dismiss Plaintiffs' claims for injunctive relief outright.

1

## ARGUMENT

### I.     PLAINTIFFS DEMONSTRATED AN IMMINENT INJURY IN FACT

Article III standing doctrine is, at its core, animated by separation-of-powers principles. *Clapper*, 568 U.S. at 408-09. It serves to restrain courts from "usurping the powers of the political branches" and from entertaining "generalized grievance[s] shared equally by all of a large class of citizens." *Id.*; *Etuk v. Slattery*, 936 F.2d 1433, 1440 (2d. Cir 1991) (citation omitted). Still, the exercise of Article III jurisdiction when "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf" is similarly critical to maintaining the proper role of the judiciary in relation to the other branches. *Warth*, 422 U.S. at 498-99 (citation omitted).

Here, Plaintiffs have a very personal stake in the controversy, as the outcome affects where they are able to use the restroom. *See* Mot. 1; *Warth*, 422 U.S. at 498-99. The harms experienced by Plaintiffs are far from the kind of generalized grievance that Article III standing law prohibits. On separate occasions, Plaintiffs were profiled by the PAPD for being gay. They were watched while using the urinals by plainclothes PAPD officers who then arrested them for public lewdness despite the fact that they had done nothing lewd. While Plaintiffs were both able to clear their names by fighting the humiliating charges in criminal court, they have not been able to shake their fear of being arrested by the PAPD again in the future. As a result, they go to great lengths to avoid Port Authority restrooms during their commutes and risk medical consequences from holding urine

and restricting fluid intake, which causes them to suffer physical pain and puts them at risk of medical consequences from holding urine and dehydration.[1] Mot. 8; *Etuk*, 936 F.2d at 1440.

### A.    As in *Susan B. Anthony* and *Knife Rights*, Plaintiffs Have Standing

Plaintiffs have standing based on their experience of being profiled and falsely arrested, which makes their fear of future arrest reasonable. The resulting curtailment of lawful conduct, or conduct that plaintiffs should be able to engage in, but forgo due to fear of unlawful enforcement against them, is cognizable as an injury sufficient for standing for equitable relief. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (hereinafter "*SBA*") ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'"); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 386 (2d Cir. 2015) (holding that plaintiffs had standing for injunctive relief because they "ha[d] in the past carried, and wished again to carry, common folding knives, but [did] not do so because . . . they [did] not wish to risk prosecution" as they had previously been criminally charged for carrying a common folding knife.)

Here, Plaintiffs wish to use Port Authority restrooms, which are made available to the public and to which they have as much a right to use as any other commuter. However, gay men, including Mr. Holden and Mr. Mejia, have been wrongfully arrested for using the Port Authority

---

[1] Defendants do not challenge Plaintiffs' argument that avoidance of restrooms puts Plaintiffs at risk of medical consequences. Other Circuit Courts have held that such risk of medical harms due to restroom avoidance confers standing for injunctive relief. *See Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 523 (3d Cir. 2018); *Whitaker v. Kenosha Unified Sch. Dist.*, 858 F.3d 1034, 1044-45 (7th Cir. 2017).

restrooms under N.Y.P.L. § 245.00, which prohibits public lewdness. Plaintiffs now refrain from using the public facility because of their fear of re-arrest for merely using the restroom.

As in *SBA* and *Knife Rights,* Plaintiffs here contend that their intentions are not to violate the law, but that their actions—using Port Authority restrooms as gay men in this case, analogous to *SBA* plaintiffs publishing political communications and *Knife Rights* plaintiffs carrying folding knives—put them in the crosshairs of law enforcement who seek to criminally charge them for their lawful conduct. *SBA*, 573 U.S. at 163; *Knife Rights*, 802 F.3d at 386-87 (finding a credible threat of future prosecution as "nowhere in the record of this litigation have defendants disavowed that they would criminally charge [plaintiffs] again in the same circumstances.") (citing *SBA*, 573 U.S. at 164); Mot. at 9-10. That Plaintiffs do not plan to engage in criminal conduct does not change the analysis of whether the threat of prosecution is credible; indeed, Defendants have made it clear that, if they were to observe Plaintiffs behaving exactly as they were on the day of their arrests, that Defendants would again arrest them. *See, e.g.*, Tone Dep. 242:20-243:4 ("Q: . . . is there anything about the arrest of Mr. Mejia that you would change? . . . A: I think that I would clarify my paperwork a little better. Q: Anything else? A: No.").

