UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORNELL HOLDEN and MIGUEL MEJIA, on behalf of themselves and all others similarly situated, | No. 1:17-CV-02192 (JGK) (RWL) |
| Plaintiffs, | |
| -against- | |
| THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY; THE PORT AUTHORITY POLICE DEPARTMENT; and MICHAEL OPROMALLA, SHAUN KEHOE, JOHN TONE, JORDAN ESPOSITO, MICHAEL DEMARTINO, RICHARD AYLMER, PAUL MILLER, JOHN FITZPATRICK, PAUL O'DELL and OFFICERS JOHN DOE 1-97, sued in their individual capacities and official capacities as officers of the Port Authority Police Department. | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................ **1**

**STATEMENT OF FACTS**

    A)  General Background ................................................................................. 1
    B)  Cornell Holden's Arrest ......................................................................... 3
    C)  Miguel Mejia's Arrest ........................................................................... 4
    D) `Prior Pleadings and Proceedings .......................................................... 5

**ARGUMENT** ................................................................................................ **6**

**THE SUMMARY JUDGMENT STANDARD** ............................................................ **6**

**POINT I** ...................................................................................................... **7**

    Plaintiffs' Claims Against the Port Authority s Must be dismissed Since Plaintiffs
    Cannot Show the Requisite Elements of a Policy, Custom or Practice ................... 7

    A)  Plaintiffs' Pattern and Practice Claims are Deficient .......................... 8
    B)  Plaintiffs Cannot Show Municipal Liability Based on A Failure to Train or
        Supervise ........................................................................................... 10

**POINT II** .................................................................................................... **11**

    Plaintiffs' Fourteenth Amendment Claim Fails .......................................... 11

    A) The Individual Defendants are entitled to Qualified Immunity ............... 11
    B)  Plaintiffs' Equal Protection Claim Based On Selective Enforcement has No Factual
       Support .............................................................................................. 13

        1.   Plaintiffs lack evidence of similarly situated individuals ................. 13
        2.   There is no evidence of intentional discrimination ..................... 14

**POINT III** ................................................................................................... **16**

    Plaintiffs Fail to State a Claim Under the Due Process Clause ................................. 16

**POINT IV** ................................................................................................... **17**

    Plaintiffs' Claims for False Arrest Under the Fourth Amendment Against Defendants
    Kehoe, Esposito, DeMartino, Aylmer, Miller, Fitzpatrick, and O'Dell Are Without Legal
    or Factual Basis and Should be Dismissed .................................................. 17

**POINT V** ........................................................................ERROR! BOOKMARK NOT DEFINED.

    The Claims Against Esposito, DeMartino, Miller, Aylmer, Fitzpatrick and O'Dell Are
    Time Barred and Should Be Dismissed ...................................................... 20

**POINT VI** ............................................................................................................. **21**

Plaintiffs' Claims for Invasion of Privacy andEntrapment are not Cognizable and Should Be
Dismissed ............................................................................................................... 21

**POINT VII** ........................................................................................................... **21**

The Punitive Damage Claim Against the Port Authority Must be Dismissed ......................... 21

**CONCLUSION** .................................................................................................... **22**

# TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Abreu v. City Of New York*,
  No. 17 civ 6179, 2018 WL 3315572 (S.D.N.Y. July 5, 2018) ...........................................7, 16

*Anderson v. City of New York*
  657 F. Supp. 1571 (S.D.N.Y. 1987)..........................................................................................9

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)........................................................7

*Arbuckle v. City of New York*,
  No.14 civ 10248, 2016 WL 5793741 (Sept. 30, 2016)..........................................................18

*Ashcroft v. al-Kidd*,
  563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)...................................................13

*Ashcroft v, Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................................................17

*Bellamy v. Mount Vernon Hospital*,
  No. 07 civ 801,2009.............................................................................................................17

*Berman* v. *Perez*
  No 17 civ 2757, 2018 WL 565269 (S.D.N.Y. Jan. 24, 2018)................................................20

*Bickerstaff v. Vassar Coll.*,
  196 F.3d 435 (2d Cir. 1999)..................................................................................................15

*Brady v. Port Authority of New York and New Jersey*,
  No. 93 civ 1679, 1998 WL 72406d1d (E.D.N.Y. Oct. 15, 1998)...........................................21

*Brown v. City of Syracuse*,
  673 F.3d 141 (2d Cir. 2012)..................................................................................................13

*Bryan Cty. v. Brown*,
  520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed 2d 626 (1997)......................................................10

*Case v. The City of New*,
  233 F. Supp. 3d 372 ..............................................................................................................16

*Ceara v. Deacon*,
  68 F. Supp. 3d 402,409 (S.D.N.Y. 2014)..............................................................................20

*Celotex v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1985).........................................................6

*Chin v. the Port Authority of New York and New Jersey*
    685 F. 3d 135 (2nd Cir. 2012)..................................................................8

*Colon v. Coughlin,*
    58 F. 3d 865 (2d Cir. 1995)..............................................................17, 18

*Connick v. Thompson*
    563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed 2d 417 (2011)...............8, 9, 10

*Cruz v. The City of New,*
    232 F. Supp. 3d 438 (S.D.N.Y. 2017)....................................................11

*DiBlasio v. City of New York*
    102 F.3d 654 (2nd. Cir 1996)..................................................................21

*Diesel v. Town of Lewisboro,*
    232 F.3d 92 (2d Cir. 2000).....................................................................14

*Flaherty v. Massapequa Pub. Sch.,*
    752 F. Supp. 2d 286 (E.D.N.Y. 2010), .................................................12

*Giaccio v. City of New York*
    308 Fed. App'x 470 (2d Cir. 2009)..........................................................8

*Giano v. Senkowski,*
    54 F.3d 1050 (2d Cir. 1995)...................................................................14

*Goenaga v. March of Dimes Birth Defects Foundation,*
    51 F. 3d 14 (2d Cir. 1995).......................................................................6

*Harlow v. Fitzgerald,*
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)......................12

*Hogan v.Fischer,*
    738 F. 3d 509 (2d Cir 2019)....................................................................20

*Howard v. City of New York,*
    602 Fed. Appx. 545 (2d Cir. 2015).........................................................15