      **B.**    **Plaintiffs' Injury Is Directly Traceable to the Past Unlawful Enforcement Against Them**

Defendants ask this court to extend *Clapper* to the current case despite significant distinctions. In *Clapper*, plaintiffs who had never experienced surveillance under the statute they were challenging, but who feared future surveillance and who incurred costs to avoid potential surveillance, were found to lack standing. *Clapper*, 568 U.S. at 410-18. This is distinguishable from the present case in three critical ways: (1) the plaintiffs in *Clapper* had not been harmed by the challenged statute; (2) the steps taken to avoid future harm were not traceable to the statute;

and (3) courts are less likely to encroach on the political branches in the intelligence gathering and national security context than in other contexts. *Id.*

First, plaintiffs in *Clapper* had not experienced surveillance under the statute they challenged, and thus their fear of potential surveillance was "highly speculative" and efforts to avoid potential surveillance were not traceable to the challenged statute. 568 U.S.at 410, 415. Here, however, Plaintiffs were profiled as gay, falsely arrested, and prosecuted for public lewdness. This distinction is critical, and makes Plaintiffs more closely analogous to the plaintiffs in *SBA*, where past enforcement made their fear of future enforcement more reasonable, and thus the curtailment of their future political speech directly traceable to the prior enforcement action. *SBA*, 573 U.S. at 164 ("We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'"). In *SBA*, the Supreme Court distinguishes *Clapper* for exactly this reason, explaining that "plaintiffs' theory of standing was substantially undermined by their failure to offer any evidence that their communications had been monitored." Conversely, in *SBA,* as in this case, the prior enforcement action against plaintiffs made their fear of future enforcement reasonable and rendered the measures taken to avoid future enforcement sufficient to confer standing for equitable relief. *SBA*, 573 U.S. at 164 (citation and alterations omitted).

Second, the *Clapper* plaintiffs' theory of standing, which relied on a "highly attenuated chain of possibilities," failed to "satisfy the requirement that any injury in fact must be fairly traceable to [the challenged statute]." *Clapper*, 568 U.S. at 410-11. The Court explained that "respondents' present injuries are not fairly traceable to [the challenged statute, because] even before [it] was enacted, they had a similar incentive to engage in many of the countermeasures that they are now taking" as plaintiffs had knowledge of other similar Government surveillance. *Clapper*, 568 U.S. at 417. Plaintiffs' standing theory in this case, however, does not rely on a

"speculative chain" as their avoidance of Port Authority restrooms is directly traceable to their prior false, discriminatory arrests by PAPD officers. Mot. 8. Plaintiffs have established that they used the PABT restroom prior to their unlawful arrests, but that, since their arrests and prosecutions, they now avoid Port Authority restrooms. Mejia Decl. ¶ 9-10; Holden Decl. ¶ 9-10.

Third, the plaintiffs in *Clapper* challenged the constitutionality of a Congressionally-enacted foreign intelligence gathering regime, whereas here, Plaintiffs seek remedies for the harms they suffered from the PAPD's practice of discriminatory false arrests of men perceived to be gay in the PABT restroom under § 1983. The Supreme Court noted in *Clapper* that courts are exceedingly deferential when "review[ing] actions of the political branches in the fields of intelligence gathering and foreign affairs." *Clapper*, 568 U.S. at 409. Conversely, the Court has noted that the "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights," and that "Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Plaintiffs' § 1983 claims arise under a context in which the federal courts have more latitude to issue equitable relief than in the foreign intelligence gathering context, and as such, *Clapper* should not be extended to this case. *Id.*

## II.   PLAINTIFFS SUFFICIENTLY PLED THE EXISTENCE OF A POLICY EQUIVALENT LEADING TO DISCRIMINATORY FALSE ARRESTS IN THE PABT RESTROOM