*Jones v. Town of E. Haven,*
    691 F. 3d. 72 -(2d Cir. 2012) ............................................................8, 15

*Lisa's Party City, Inc. v. Town of Henrietta,*
    185 F.3d 12 (2d Cir.1999)......................................................................14

*Marom v. City of New York,*
    No. 15 civ 2017, 2016 WL 916424 (S.D.N.Y. March 7, 2016)..............18

*Martinez v. The Port Authority of New York and New Jersey*
   No 01 civ 721, 2005 WL 2143333 (S.D.N.Y. Sept 2, 2005).................................................3, 9

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*,
   475 U.S. 574,586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)....................................................7

*McKay v. City of New York*
   32 F. Supp. 3d 499 (S.D.N.Y. 2014)......................................................................................19

*McLee v. Chrysler Corp.*,
   109 F.3d 130 (2d Cir. 1997)..................................................................................................15

*Minter v. Cty. of Westchester*
   No. 08 civ 7726, 2011 WL 856269 (S.D.N.Y. Jan 20, 2011)...................................................19

*Monell v. Dep't of Soc. Servs.*
   436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).........................................................7, 8

*Nardoni v. City of New York*
   331 F, Supp, 3d 116, 129 (S.D.N.Y. 2018)..............................................................................10

*Naumovski v. Norris*,
   934 F.3d 200 (2d Cir. 2019)...........................................................................................12, 14

*Nnebe v. Daus*
   665 F. Supp. 2d 311 (S.D.N.Y 2009),........................................................................................8

*Patterson v. City of Oneida*,
   375 F. 3d 206 (2nd Cir 2004)..................................................................................................17

*Matter of Paul R*,
   131 A.D. 2d 764, 561 N.Y.S. 2d 790 (2d Dep. 1987) ............................................................11

*People v. Gibble*,
   2 Misc. 3d 510 (N.Y. Crim. Ct. 2003) ....................................................................................11

*Plair v. City of New York*,
   789 F. Supp.2d 459 (S.D.N.Y. 2011).........................................................................................8

*Plumhoff v. Rickard*,
   572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056(2014).....................................................13

*Poe v. Leonard*
   282 F. 3d 123 (2nd Cir 2002)..................................................................................................19

*Provost v. City of New York*
   262 F. 3d 146,155 (2d Cir. 2001).............................................................................................18

*Raysor v. Port Authority of New York and New Jersey*
  768 F2d 34 (2d Cir. 1985)..........................................................................8

*Rexnord Holdings, Inc, v. Biderman,*
  21 F. 3d 522 (2d Cir. 1994)........................................................................7

*Reynolds v. Giuliani,*
  506 F. 3d 183 ( 2d Cir 2007)................................................................10, 11

*Rivera v. Metropolitan Transit Authority,*
  750 F. Supp. 2d 456 (S.D.N.Y. 2010)........................................................17

*Rodriquez v. Cty. of Westchester*
  No 15 civ 9626, 2017 WL 118027 (S.D.N.Y. Jan. 11, 2017)........................9

*Russo v. City of Bridgeport,*
  479 F3d 196 (2d Cir. 2007)......................................................................16

*Thomsen v. Stantec, Inc.,*
  483 Fed. Appx. 620 (2d Cir. 2012)...........................................................15

*Vassallo v. Lando,*
  591 F. Supp. 2d 172 (E.D.N.Y. 2008) ......................................................13

*Whalen v. Roe,*
  429 U.S. 589, 57 S. Ct. 869, 51 L. Ed. 2d 64 (1977)................................21

*White v. City of New York,*
  206 F. Supp. 3d 920 (S.D.N.Y. 2016)...................................................8, 12

*Woodman v. WWOR-TV, Inc.,*
  411 F.3d 69 (2d Cir. 2005)..................................................................14, 15

*Wray v. City of New York,*
  490 F. 3dd 189, 195 (2d Cir. 2007)............................................................7

**Statutes**

42 U.S.C §1983.............................................................................. *passim*

ADA..............................................................................................5

N.Y. Unconsol. Laws § 6401 *et seq*....................................................1, 8

NY Penal Law § 245.0.....................................................................3, 4

NY Penal Law § 245.01...................................................................3, 4

NY Unconsol. Laws § 6459..................................................................8

**Constitutional Provisions**

Fourth Amendment ..................................................................................................1, 5, 16, 17

Fourteenth Amendment ............................................................................................ *passim*

**Rules**

C.P.L.R. 1024..........................................................................................................................20

Fed. R. Civ. P. 56(c) ..............................................................................................................6

Rule 26 ....................................................................................................................................20

**Other Authorities**

2014 N.Y.s article ..................................................................................................................20

## PRELIMINARY STATEMENT

Plaintiffs brought this action pursuant to 42 U.S.C §1983, claiming they were falsely arrested because they were perceived to be gay, bisexual, gender non-conforming, or men who have sex with men in violation of their right to be free from unlawful search and seizure under the Fourth Amendment. Plaintiffs also claim that their right to equal protection and due process under the Fourteenth Amendment was violated by their arrests, and that they were targeted for false arrest on charges of Public Lewdness in the men's  bathroom at the Port Authority Bus Terminal ("PABT") pursuant to a policy by the  Port Authority  police because of their perceived sexual orientation.  Defendants, The Port Authority of New York and New Jersey (the "Port Authority"), Michael Opromalla, Shaun Kehoe, John Tone, Jordan Esposito, Michael DeMartino, Richard Aylmer, Paul Miller, Paul O'Dell and John Fitzpatrick, submit this Memorandum of Law in support of their motion for summary judgment seeking dismissal of. all claims, except the Fourth Amendment false arrest claims against Opromalla, who arrested Holden, and Tone, who arrested Mejia because plaintiffs lack a factual basis to impose liability against the Port Authority under §1983, or against the officers who did not participate in plaintiff's arrests, and because plaintiffs claims' for denial of equal protection and due process are not cognizable at law.