Defendants argue that, in order to seek injunctive relief in a § 1983 case, a plaintiff must prove a *Monell* claim at the pre-trial stage of the proceeding. Resp. at 8-9, 14. However, Defendants are mistaken in regards to Plaintiffs' evidentiary burden at this stage of litigation. This motion arises from the Court's Order on Plaintiff's motion for class certification and not in

response to a motion for summary judgment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported . . . with the manner and degree of evidence required at the *successive stages of the litigation*") (emphasis added).[2] Therefore, Plaintiffs have the same evidentiary burden at this stage of litigation as when seeking class certification pursuant to Fed. R. Civ. P. 23. *See id.* Defendants point to *Lujan* and *Clapper* to argue that Plaintiffs are not able to rely on their pleadings at this stage. *See* Resp. at 8-9. However, *Lujan* and *Clapper* were at the summary judgment stage, which Parties have not yet reached in this litigation. *See Lujan*, 504 U.S. at 561; *Clapper*, 568 U.S. at 407.

To determine standing at the class certification stage, courts "'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party' (i.e., the class members)." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (citing *Warth*, 422 U.S. at 501).[3] Further, the Supreme Court has made clear that Plaintiffs' burden is far more relaxed at the class certification stage than the summary judgment stage. *Amgen Inc. v.*

---

[2] Defendants suggest that this stage of litigation is akin to that of summary judgment for purposes of evidentiary burdens. However, at summary judgment, the moving party—here, the Defendants—has the burden to establish that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Further, Defendants' assertion that Plaintiffs' claim should be dismissed for want of evidence does not track even with Rule 56, where the court may allow the nonmovant to take discovery if there are material facts needed to justify its opposition to summary judgment. Fed. R. Civ. P. 56(d).

[3] While Plaintiffs do not have an evidentiary burden beyond a sufficiently pled complaint, trial courts are not restricted from allowing "the plaintiff to supply, by … affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501.

*Connecticut Ret. Plans*, 568 U.S. 455, 465-66 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

Here, without having moved for summary judgment, Defendants seek to bypass this Court's amended scheduling order from March 24, 2020 and litigate the merits of Plaintiffs' *Monell* claim and the admissibility of evidence appended to Plaintiff's Second Amended Complaint. Resp. at 8-9, 14. These issues are inappropriate to litigate at this juncture. Defendants may challenge the merits of Plaintiffs' case and sufficiency of proof by filing a motion for summary judgment, as they have indicated they plan to do, and which Plaintiffs will respond to in accordance with this Court's Scheduling Order. (ECF No. 214). Defendants have already filed a motion *in limine* in regards to the same issues of admissibility that they raise here, to which Plaintiffs have already responded. *Id*. *See* ECF No. 219.

Plaintiffs have alleged facts sufficient to establish *Monell* liability in their Second Amended Complaint, therefore establishing the "policy or its equivalent" element of standing sufficient for this stage of the litigation. Second Amended Compl. ¶¶ 53-84; *See Denney*, 443 F.3d at 263; *See Shain v. Ellison,* 356 F.3d 211, 216 (2d Cir. 2004); *An v. City of New York*, No. 16 CIV. 5381 (LGS), 2017 WL 2376576, at *3 (S.D.N.Y. June 1, 2017); *Aguilar v. Immigration and Customs Enforcement*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) (Koeltl, J.).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Reconsideration and enter an Order withdrawing the portion of the February 26 oral decision concerning Plaintiffs' standing for injunctive relief and/or clarifying that its ruling does not adjudicate Plaintiffs' individual standing for injunctive relief.

May 1, 2020                                Respectfully Submitted,


                                           **WINSTON & STRAWN LLP**

                                           By: */s/ Thomas Patrick Lane*
                                           Michael S. Elkin
                                           Thomas Patrick Lane
                                           Seth E. Spitzer
                                           Matthew A. Stark
                                           200 Park Avenue
                                           New York, NY 10166
                                           (212) 294-6700

                                           Daniel R. McNeely (*pro hac vice*)
                                           35 W. Wacker Dr.
                                           Chicago, IL 60601
                                           312-558-5600


                                           **THE LEGAL AID SOCIETY**

                                           By: */s/ Marlen S. Bodden*
                                           Marlen S. Bodden
                                           199 Water Street, 6th Floor
                                           New York, NY 10038
                                           (212) 577-3265

                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATION</u>

In accordance with the Individual Practices of Judge John G. Koeltl, I certify that the foregoing brief contains 2,630 words and complies with the formatting rules of Rule 2.D.

*/s/ Thomas Patrick Lane*
Thomas Patrick Lane