## STATEMENT OF FACTS

### A)     General Background

The Port Authority is a bi-state government agency created by compact between the States of New York and New Jersey to operate transportation facilities between the two states as defined in N.Y. Unconsol. Laws § 6401 *et seq*. Among these facilities is the Port Authority Bus Terminal ("PABT"), which serves over 57 million passengers annually, with a typical weekday seeing over 200,000 passenger trips. Law enforcement, security, and aided services are provided by the

Department of Public Safety ("PAPD").  Police officers are trained at the Port Authority's Police Academy, where they are instructed in the penal law of New York and New Jersey, and in diversity policing.

In 2014, the PABT was under the command of Captain John Fitzpatrick.  Tours of duty were under the supervision of lieutenants who served as tour commanders, including defendants Richard Aylmer and Paul O'Dell, and sergeants who worked administrative duty, including Jordan Esposito, Michael DeMartino, and Paul Miller. Michael Opromalla, John Tone and Shaun Kehoe were patrol officers.  The PAPD maintained a Tactical Patrol Unit ("TPU") that patrolled the PABT in plain clothes at various posts, including Post 3, which included the men's bathroom on the second floor from street level.

In 2013, there were 749 arrests at the PABT, including nine for Public Lewdness at unidentified locations.  In 2014, there were 69 arrests for public lewdness in the men's bathrooms out of a total of 577 arrests.  There were seven arrests for Public Lewdness in the men's bathrooms in 2014 before Holden's arrest on May 12, 2014, and 32 arrests for Public Lewdness in the men's bathrooms before Mejia's arrest on July 9, 2014.  None of those arrested for Public Lewdness in the men's bathrooms at the PABT, other than the two named plaintiffs, has challenged the validity of their arrest.  Plaintiffs have not identified a single arrest occurring before either of their arrests as a false arrest on Public Lewdness charges based on perceived sexual orientation.  Marcos Polonia and Malcom Russell, who briefly appeared as plaintiffs in this action, were arrested after plaintiffs.  The only arrestee whom plaintiffs have identified as a prior false arrest on a Public Lewdness charge is Alejandro Martinez, who was arrested as part of a "sweep" on February 1, 2000 in which seven men were arrested between 6:05 and 8:30 a.m. at the World Trade Center bathroom for masturbating at the urinals and charged with Public Lewdness.  He was acquitted on

the charge and subsequently brought a successful lawsuit for false arrest and malicious

prosecution, but he did not claim in the lawsuit that he was targeted because he was gay.  See

*Martinez v. The Port Authority of New York and New Jersey,* No. 01 cv 721, 2005 WL 214333

(S.D.N.Y. Sept 2, 2005), aff'd 445 F.3d 158 (2nd Cir. 2006).

**B)**     **Cornell Holden's Arrest**

Holden, ████████████████ was arrested on May 12, 2014 between 9:05 and 9:25 a.m.

by Officer Opromalla and charged with Public Lewdness, a misdemeanor, (NY Penal Law § 245.0)

and Indecent Exposure (NY Penal Law § 245.01). The Criminal Complaint Arrest Report ("CCR")

prepared by Opromalla states that he: "observed the defendant in the Post 3 public men's room

expose his naked penis at the urinal and manipulate it in a back and forth motion in full public

view."  Opromalla was working plain clothes in the TPU at the time of the arrest.   Holden, then a

27-year old black male, 5'11" and weighing approximately 170 lbs. had stopped to use the PABT

second floor bathroom although it was not on his regular route to work at Panera Bread.  At the

time of his arrest, he was wearing fitted blue jeans, a red fitness shirt, black jacket, black high-top

sneakers, a silver chain necklace, a silver name ring, earrings and a beaded bracelet.  He was

carrying a red duffle bag with a Fred Perry logo, and was wearing headphones.  He knew the

bathroom's location because he had used it about ten times previously that year.

When Holden entered the men's bathroom he went to the only vacant urinal.  Opromalla

was using one of the adjacent urinals, and after a few minutes he noticed Holden on his right.

Opromalla stepped back from the urinal, looked at Holden and then left the bathroom.  After some

minutes, Holden exited the bathroom and was arrested by Opromalla.  He was handcuffed, taken

to the police desk on the first floor of the PABT, finger-printed, and placed in a jail cell.  While he

was in the jail cell, he heard unidentified police officers referring to Opromalla as the "Gay

Whisperer," a phrase Opromalla never heard and didn't know the meaning of.  Opromalla never made any statements referencing Holden's sexual orientation or sexual orientation in general.

Opromalla asked a senior officer about the correct wording for the description of masturbation in the CCR.  Lt. Paul O'Dell[1] signed the CCR prepared by Opromalla as the Tour Commander, whose signature is required on the CCR form. Sgt. Miller, as the desk officer, signed the Desk Appearance Ticket ("DAT") Investigation form which showed that Holden was a New York resident and had no outstanding warrants.  Sgt. DeMartino signed the DAT issued to Holden. Sgt. Esposito signed the On-Line Booking Arrest Worksheet prepared by Opromalla as the supervising sergeant on duty.  Lt Aylmer is listed as the Tour Commander but did not sign any of the paperwork.  None of these individuals was at the scene of Holden's arrest.

The charges against Holden were dismissed by the criminal court on December 9, 2014.

**C)  Miguel Mejia's Arrest**

Mejia was arrested on July 9, 2014 at approximately 5:06 p.m. by Officer John Tone and charged with Public Lewdness (NY Penal Law § 245.0) and Indecent Exposure (NY Penal Law § 245.01).  Mejia was taking the 5:12 p.m. bus from the PABT to New Jersey to meet his tattooist, and stopped at the men's bathroom on the second floor before finding his gate. He was dressed in a tank top, grey cargo pants, sneakers, jewelry and had tattoos Mejia entered the men's bathroom and went to the only empty urinal. He noticed a short man at adjacent urinal who looked at him, "smirked," and then left the bathroom. Tone was patrolling with Officer Shaun Kehoe as part of the plain clothes TPU. Tone went into the men's bathroom to check on drunks in the stalls, leaving

---

[1] Paul O'Dell was not deposed in this case and was not noticed for deposition by plaintiffs.  (2)

Kehoe outside.[2]  While Tone was in the area of the sinks, getting ready to leave, he noticed Mejia looking at the man to his right.

Mejia was arrested by Tone after he exited the men's bathroom. He was handcuffed and taken to the police desk, where he was fingerprinted and photographed by Tone, whom Mejia describes as the tall blond officer. Tone also arranged for Mejia to make a phone call. Tone prepared the arrest paperwork for Mejia's arrest, including the CCR, which stated the basis for Mejia's arrest as follows: "at TPO while working in the Tactical Plain Clothes Unit the undersigned did observe the defendant manipulating his naked penis in a back and forth motion in full public view in a public place." Tone used language to describe masturbation which was preferred by the ADA.  Mejia was given a DAT and released at approximately 8:23 p.m. Sgt. DeMartino signed the CCR worksheet, which he reviewed to make sure it was complete, that the arrestee was correctly charged, and that it stated probable cause.

Tone was the only officer to testify at Mejia's criminal trial.  Mejia was acquitted after a bench trial on November 18, 2014.

### D)    Prior Pleadings and Proceedings

Plaintiffs commenced this action on March 27, 2017 as a putative class action, naming Opromalla, Tone and Kehoe as defendants. The complaint asserted claims under § 1983 for violation of plaintiffs' rights to due process, equal protection and privacy under the Fourth and Fourteenth Amendments.  Plaintiffs claimed that they were targeted for false arrest at the urinals

---

[2] Because the bathroom is on the third level from the bus ramps, it was described by Tone as the third floor bathroom, but it is described by Mejia and Opromalla as the second floor bathroom

in the men's bathroom at the PABT on grounds of Public Lewdness pursuant to PAPD policy because they were gay, bisexual or gender non-conforming.

October 6, 2017 plaintiffs filed their First Amended Complaint adding Sgt. Esposito, Sgt. DeMartino and Lt. Aylmer as defendants.

On November 28, 2018, plaintiffs filed their Second Amended Complaint adding, Lt. O'Dell, Sgt. Miller, Captain Fitzpatrick and police officers Marcos, Polonia, Malcolm Russell, Mark Montero, Vijay Seetaram, Martin Jaycard, and Melvin Cruz.  The Second Amended Complaint asserts the same causes of action as the original complaint.

On April 10, 2019, plaintiffs by stipulation formally withdrew and discontinued all claims made by Polonia and Russell, and  those against Jaycard, Seetaram, Montero, and Cruz.

On June 14, 2019 plaintiffs moved to certify the class. On February 26, 2020 the Court denied their motion.

## ARGUMENT

### THE SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), *Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1985).  The movant must establish that no genuine factual dispute exists and "[his] burden is satisfied if he can point to the absence of evidence to support an essential element of the non-moving party's claim." *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F. 3d 14, 18 (2d Cir. 1995). .

If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Rexnord Holdings, Inc, v. Biderman,* 21 F. 3d 522, 525-26 (2d Cir. 1994).  The non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. Ltd., v. Zenith Radio Corp.,* 475 U.S. 574,586, 106 S. Ct.  1348, 89 L. Ed. 2d 538 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will

preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S.

Ct. 2505, 91 L. Ed. 2d 202 (1986).

## POINT I

### Plaintiffs' Claims Against the Port Authority s Must be Dismissed Since Plaintiffs Cannot Show the Requisite Elements of a Policy, Custom or Practice

A municipal entity cannot be held liable under §1983 for a Constitutional violation under

the doctrine of *respondeat superior.  Monell v. Dep't of Soc. Servs.* 436 U.S. 658, 691, 98 S. Ct.

2018, 56 L. Ed. 2d 611 (1978).  To hold a municipality liable under §1983 for its employees' acts,

plaintiffs must prove an official policy, custom or practice that directly causes the deprivation of

the constitutional rights. *Id.* at 694, *Wray v. City of New York*, 490 F. 3dd 189, 195 (2d Cir. 2007).

Plaintiffs must show either: 1) a "practice so consistent  and widespread that although not expressly

authorized, constitutes custom or usage of which a supervisory policy maker must be aware", or

2) "a failure by policymakers to provide adequate training or supervision to subordinates to such

an extent that it amounts to deliberate indifference to the rights of those who come into contact

with the municipal employees." *Abreu v. City Of New York*, No. 17 Civ. 6179, 2018 WL 3315572,

at *8 (S.D.N.Y. July 5, 2018) quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77

(S.D.N.Y. 2010).  "[I]solated acts" by non-policy making municipal employees are insufficient to

demonstrate a municipal custom or policy. *Jones v. Town of E. Haven,* 691 F.3d. 72, 81 (2d Cir.

2012).

The Port Authority is a municipality under *Monell*. NY Unconsol. Laws § 6459, *Raysor v. Port Authority of New York and New Jersey* 768 F.2d 34, 38 (2d Cir. 1985). The PAPD, as a Port Authority department is not a separate entity from the Port Authority. NY Unconsol Laws §6401 et seq., *see also Nnebe v. Daus* 665 F. Supp. 2d 311, 320 (S.D.N.Y 2009), *aff'd in part and vacated in part on other grounds* 644 F. 3d 147 (2d Cir. 2011)  (NYPD is agency of the City and not a separate entity under §1983).

A)     **Plaintiffs' Pattern and Practice Claims are Deficient**

Plaintiffs cannot maintain a distinct claim for pattern and practice discrimination without having been certified as a class. *Chin v. the Port Authority of New York and New Jersey* 685 F. 3d 135, 150 (2nd Cir. 2012).  The evidentiary standard for "pattern and practice" municipal liability under §1983 requires evidence of prior unconstitutional conduct, since "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice…and the opportunity to conform to constitutional dictates.'" *Connick v. Thompson* 563 U.S. 51, 63 n.7, 131 S. Ct. 1350, 179 L. Ed 2d 417 (2011) quoting *Canton v. Harris* 489 U.S. 378,395, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1984).  "It is well established that a single incident does not give rise to an unlawful practice by subordinate officials 'so permanent and well-settled as to constitute custom or usage'" to impose *Monell* liability. *Plair v. City of New York*, 789 F. Supp.2d 459, 470 (S.D.N.Y. 2011), quoting *City of St Louis v. Praprotnik* 485 U.S. 112,127, 108 S.Ct. 915, 99 L. Ed 2d 142 (1970); *Jones,* 691 F.3d at 85 (three incidents of police officers abusing black citizens' rights over several years insufficient to impose municipal liability); *Giaccio v. City of New York* 308 Fed. App'x 470, 472 (2d Cir. 2009) (allegations of four prior incidents of unconstitutional acts insufficient); *White v. City of New York*, 206 F. Supp. 3d  920, 928 (S.D.N.Y. 2016) (six incidents

over five years insufficient).   A plaintiff cannot "infer a policy from the alleged violation of his own civil rights." *Anderson v. City of New York* 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987).

Here, plaintiffs have no evidence that before their arrests anyone other than themselves claimed to have been falsely arrested or targeted for Public Lewdness arrest in the men's bathroom at the PABT. In 2014, there were seven Public Lewdness arrests before Holden's and 32 before Mejia's (including Holden).  Despite having been contacted by the Court during discovery with a letter advising them of the putative class action in which they could participate, none of these arrestees have come forward.  Since Plaintiffs are not challenging the constitutionality of the applicable statutes, but only the application of the statutes to them, they must show more than that there were other public lewdness arrests in 2014. They must show that a pattern or practice of false arrests based on perceived sexual orientation existed before they were arrested. *See Connick,* 563 U.S. at 62 (2011) ("Without notice…decisionmakers can hardly be said to have deliberately cause[d] violations of constitutional rights").

Plaintiffs identified only the arrest of Martinez for Public Lewdness in support of their claim.  However, Martinez was arrested in 2000 at the World Trade Center men's restroom as part of a "sweep" which six men including Martinez were arrested on Public Lewdness charges between 6:05 and 8:30 a.m.  to allegedly make "quotas."  *Martinez v. The Port Authority of New York and New Jersey* No 01 Civ. 721, 2005 WL 2143333 (S.D.N.Y. Sept 2, 2005) aff'd 445 F.3d 158 (2d Cir. 2006).  This arrest is too remote in time and too different in terms of location and operational factors (i.e. the use of "sweeps" and "quotas"), to be part of a pattern or policy with respect to plaintiffs' arrests 14 years later, which did not involve the same location or factors. See *Rodriquez v. Cty. of Westchester* No 15 Civ. 9626, 2017 WL 118027, at *7 (S.D.N.Y. Jan. 11, 2017) (plaintiff could not rely on a DOJ report issued six years earlier to support his claim for

inadequate medical services as it was too attenuated). ██████████████████████

██████████████████████████████████████████████████████████

██████████  See *Nardoni v. City of New York* 331 F, Supp, 3d 116, 129 (S.D.N.Y. 2018)

(detective's history of misconduct was not evidence of a pattern or practice since plaintiff showed

no causal link to his own arrest).

### B)   Plaintiffs Cannot Show Municipal Liability Based on A Failure to Train or Supervise

To hold a municipality liable under §1983 for failure to train, the plaintiffs need to show

that such "failure to train its employees in a relevant respect must amount to "deliberate

indifference to the rights of persons with whom… [untrained employees] come into contact.'"

*Connick v. Thompson,* 563 U.S. at 61, quoting *Canton,* 489 U.S. at 388.  "'Deliberate indifference'

is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

obvious consequence of his action." *Connick,* 563 U.S. at 61, quoting *Bryan Cty. v. Brown,* 520

U.S. 397, at 410, 117 S. Ct. 1382, 137 L. Ed 2d 626 (1997). "A pattern of similar constitutional

violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference

to train." *Connick,* 563 U.S. at 62 quoting *Bryan Cty.,* 520 U.S. at 409. "'A training program must

be quite deficient in order for the deliberate indifference standard to apply: the fact that training is

imperfect or not the precise form a plaintiff would prefer is insufficient to make such a showing.'"

*Reynolds v. Giuliani,* 506 F. 3d 183, 193 (2d Cir 2007) quoting *Young v. City of Providence ex rel.*

*Napolitano,* 404 F. 3d at 27 (1st Cir. 2005).  This same "deliberate indifference" standard applies

to holding a municipality liable on a claim of failure to supervise. See *Reynolds,* 506 F.3d at 192.

Here, although plaintiffs contend that Opromalla and Tone were junior officers who had

insufficient training to work plain clothes in TPU, they offer no evidence that policing in plain

clothes differs from uniformed policing for purposes of enforcing the penal law in which both

officers were trained.  Moreover, both Opromalla and Tone were instructed in anti-bias policing at the Academy. Plaintiffs contend, through their expert, Pierceson, that the training with respect to policing LGBTQ communities provided at the Academy was not current or complete.  This criticism is not sufficient under the *Reynolds* decision to make out a claim for failure to train. There is no dispute that both plaintiffs were arrested for public masturbation in the men's bathroom, which is undisputedly a crime under New York Law. See *Matter of Paul R*, 131 A.D. 2d 764, 561 N.Y.S. 2d 790 (2d Dep. 1987); *People v. Gibble,* 2 Misc. 3d 510 (N.Y. Crim. Ct. 2003). "The lawfulness of an arrest does not depend on an ultimate finding of guilt or innocence." *Cruz v. The City of New,* 232 F. Supp. 3d 438, at 453 (S.D.N.Y. 2017) citing *Pierson v. Ray,* 386 U.S. 547, 555, 87 S. Ct. 1213, 18 L. Ed.2d 28 n.8 (1967).  Neither Opromalla nor Tone has a history of false arrests. There were no statements made by either officer at the time of the arrest indicating bias or knowledge of plaintiffs' sexual orientation. The fact that 69 arrests were made for Public Lewdness in 2014 is insufficient to support a claim of failure to train or supervise where, as here, there is no showing that any of these arrests were made without probable cause.

Plaintiffs' claims against the Port Authority and the PAPD fail to meet the requisite legal standard and should be dismissed.

## POINT II

### Plaintiffs' Fourteenth Amendment Claim Fails

### A)      The Individual Defendants are entitled to Qualified Immunity

Plaintiffs' equal protection causes of action allege discriminatory targeting on the basis that they were *perceived* to be gay or bisexual, and/or gender non-conforming, and/or have sex with men. Neither the Second Circuit nor the Supreme Court have held the Equal Protection Clause prohibits discrimination based on sexual orientation or gender non-conformity, or that such a claim was actionable.  In *Flaherty v. Massapequa Pub. Sch.,* 752 F. Supp. 2d 286, 294–95 (E.D.N.Y.

2010), aff'd, 462 Fed. Appx. 38 (2d Cir. 2012), the district court, in analyzing "defendants' argument [] that people 'perceived as gay' are not in a protected class for purposes of the Equal Protection Clause," noted that "[t]he law in this area remains somewhat unsettled." *Ibid.; see also Flaherty,* 462 Fed. Appx. at 39 ("we express no view in this case regarding whether a person perceived as homosexual is in a protected class for equal protection purposes"). In *Naumovski v. Norris,* 934 F.3d 200, 218 (2d Cir. 2019), the court found that the individual defendants had qualified immunity from plaintiff's equal protection discrimination claim where she alleged that she was "perceived as gay." The *Naumoski* court noted that its Title VII *Zarda* opinion was insufficient to establish "whether the Constitution prohibits sexual orientation discrimination." *Ibid.* ("It does not, however, 'clearly establish' constitutional (*i.e.* §1983) sexual orientation discrimination claims."). The court wrote that, before *Zarda's* 2018 decision, "our Court had expressly declined to recognize sexual orientation discrimination claims under Title VII, much less the Constitution." *Id.* at 219. Finally, the court found that the district court could not "rely on freestanding constitutional principles separate from *Zarda*." *Ibid.*   Gender non-conformity discrimination has also not been recognized as protected under the equal protection clause by the Second Circuit or the Supreme Court. *White v. City of New York*, 206 F. Supp. 3d 920, 933 (S.D.N.Y. 2016);

When a police officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," he is entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). A right is not clearly established unless its "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056(2014). At

the time of the challenged conduct, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).

Since plaintiffs had no recognized constitutional right to equal protection based on perceived sexual orientation at the time of their arrests, the individual defendants are entitled to qualified immunity.

### B) Plaintiffs' Equal Protection Claim Based On Selective Enforcement has No Factual Support

To prevail on a selective enforcement equal protection claim, plaintiffs must show both: (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations "such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Brown v. City of Syracuse*, 673 F.3d 141, 152 (2d Cir. 2012) (citations omitted).

### 1.   Plaintiffs lack evidence of similarly situated individuals

Plaintiffs must perform a comparative analysis with those similarly situated to them "in all material respects." *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008), *quoting Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000). Where, as here, plaintiffs allege selective enforcement of lewdness laws on the basis of the arresting officer's perception of them, they must show that similarly situated individuals who are not in their protected class were not arrested for violation of lewdness laws. *Brown,* 221 F.3d at 337 (2d Cir.2000), citing *United States v. Armstrong,* 517 U.S. 456, 465, 116 S. Ct. 1480, 1486, 134 L. Ed. 2d 687(1996) ("claimant must show that similarly situated individuals of a different race were not prosecuted").

Here, there is no evidence that the arresting officers had knowledge of plaintiffs' sexual orientation. *Diesel v. Town of Lewisboro*, 232 F.3d 92, 104–05 (2d Cir. 2000) (knowledge

ordinarily required to establish the first element of a selective treatment claim and, absent proof defendants knew they were treating others differently, it is difficult to prove selective treatment). Plaintiffs also lack any evidence that these officers did not enforce the lewdness laws against those who did not fall within Plaintiffs' alleged protected classes, since they have no prior arrestees coming forward as witnesses.

### 2.  There is no evidence of intentional discrimination

The Equal Protection Clause is violated when there is purposeful discrimination "directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). motive). To establish intentional discrimination, plaintiffs must prove that the arresting officers were personally aware of their protected status. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 87–88 (2d Cir. 2005) (summary judgment granted where plaintiff failed to show evidence that decisionmakers had knowledge of her protected status).  Absent  defendants' knowledge of plaintiff's protected status, there can be no discriminatory intent that violates equal protection. *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999) ("the key issue in an equal protection claim alleging selective enforcement [is] impermissible motive").  This is because the Equal Protection Clause prohibits intentional and conscious discrimination, but a "claim of discrimination based on unconscious bias is, by its nature, not purposeful or intentional and thereafter inadequate to state a claim under §1983 and the Fourteenth Amendment." *Naumovski,* 934 F.3d at 216 n. 50.

Plaintiffs are not competent to testify to how *others* perceived them – they must "offer evidence indicating that the persons who actually participated in [the unlawful actions] had such knowledge." *Woodman*, 411 F.3d at 87. An individual's own testimony that "she believed she was stopped by reason of racial bias" is "nothing more than unsupported speculation" because she "is

14

not competent to testify to the officer's motivation …." *Jones*, 691 F.3d at 83 (noting "there was no objective evidence giving any support to her speculation"). Feelings and perceptions of being discriminated against are not evidence of discrimination. *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 456 (2d Cir. 1999).

Apart from plaintiffs' speculation that their casual clothes and jewelry identified them as gay/bisexual, and Holden's statement that unidentified officers referred to Opromalla as the "Gay Whisperer", there is nothing in the record that even hints that Opromalla and Tone knew of plaintiffs' sexual orientation.   Speculation and hearsay do not support intentional discrimination. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir. 1997) (allegations of bias against supervisor who was not consulted about decision to terminate "provide no basis for imputing to [the decisionmaker] an invidious motivation for the discharge"); *see also*, *Nieves*, 139 S. Ct. at 1725 (in other context, cautioning against principle that "[a]ny inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation"). In *Howard v. City of New York,* 602 Fed. Appx. 545, 547 (2d Cir. 2015), an equal protection case, the court, in finding "single racially motivated comment uttered by a non-decisionmaker" insufficient, noted that the individual who made the comment "had no decision-making authority" and there was "no evidence beyond mere speculation tying this statement to any decision maker." *Ibid.; see also Thomsen v. Stantec, Inc.,* 483 Fed. Appx. 620, 622 (2d Cir. 2012) ("cryptic, partially overheard statement by a co-worker" insufficient to show perceived discrimination "given that the meaning of the remark, and even whether it related to [plaintiff] at all, is completely unclear").

## POINT III

**Plaintiffs Fail to State a Claim Under the Due Process Clause**

Plaintiffs generally allege, without specifying, that their right to "due process under the Fourteenth Amendment was violated because they were targeted based on their sexual orientation and falsely arrested (Second Amended Complaint ¶¶ 177, 211, 213).  Plaintiffs do not allege that the lewdness statutes are unconstitutionally vague and violate their due process rights. Rather, plaintiffs allege that their due process rights were violated by being unlawfully arrested and charged with Public Lewdness and Indecent Exposure because they were perceived as being gay/bisexual, gender non-conforming, or men who have sex with men.

Plaintiffs' due process claim sounds entirely in the Fourth Amendment's prohibition against unreasonable search and seizure and can therefore only proceed under the Fourth Amendment rather than the Fourteenth Amendment's due process clause.  See *Abreu v. City of New York,* No. 17 civ 6179, 2018WL 3315572 at *8 (S.D.N.Y. July 5, 2018).  "[W]here another provision of the Constitution 'provides an explicit source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'" *Case v. The City of New,* 233 F. Supp. 3d 372, 395 quoting *Kia P. v. McIntyre,* 235 F. 3d 749,757-758 (2nd Cir. 2000) (quoting *Conn. v. Gabbert,* 526 U.S. 286,293, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999). The Fourth Amendment rather than substantive due process should be applied here to analyze plaintiffs' claims of false arrest and the due process claim should be dismissed See *Russo v. City of Bridgeport,* 479 F3d 196, 209 (2d Cir. 2007).

<u>POINT IV</u>

**Plaintiffs' Claims for False Arrest Under the Fourth Amendment Against Kehoe, Esposito, DeMartino, Aylmer, Miller, Fitzpatrick, and O'Dell Are Without Legal or Factual Basis and Should be Dismissed**

Personal involvement in plaintiffs' arrests is a prerequisite to liability for false arrest under §1983. *Patterson v. City of Oneida,* 375 F. 3d 206, 229 (2nd Cir 2004). The criteria for a supervisor's liability was addressed in *Colon v. Coughlin,* 58 F. 3d 865 (2d Cir. 1995), where the court stated the liability required evidence that: "1) the defendant participated directly in the alleged violation,  2) the defendant after being informed of the violation through a report or appeal, failed to remedy the wrong, 3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom, 4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or 5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating the unconstitutional acts were occurring." *Id.* at 873. The viability of all these criteria was called into question following *Ashcroft v, Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In *Iqbal,* the Supreme Court rejected the notion that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to a violation of the Constitution" *Id.* at 667. Following *Iqbal*, two views emerged in this circuit as to which of the criteria set forth in *Colon* remained valid. In *Bellamy v. Mount Vernon Hospital,* No. 07 civ 801,2009 WL 1835939, at *6 (S.D.N.Y. June  26, 2009), the court found that supervisor liability could only be imposed where the supervisor participated directly in the constitutional violation, or where he created a policy or custom under which constitutional violations occurred. *See also Rivera v. Metropolitan Transit Authority,* 750 F. Supp. 2d 456 (S.D.N.Y. 2010) (following this view, the court dismissed claims against supervisory police officers who prepared exculpatory

reports concerning the alleged misconduct by subordinates).  More recently, the court in *Marom v. City of New York,* No. 15 civ 2017, 2016 WL 916424 (S.D.N.Y. March 7, 2016), recognized that liability could also be imposed on supervisors under the *Colon* standard of "gross negligence" or "deliberate indifference." *Id*. at *15.  In *Marom*, the court dismissed claims against supervisors who were allegedly responsible for ensuring the accuracy of the police arrest paperwork on the ground that their conduct did not meet the required standard of participation.  Following *Marom*, the district court in *Arbuckle v. City of New York,* No.14 civ 10248, 2016 WL 5793741 (Sept. 30, 2016) articulated the standard for supervisory liability as requiring "direct participation, such as 'personal participation  by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participating, such as ' ordering or helping others to do the unlawful acts.'" *Id.* at 12, quoting *Garnett v. City of New York,* No. 13 civ 7083, 2014 WL 3950904, at *7 (S.D.N.Y. Aug. 13, 2014)quoting *Provost v. City of New York,* 262 F. 3d 146,155 (2d Cir. 2001). Further, where it is claimed that the supervisor created a custom or policy under which the deprivation occurred, the plaintiffs must also show that the supervisor's actions were the proximate cause of their constitutional rights violation. See *Marom, supra* 2016 WL  96424 at *16.

Based on either view of the standard for supervisory liability, the facts here fail to support any liability being imposed on Lt. Aylmer, Sgt. DeMartin. Sgt. Esposito, Lt. O'Dell or Sgt Miller, who were the administrative supervisors on duty at the time of plaintiffs' arrests.

Opromalla and Tone acknowledge making the arrests and filling out the paperwork. Sgt. DeMartino signed Holden's DAT  and Tone's CCR,, which he reviewed to ensure that it stated probable cause for the criminal charge against Mejia. Lt. O'Dell signed a CCR follow-up form which stated that Tone attended court and the matter was adjourned but the charges remained. O'Dell signed the CCR prepared by Opromalla for Holden's arrest as the Tour Commander, as

required by the CCR form. Sgt. Miller signed the Desk Appearance Investigation Worksheet confirming that Holden had no outstanding warrants.  Sgt Esposito signed the on-line Booking Worksheet prepared by Opromalla for Holden's arrest.  These officers were not present at the arrests and only  reviewed and approved the post-arrest paperwork. This is clearly insufficient to establish that these officers participated in the arrests.  Moreover, there is no evidence to suggest that these officers were on notice that their subordinates were prone to unconstitutional behavior. *Poe v. Leonard* 282 F. 3d 123 (2nd Cir 2002). There is neither a claim nor evidence that they falsified the arrest paperwork.  Even assuming that they were responsible for the boilerplate language used in the CCRs, that is insufficient to establish personal liability. See *McKay v. City of New York* 32 F. Supp. 3d 499 (S.D.N.Y. 2014).

There is no evidence of an unconstitutional policy, since there is not a single prior arrest for Public Lewdness at the PABT or notice thereof, which has been shown to have violated anyone's rights. For this reason, the claims against Captain Fitzpatrick, who was not present at the time of the arrests, must also be dismissed.

Further, plaintiffs have made no showing that the acts of these supervisors proximately caused their alleged false arrests.

Kehoe should be dismissed since there is no evidence he participated in Mejia's arrest. Tone left Kehoe outside when he went in to check the stalls for drunks.  Mejia testified that only Tone, whom he describes as the tall blond officer, processed his arrest and testified at his trial. Tone prepared the CCR which described the conduct by Mejia for which Tone arrested him. Kehoe's mere presence on the scene is insufficient to hold him liable.  See *Minter v. Cty. of Westchester* No. 08 civ 7726, 2011 WL 856269 at *87 (S.D.N.Y. Jan 20, 2011) (defendant's presence on the search team was insufficient to establish liability).

19

## POINT V

**The Claims Against Esposito, DeMartino, Miller, Aylmer, Fitzpatrick
and O'Dell Are Time Barred and Should Be Dismissed**

Esposito, Demartino, and Aylmer were not brought into this action until October 6, 2017 and O'Dell and Miller were not named in this lawsuit until November 28, 2018, long after the three- year statute of limitations for §1983 based on these 2014 arrests expired.  To timely relate back to the original complaint's filing, plaintiffs must meet two requirements: 1) show due diligence prior to the running of the statute to identify the defendant by name, and 2) the original pleadings must describe the John Doe party in sufficient detail to fairly appraise the party that they are the intended  defendant. See *Hogan v. Fischer,* 738 F. 3d 509, 519 (2d Cir 2019). This action was commenced March 27, 2017, approximately one month before the statute expired with respect to Holden's May 12, 2014 arrest and approximately four months before the statute expired on Mejia's July 9, 2014 arrest.  Both Holden and Mejia were interviewed for the October 7, 2014 N.Y. Times article, which stated that  plaintiffs claim to have been falsely arrested (*see,* Exhibit A to all three complaints).  During the intervening three years, plaintiffs did nothing  to find out the names of the officers involved in their arrests.

To demonstrate due diligence under C.P.L.R. 1024, plaintiffs must show that they made timely efforts to identify the correct party before the statute expired. *Ceara v. Deacon*, 68 F. Supp. 3d 402,409 (S.D.N.Y. 2014).  Defendants' Rule 26 Voluntary disclosure, which contained the CCR for both plaintiffs and the names of all defendant supervisory officers, was served on July 6, 2017 by overnight mail. Plaintiffs had all the names of the supervisory defendants on July 7, two days before the statute expired and they did nothing yet again.  Courts have found a lack of due diligence where, as here, the plaintiff failed to take any action beyond filing his original complaint prior to the expiration of the statute of limitations. See *Berman* v. *Perez* No 17 civ 2757, 2018 WL

565269, at *3 (S.D.N.Y. Jan. 24, 2018). Plaintiffs cannot show due diligence and the complaint should be dismissed as barred by the statute of limitations against Esposito, DeMartino, Aylmer, Miller, O'Dell and Fitzpatrick.

## POINT VI

### Plaintiffs' Claims for Invasion of Privacy and Entrapment are not Cognizable and Should Be Dismissed

Plaintiffs allege in ¶¶ 160 and 176 of the Second Amended Complaint that their liberty interests in privacy were violated because they were arrested for conduct observed while they were at a urinal.  While the Constitution does not mention a federal right to privacy, the Supreme Court has outlined two types of privacy interests protected by the Fourteenth Amendment: 1) "the individual interest in avoiding disclosure of personal matters," and 2) "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600, 57 S. Ct. 869, 51 L. Ed. 2d 64 (1977).   The Supreme Court has never suggested that the Fourteenth Amendment encompasses a right to privacy in a public bathroom.  Plaintiffs also allege that their arrests were the result of unlawful entrapment tactics used by the arresting officers, (Second Amended Complaint ¶ 82). While entrapment may be a defense to a criminal action, it is not a constitutional violation cognizable under §1983. See *DiBlasio v. City of New York* 102 F.3d 654 (2nd. Cir 1996).

Accordingly, these claims should be dismissed.

## POINT VII

### The Punitive Damage Claim Against the Port Authority Must be Dismissed

The Port Authority is a government agency and as such neither it nor its agency the PAPD can be held liable for punitive damages. See *Vernon v. Port Authority of New York and New Jersey,*

154 F. Supp 2d 844 (S.D.N.Y. 2001), *Brady v. Port Authority of New York and New Jersey,* No.

93 civ 1679, 1998 WL 72406d1d (E.D.N.Y. Oct. 15, 1998)

<u>**CONCLUSION**</u>

The Motion for Partial Summary Judgement should in all respects be granted.

Dated:  May 29, 2020

New York, New York

> The Port Authority Law Department
> Attorney for Defendants,
> The Port Authority of New York and New Jersey,
> The Port Authority Police Department, Michael
> Opromalla, Shaun Kehoe, John Tone, Jordan
> Esposito, Michael DeMartino, Richard Aylmer,
> Paul Miller, John Fitzpatrick, and Paul O'Dell
>
> By:<u>/s/Thomas R. Brophy</u>
>    Thomas R. Brophy, Esq.
>    Kathleen Gill Miller, Esq.
>    4 World Trade Center/150 Greenwich
>    St./24 Fl.
>    New York, NY  10007
>    (212) 435-3492/(212) 435-3434

TO:   Winston & Strawn, LLP
       Attorneys for Plaintiffs Cornell Holden and Miguel Mejia
       35 W. Wacker Drive
       Chicago, Illinois  60601-9703
       Attn:  Daniel R. McNeely, Esq.
       Via ECF

cc:   The Legal Aid Society
       Co-counsel for Plaintiffs Cornell Holden and Miguel Mejia
       199 Water Street
       New York, NY  10038
       Attn:  Cynthia Conti-Cook, Esq.
       Via ECF

## PRINTING SPECIFICATIONS STATEMENT

I hereby certify pursuant to 22 NYCRR 1250.8(j) that the foregoing brief was prepared on a computer using Microsoft Word.

*Type.* A proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point size: | 12 point |
| Line spacing: | Double |

*Word Count.* The total number of words in this brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service and this Statement is 6,764 words.

Dated: May 29, 2020                    By: /s/ James Ashcraft